David C. Marcus (SBN 158704)
david.marcus@wilmerhale.com
Christopher T. Casamassima (SBN 211280)
chris.casamassima@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

William F. Lee (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

Noah Levine (*pro hac vice*)
noah.levine@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone:  (212) 230-8800
Facsimile:  (212) 230-8888

Attorneys for Defendant
SONY PICTURES ENTERTAINMENT INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Corona, Christina Mathis, et al., individually and on behalf of others similarly situated,<br><br>                              Plaintiffs,<br><br>      vs.<br><br>Sony Pictures Entertainment Inc.,<br><br>                              Defendant. | Case No. 2:14-cv-09600 RGK SH<br><br>**SONY PICTURES ENTERTAINMENT INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**<br><br>Hearing Date:    May 11, 2015<br>Time:              9:00 a.m.<br>Courtroom:        850<br>Judge:            Hon. R. Gary Klausner |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ..................................................................................1

SUMMARY OF PERTINENT FACTUAL ALLEGATIONS ...............................2

ARGUMENT ......................................................................................4

I.     STANDARD OF REVIEW ............................................................4

II.    THE PLAINTIFFS LACK STANDING ...........................................5

III.   THE PLAINTIFFS' COMMON LAW CLAIMS FAIL ..........................10

       A.   The Plaintiffs Fail To Plead Facts Sufficient To State A Claim
            For Negligence ...............................................................10

            1.   The Plaintiffs Do Not Allege A Cognizable Injury ..............10

            2.   The Economic Loss Doctrine Bars The Claim ...................12

       B.   The Plaintiffs Fail To Plead Facts Sufficient To State An
            Implied Covenant Claim ....................................................14

IV.    THE PLAINTIFFS' STATUTORY CLAIMS FAIL ..............................16

       A.   California Customer Records Act .........................................16

       B.   California Confidentiality Of Medical Information Act ...............17

       C.   California Unfair Competition Law ......................................19

            1.   The Plaintiffs Do Not Allege Loss Of Money Or Property ......19

            2.   The Plaintiffs Allege No Unlawful, Unfair, Or Fraudulent
                 Conduct ..........................................................................19

            3.   Restitution Is Not Available ...............................................22

       D.   Virginia Code § 18.2-186.6(B) ...........................................22

       E.   Colorado Consumer Protection Act ......................................23

V.     THE PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION OR
       DECLARATORY RELIEF ............................................................24

CONCLUSION ....................................................................................25

Memorandum in Support of Motion to Dismiss

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aas v. Superior Ct. of San Diego Cnty.*,
  12 P.3d 1125 (Cal. 2000)......................................................................12, 13

*Alliance for the Wild Rockies v. U.S. Dep't of Agric.*,
  772 F.3d 592 (9th Cir. 2014) ..........................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................4, 20

*Bardin v. DaimlerChrysler Corp.*,
  39 Cal. Rptr. 3d 634 (Ct. App. 2006) ...........................................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................4

*Boorstein v. CBS Interactive, Inc.*,
  165 Cal. Rptr. 3d 669 (Ct. App. 2013) ..........................................................17

*Carma Developers (California), Inc. v. Marathon Dev. California, Inc.*,
  826 P.2d 710 (Cal. 1992)..................................................................................14

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987)...........................................................................................14

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013).............................................................................5, 8, 9

*Claridge v. RockYou, Inc.*,
  785 F. Supp. 2d 855 (N.D. Cal. 2011).............................................................16

*Drum v. San Fernando Valley Bar Ass'n*,
  106 Cal. Rptr. 3d 46 (Ct. App. 2010) .............................................................20

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006).........................................................................................24

*Env't Furniture, Inc. v. Bina*,
  No. CV 09-7978 PSG, 2010 WL 5060381 (C.D. Cal. Dec. 6, 2010) ...............16

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*,
    753 F.3d 862 (9th Cir. 2014) ...........................................................................25

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*,
    26 Cal. Rptr. 2d 762 (Ct. App. 1994) .............................................................14

*Foley v. Interactive Data Corp.*,
    765 P.2d 373 (Cal. 1988) .................................................................................13

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) .............................................................................20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)..........................................................................................24

*Galaria v. Nationwide Mut. Ins. Co.*,
    998 F. Supp. 2d 646 (S.D. Ohio 2014) ....................................................5, 6, 8

*Grigsby v. Valve Corp.*,
    No. Civ. C12-cv-00553, Dkt. 51 (W.D. Wash. Mar. 18, 2013) .....................23

*Grigsby v. Valve Corp.*,
    No. C12-0553JLR, 2012 WL 5993755 (W.D. Wash. Nov. 14, 2012)..............10

*Guz v. Bechtel Nat'l Inc.*,
    8 P.3d 1089 (Cal. 2000) ...................................................................................15

*Holter v. Moore & Co.*,
    681 P.2d 962 (Colo. App. 1983) ......................................................................23

*In re Adobe Systems, Inc. Privacy Litig.*,
    No. 13-CV-05226-LHK, 2014 WL 4379916
    (N.D. Cal. Sept. 14, 2014) ....................................................................8, 11, 17

*In re Barnes & Noble Pin Pad Litig.*,
    No. 12-cv-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ...................7, 8, 9

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011)..............................................................19

*In re iPhone Application Litig.*,
    No. 11-MD-02250-LKH, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .....6, 19

*In re Michaels Stores Pin Pad Litig.*,
    830 F. Supp. 2d 518 (N.D. Ill. 2011)..................................................................12

*In re Science Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
    No. 12-347(JEB), 2014 WL 1858458 (D.D.C. May 9, 2014).....................5, 6, 8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012)..........................................................*passim*

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014)..........................................................*passim*

*In re Steroid Hormone Prod. Cases*,
    104 Cal. Rptr. 3d 329 (Ct. App. 2010) ..............................................................21

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    MDL No. 14-2522(PAM/JJK), 2014 WL 7192478
    (D. Minn. Dec. 18, 2014).............................................................................12, 23

*J'Aire Corp. v. Gregory*,
    598 P.2d 60 (Cal. 1979).......................................................................................12

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................20

*Kingman Reef Atoll Invs., L.L.C. v. United States*,
    541 F.3d 1189 (9th Cir. 2008) ..............................................................................4

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) ......................................................................................22

*Krottner v. Starbucks Corp.*,
    628 F.3d 1139 (9th Cir. 2010) ...........................................................................8, 9

*Krottner v. Starbucks Corp.*,
    406 F. App'x 129 (9th Cir. 2010) ..................................................................10, 11

*Kwikset Corp. v. Superior Court*,
    246 P.3d 877 (Cal. 2011) ....................................................................................22

*Lewert v. P.F. Chang's China Bistro, Inc.*,
    No. 14-cv-4787, 2014 WL 7005097 (N.D. Ill. Dec. 10, 2014) ...........................9

*M & F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.*,
    136 Cal. Rptr. 3d 788 (Ct. App. 2012) ............................................................22

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) ...................................................................8

*Moyer v. Michaels Stores, Inc.*,
    No. 14 C 561, 2014 WL 3511500 (N.D. Ill. July 14, 2014)................................9

*Munns v. Kerry*,
    ___ F.3d ___, No. 12-15969, 2015 WL 1260709 (9th Cir. Mar. 20, 2015).......25

*Peters v. St. Joseph Servs. Corp.*,
    No. 4:14-CV-2872, 2015 WL 589561 (S.D. Tex. Feb. 11, 2015)...............5, 7, 8

*Pisciotta v. Old National Bancorp*,
    499 F.3d 629 (7th Cir. 2007) ........................................................9, 10

*Plastino v. Wells Fargo Bank*,
    873 F. Supp. 2d 1179 (N.D. Cal. 2012) ...........................................................15

*Polanco v. Omnicell, Inc.*,
    988 F. Supp. 2d 451 (D.N.J. 2013) ...................................................................5

*Regents of Univ. of California v. Superior Ct.*,
    163 Cal. Rptr. 3d 205 (Ct. App. 2013) ............................................................18

*Remijas v. The Neiman Marcus Group LLC*,
    No. 14 C 1735, 2014 WL 4627893 (N.D. Ill. Sept. 16, 2014) ...........................9

*Resnick v. AvMed, Inc.*,
    693 F.3d 1317 (11th Cir. 2012) .....................................................................16

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
    732 F. Supp. 2d 952 (N.D. Cal. 2010) ............................................................15

*Ruiz v. Gap, Inc.*,
    622 F. Supp. 2d 908 (N.D. Cal. 2009) ............................................................15

*Seely v. White Motor Co.*,
    403 P.2d 145 (Cal. 1965) ...............................................................................12

*Spencer v. Kemna*,
    523 U.S. 1 (1998)..............................................................................4

*Sutter Health v. Superior Ct.*,
    174 Cal. Rptr. 3d 653 (Ct. App. 2014) ............................................................18

*Stanley v. Univ. of S. California*,
    178 F.3d 1069 (9th Cir. 1999) ....................................................................14

*Storm v. Paytime, Inc.*,
    No. 14-cv-1138, 2015 WL 1119724 (M.D. Pa. Mar. 13, 2015).........................6

*Strautins v. Trustwave Holdings, Inc.*,
    27 F. Supp. 3d 871 (N.D. Ill. 2014) ..............................................................9

*Troyk v. Farmers Grp., Inc.*,
    90 Cal. Rptr. 3d 589 (Ct. App. 2009) ........................................................19

*United States v. AMC Entm't, Inc.*,
    549 F.3d 760 (9th Cir. 2008) .....................................................................25

*Wofford v. Apple Inc.*,
    No. 11-CV-0034, 2011 WL 5445054 (S.D. Cal. Nov. 9, 2011).......................22

**Statutes, Rules, and Regulations**

45 C.F.R. § 160.103 .....................................................................................20

California Confidentiality of Medical Information Act,
    Cal. Civ. Code § 56 *et seq.* ..........................................................4, 17, 18

California Customer Records Act, Cal. Civ. Code § 1798.80 *et seq.*............4, 16, 17

California Information Practices Act, Cal. Civ. Code § 1798 *et seq.*......................20

California Unfair Competition Law,
    Cal. Bus. & Prof. Code, § 17200 *et seq.*......................................................4, 19

Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-716........................4, 23

Federal Rule of Civil Procedure 9(b).................................................................20

Federal Rule of Civil Procedure 12(b)(1) .............................................................4

Federal Rule of Civl Procedure 12(b)(6) ..............................................................4

Virginia Code § 18.2-186.6 ..........................................................................4, 22

**Other Authorities**

65 C.J.S. Negligence § 56.........................................................................12

Press Release, Federal Bureau of Investigation, Update on Sony Investigation
   (Dec. 19, 2014), *available at* http://www.fbi.gov/news/pressrel/press-
   releases/update-on-sony-investigation..................................................1

Yahoo! News, FBI Official Calls Sony Attackers "Organized," "Persistent" (Dec.
   10, 2014), *available at* http://news.yahoo.com /video/fbi-official-calls-sony-
   attackers-183646783.html....................................................................1

# INTRODUCTION

In November 2014, Sony Pictures Entertainment Inc. (SPE) was the victim of a criminal attack on its information technology infrastructure and network.  *See* Am. Compl. ¶¶ 1, 20.  As the Complaint acknowledges, this cyber-attack was massive and unprecedented, and specifically intended to harm SPE.  *See id.* ¶¶ 1, 20-21, 29.  The United States government has attributed this sophisticated and wide-ranging attack on SPE to North Korea.  *See* Press Release, Federal Bureau of Investigation, Update on Sony Investigation (Dec. 19, 2014), *available at* http://www.fbi.gov/news/pressrel/press-releases/update-on-sony-investigation.[1]

This case arises from that cyber-attack.  The named plaintiffs, former employees of SPE, claim that their personally identifying information (PII) was stolen and disclosed by the perpetrators of the cyber-attack.  They assert a variety of claims predicated on supposed harm from that disclosure.  Yet more than three months after the attack, not one of them claims to have suffered any actual identity theft or any other concrete, cognizable injury attributable to the cyber-attack.  The majority of the plaintiffs merely allege that they fear an increased risk of future harm and have incurred expenses as a result of their efforts to prevent a future harm.  Two plaintiffs allege that they experienced failed attempts at identity theft, but do not claim to have incurred any losses as a result.  And one plaintiff claims that her husband suffered harm in the form of unauthorized bank account withdrawals, but she nowhere alleges that the information needed to perpetrate that theft was compromised in the cyber-attack nor does she allege that the withdrawals

---

[1]     Indeed, the FBI has stated not only that the cyber-attack was highly sophisticated, but that "'[t]he malware that was used would have gotten past 90 percent of the Net defenses that are out there today in private industry and would have been likely to challenge even state governments.'"  Yahoo! News, FBI Official Calls Sony Attackers "Organized," "Persistent" (Dec. 10, 2014), *available at* http://news.yahoo.com/video/fbi-official-calls-sony-attackers-183646783.html.

were not reimbursed.  In short, no plaintiff has alleged a concrete, redressable injury sufficient to establish standing to sue.

The plaintiffs also have not stated any viable claims.  The plaintiffs' negligence claim fails both because they have not alleged any legally cognizable harm and because, in the absence of any claimed physical injury, the claim is barred by the economic loss doctrine.  The plaintiffs' implied covenant claim fails because they do not identify any specific contract term that could properly be implied between them and SPE, and because they do not allege cognizable injuries or the requisite bad faith.

The plaintiffs' statutory claims fare no better.  As former *employees* of SPE, the plaintiffs cannot assert a claim under the California *Customer* Records Act. The plaintiffs' California Confidentiality of Medical Information Act claim fails because, among other reasons, they do not allege that SPE, as opposed to the attackers, affirmatively disclosed their medical information.  Their claim under California's Unfair Competition Law fails for numerous reasons, the most basic of which is that the PII that was stolen here is not "money or property" under the statute.  Finally, certain individual plaintiffs' claims under the Virginia and Colorado notification statutes fail for reasons particular to those statutes.

In short, all of the plaintiffs' claims fail and the Court should dismiss the Complaint in its entirety.

## SUMMARY OF PERTINENT FACTUAL ALLEGATIONS[2]

The Complaint alleges that a group of cybercriminals, calling themselves the Guardians of Peace (GOP), deployed destructive malware to take over SPE's networks.  Am. Compl. ¶¶ 21, 57, 60.  On November 24, 2014, SPE employees who attempted to log into their computers were greeted by an image of a flying skeleton and a threat that the GOP would publish SPE's "secrets and top secrets"

---

[2]     The facts below are drawn from the Complaint, which SPE is legally required to accept as true for purposes of this motion only.

on the Internet if SPE did not "obey" the GOP's undisclosed demands.  *Id.* ¶ 20, 21.
On November 30, the GOP began to carry out this threat by posting unreleased
SPE movies on publicly accessible file-sharing systems.  *Id.* ¶ 22.  Days later, on
December 2, the media reported that the attackers had begun to publish stolen SPE
documents, including documents containing stolen PII of SPE employees.  *Id.*
¶¶ 22, 23.  The Complaint alleges that this included "names, employee IDs, dates
of birth, home addresses, Social Security numbers, copies of passports and visas,
job titles, salaries and bonus information, tax records, employment contracts,
information regarding employee benefits, medical plans, dental plans, workers
compensation details, retirement and termination plans, receipts for travel, prior
work history, performance reviews, criminal background checks, and details of
severance packages" for certain current and former SPE employees.  *Id.* ¶¶ 20, 29.

On the evening of December 2, SPE sent a memorandum to its employees,
notifying them of the potential theft of their information and recommending that
they sign up for identity theft monitoring services, which SPE offered to provide to
them free of charge for one year.  Am. Compl. ¶¶ 63, 74.  Those services, provided
by AllClearID, include credit monitoring to help detect and prevent fraud and
identity theft insurance to cover any losses that might result.  *Id.* ¶ 74.  On
December 8, SPE sent another letter to its employees with further details on the
types of information SPE suspected had been stolen, advising employees to remain
vigilant and recommending that they take specific steps to guard against potential
identity theft.  *Id.* ¶ 65.  On December 15, SPE posted on its website a message to
all current and former employees about the attack and the potential theft of PII in
an effort to notify those who had not already received one of the earlier memos.  *Id.*
¶ 67.  SPE also sent copies of this notice to former employees.  *Id.*

The plaintiffs initially filed seven separate lawsuits, the first of which was
filed on December 15.  On March 2, 2015, six of the lawsuits were voluntarily
dismissed and the plaintiffs filed an Amended Complaint in this first-filed case,

asserting eight separate causes of action: (1) negligence; (2) breach of implied contract; (3) violation of the California Customer Records Act; (4) violation of the California Confidentiality of Medical Information Act; (5) violation of the California Unfair Competition Law; (6) declaratory judgment; (7) violation of Virginia Code § 18.2-186.6; and (8) violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-716.  Am. Compl. ¶¶ 139-247.

## <u>ARGUMENT</u>

## I.     STANDARD OF REVIEW

"'[W]hen subject matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.'"  *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008); *see Spencer v. Kemna*, 523 U.S. 1, 10-11 (1998).  Article III standing "cannot be 'inferred argumentatively from averments in the pleadings.'"  *Spencer*, 523 U.S. at 10.  Rather, the plaintiff must "clearly … allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute."  *Id.* at 11 (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  They must, in other words, allege facts sufficient to infer "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A pleading with "no more than conclusions" is "not entitled to the assumption of truth."  *Id.* at 679.  This "standard is particularly demanding in 'complex, large-scale' data breach class action litigation," *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.* ("*Sony II*"), 996 F. Supp. 2d 942, 972 (S.D. Cal. 2014), where plaintiffs can all too easily allege mere fears of speculative future harm.

## II.    THE PLAINTIFFS LACK STANDING

"To establish Article III standing, a plaintiff must show" that he has suffered an "injury in fact"—*i.e.*, "an injury that is concrete and particularized, and actual or imminent." *Alliance for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 598 (9th Cir. 2014). In *Clapper v. Amnesty International USA*, the Supreme Court "reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations of *possible* future injury are not sufficient." 133 S. Ct. 1138, 1147 (2013) (internal quotation marks omitted). A plaintiff cannot "manufacture standing merely by inflicting harm on [himself] based on … fears of hypothetical harm that is not certainly impending." *Id.* at 1151.

The Supreme Court's reasoning in *Clapper* applies directly to allegations commonly made in data breach cases. The plaintiffs in such cases, like the plaintiffs here, contend they have standing to sue because they have suffered "an increased risk … of identity theft," or were forced to incur "the cost involved in *preventing* future harm." *In re Science Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 2014 WL 1858458, at *6, *7 (D.D.C. May 9, 2014). Courts routinely hold that these allegations do not satisfy the standard reiterated in *Clapper*: "[S]ince *Clapper* … , courts have been even more emphatic in rejecting 'increased risk' as a theory of standing in data-breach cases…. After all, an *increased risk* or *credible threat* of impending harm is plainly different from *certainly impending* harm, and certainly impending harm is what the Constitution and *Clapper* require." *SAIC*, 2014 WL 1858458, at *8; *see also Peters v. St. Joseph Servs. Corp.*, 2015 WL 589561, at *7 (S.D. Tex. Feb. 11, 2015) (*Clapper* "compels the conclusion that [a plaintiff] lacks standing to … the extent [her claims] are premised on the heightened risk of future identity theft/fraud."); *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 656 (S.D. Ohio 2014) ("[U]nder *Clapper*, more [than increased risk of harm] is required to show an injury is certainly impending."); *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451,

467-70 (D.N.J. 2013) (allegations of possible future injury insufficient).

These cases demonstrate that the plaintiffs here cannot carry their burden of establishing standing.  More than three months have passed since the plaintiffs' PII was allegedly stolen in the attack, but they still cannot allege a single instance of fraud or identity theft resulting in actual loss.

Of the nine plaintiffs, six of them—Mathis, Levine, Springer, Shapiro, Exum, and Archibeque—have not alleged any misuse of their PII at all.  Instead, the only "losses" these plaintiffs claim to have suffered are (1) an alleged diminution in the value and control of their PII; (2) current and future costs, including "opportunity costs" associated with monitoring for identity theft and mitigating the risk of future identity theft; and (3) a future risk of disclosure of other undefined information allegedly still in SPE's possession.  Am. Compl.  ¶ 146.  These allegations are insufficient to establish Article III standing.  *See, e.g.*, *SAIC*, 2014 WL 1858458, at *6-8 (relying on *Clapper* to reject standing based on alleged "risk of identity theft" and "cost of credit monitoring and other preventative measures"); *id.* at *6 (alleged injury "entirely dependent on the actions of an unknown third party—namely, the thief" is insufficient to confer standing); *Galaria*, 998 F. Supp. 2d at 657 (post-*Clapper*, "the increased risk that Plaintiffs will be victims of identity theft, identity fraud, medical fraud, or phishing at some indeterminate point in the future" along with "costs to mitigate" those same risks are insufficient injuries to create standing); *In re iPhone Application Litig.*, 2011 WL 4403963, at *4-5 (N.D. Cal. Sept. 20, 2011) (alleged loss of value of PII is insufficient to establish standing).[3]

---

[3]     Archibeque alleges that her "email address and password [were] being sold on a black market website."  Am. Compl. ¶ 98.  But she never claims that anyone used that information for any fraudulent purpose or that she has suffered any actual loss from this alleged activity beyond the "losses" alleged by the other plaintiffs from the dissemination of their PII.  Exum alleges that after he had his credit frozen, he incurred bank fees when certain automatic bill payments were declined and that he could not access additional credit.  *Id.* ¶ 129.  These costs associated with preventing future identity theft do not establish standing.  *See Storm v.*

Two other plaintiffs, Corona and Forster, attempt to establish standing by alleging that unknown individuals made unsuccessful attempts to open bank and credit-card accounts in their names.  Am. Compl. ¶¶ 82, 93.  In Corona's case, the alleged attempt was thwarted because he followed SPE's recommendations to monitor his accounts and to sign up for the AllClearID service offered by SPE to current and former employees.  *See id.* ¶¶ 65, 82.  In Forster's case, it was prevented by routine fraud detection procedures.  *Id.* ¶ 93.  The fact that the attempted frauds were unsuccessful means that Corona and Forster did not suffer "any quantifiable damage or loss" redressable by this Court.  *See Peters*, 2015 WL 589561, at *7 (failed attempt to fraudulently charge credit card not a redressable injury sufficient to confer standing); *see also In re Barnes & Noble Pin Pad Litig.*, 2013 WL 4759588, at *6 (N.D. Ill. Sept. 3, 2013) ("In order to have suffered an actual injury" of a fraudulent charge, plaintiff "must have had an unreimbursed charge on her credit card[.]").  Corona and Forster also do not provide any factual basis or concrete allegations that these alleged thwarted attempts were in any way related to PII they allege was stolen in connection with the attack on SPE.  *See Barnes & Noble*, 2013 WL 4759588, at *6 ("[I]t is not directly apparent that the fraudulent charge was in any way related to the security breach[.]").

The remaining plaintiff, Bailey, does not allege that she herself suffered any actual or attempted identity theft, but rather claims that an unknown individual "appears" to have made unauthorized withdrawals from her husband's bank account.  Am. Compl. ¶ 116.  That allegation also misses the mark.  In contrast to specific allegations about which of her own PII was allegedly stolen, Bailey alleges only in general and conclusory terms that "PII of her dependents and people

---

*Paytime, Inc.*, 2015 WL 1119724, at *7 (M.D. Pa. Mar. 13, 2015) (relying on *Clapper* to dismiss for lack of standing based on allegations "different in form but not in substance from the classic forms of preventive measures taken in data breach cases, such as credit monitoring" and finding "no compensable injury").

1   designated on her employment-related benefits through SPE" was stolen.  *Id.* ¶ 112.

2   Bailey pleads no specific facts about her husband or any bank account information,

3   nor does she allege that the unauthorized charges were unreimbursed.  Accordingly,

4   even if she could claim her husband's injury as her own (and she cannot), Bailey

5   does not "causally link" that injury to the SPE attack.  *See SAIC*, 2014 WL

6   1858458, at *11 (no standing for plaintiffs who allegedly suffered unauthorized

7   credit card charges and bank account withdrawals where "[n]o one alleges that

8   credit-card, debit-card, or bank account information was … stolen"); *see also*

9   *Barnes & Noble*, 2013 WL 4759588, at *6.

10      Two decisions by federal district courts in California find that,

11   notwithstanding *Clapper*, allegations of an increased risk of identity theft and costs

12   incurred to hedge against future harm can be sufficient to establish standing.  In *In*

13   *re Adobe Systems, Inc. Privacy Litig.*, 2014 WL 4379916, at *7 (N.D. Cal. Sept. 14,

14   2014), and *Sony II*, 996 F. Supp. 2d at 961, the courts concluded that they were

15   bound by the Ninth Circuit's pre-*Clapper* decision in *Krottner v. Starbucks Corp.*,

16   628 F.3d 1139 (9th Cir. 2010), to hold that the plaintiffs' allegations of an

17   increased risk of identity theft sufficed to establish standing.  But because the

18   Ninth Circuit's decision in *Krottner* is "clearly irreconcilable" with the Supreme

19   Court's decision in *Clapper*, this Court should follow the Supreme Court's later

20   ruling.  *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

21   *Krottner*'s holding cannot be squared with the Supreme Court's holding that a

22   threatened injury must be "'*certainly impending*,'" and that even an "objectively

23   reasonable likelihood" of injury—*i.e.*, a credible threat of harm—is insufficient.

24   *Clapper*, 133 S. Ct. at 1147.  Other courts have repeatedly recognized as much.

25   *See, e.g.*, *Peters*, 2015 WL 589561, at *7; *SAIC*, 2014 WL 1858458, at *8

26   (grouping *Krottner* with cases whose standards are "clearly not supportable" "after

27   *Clapper*"); *Galaria*, 998 F. Supp. 2d at 656.

28

There is more.  *Krottner* relied heavily on the Seventh Circuit's decision in *Pisciotta v. Old National Bancorp*, 499 F.3d 629 (7th Cir. 2007), which held that "plaintiffs whose data had been stolen but not yet misused had suffered an injury-in-fact sufficient to confer Article III standing."  *Krottner*, 628 F.3d at 1142-43. But most district courts in the Seventh Circuit have dismissed data breach cases on standing grounds under *Clapper*, with at least one court expressly concluding that *Pisciotta* is no longer good law after *Clapper*.  *See Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 879 (N.D. Ill. 2014) ("To the extent that *Pisciotta* stands for the proposition that a risk of future harm does not have to be 'imminent,' 'certainly impending,' or pose greater than an objectively reasonable likelihood of injury (the standard *Clapper* expressly rejected as inadequate), this Court cannot square it with *Clapper*.").[4]

*Clapper* governs here, and requires the plaintiffs to allege a current injury or a threatened injury that is "'*certainly impending*.'"  133 S. Ct. at 1147.  The plaintiffs have not done so.  The plaintiffs thus lack Article III standing, and the Complaint should be dismissed.

---

[4]   *See also Lewert v. P.F. Chang's China Bistro, Inc.*, 2014 WL 7005097, at *3 (N.D. Ill. Dec. 10, 2014) (relying on *Clapper* to find no standing where "[p]laintiffs do not allege that identity theft has occurred; rather, they allege that identity theft *may* happen in the coming years"); *Barnes & Noble*, 2013 WL 4759588, at *4-5 (dismissing data breach claims for lack of standing under *Clapper* without reference to *Pisciotta*).  *But see Moyer v. Michaels Stores, Inc.*, 2014 WL 3511500, at *5 (N.D. Ill. July 14, 2014); *cf. Remijas v. The Neiman Marcus Group LLC*, 2014 WL 4627893, at *2-5 (N.D. Ill. Sept. 16, 2014) (reconciling *Pisciotta* with *Clapper*, but finding that plaintiffs lacked standing).

### III.   THE PLAINTIFFS' COMMON LAW CLAIMS FAIL

#### A.   The Plaintiffs Fail To Plead Facts Sufficient To State A Claim For Negligence

##### 1.   The Plaintiffs Do Not Allege A Cognizable Injury

The plaintiffs assert a negligence claim based on SPE's alleged failure to (1) implement and maintain adequate security measures to safeguard its employees' PII, and (2) timely notify them of the cyber-attack.  Am. Compl. ¶¶ 150, 151.  But "[u]nder California law, appreciable, nonspeculative, present harm is an essential element of a negligence cause of action."  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.* ("*Sony I*"), 903 F. Supp. 2d 942, 962 (S.D. Cal. 2012).  Courts therefore "routinely dismiss" negligence claims in actions where, as here, "a plaintiff alleges [only] … an increased risk of identity theft and money spent on monitoring credit."  *Grigsby v. Valve Corp.*, 2012 WL 5993755, at *2 (W.D. Wash. Nov. 14, 2012) (dismissing negligence claim, among others); *see also Pisciotta*, 499 F.3d at 639 (discussing "a series of cases" rejecting data breach claims, all "on the same basic premise" that "[w]ithout more than allegations of increased risk of future identity theft, the plaintiffs have not suffered a harm that the law is prepared to remedy").  None of the plaintiffs here alleges that the theft of his or her PII has caused recoverable damages.  As a result, for many of the same reasons that the plaintiffs fail to establish standing, they also fail to adequately allege the harm element of a negligence claim.[5]

---

[5]   This is so even if the Court determines that *Krottner* remains good law on Article III standing.  As the Ninth Circuit explained in a memorandum disposition issued concurrently with its published opinion in *Krottner*, its conclusion that the plaintiffs had "pled an injury-in-fact for purposes of Article III standing [did] not establish that they adequately pled damages for purposes of their state-law claims." 406 F. App'x 129, 131 (9th Cir. 2010).  The court therefore affirmed dismissal of the plaintiffs' negligence claim because it was premised entirely on "the danger of future harm."  *Id.*

Neither Archibeque and Bailey's allegation that their PII has been disseminated on the "black market" nor Corona and Foster's allegation of unsuccessful attempts to open accounts suffices to state a claim for negligence. *See* Am. Compl. ¶¶ 82, 93, 98, 115.  To adequately plead a negligence claim, the plaintiffs must allege, in "specific factual statements," that their PII "has been misused, *in the form of an open bank account, or un-reimbursed charges*."  *Sony I*, 903 F. Supp. 2d at 963 (emphasis added).  The plaintiffs here, by contrast, allege precisely what the *Sony I* court found insufficient to state a negligence claim: "the mere 'danger of future harm, unaccompanied by present damage.'"  *Id.*  As in *Sony I*, "no Plaintiff alleges any identity theft or unauthorized use of his information causing a pecuniary loss," *id.* at 962; at most, they allege a speculative fear of potential *future* losses, against which they can take (and have taken) precautions. That is not enough.  *See id.* at 963; *see also Krottner*, 406 F. App'x at 131 (affirming dismissal of negligence claim where "the only plaintiff who claim[ed] his personal information ha[d] been misused[]" had "allege[d] no loss related to the attempt to open a bank account in his name").

To the extent the plaintiffs' negligence claim is predicated on SPE's alleged failure to timely notify them of the cyber-attack, it fails for an additional reason. To adequately state a negligence claim on this theory, the plaintiffs must allege "cognizable injury proximately caused" by the delay.  *Sony II*, 996 F. Supp. 2d at 965; *see also Adobe*, 2014 WL 4379916, at *10 (plaintiffs must show "*incremental* harm as a result of the delay") (emphasis added).  The plaintiffs assert vaguely that if SPE had notified them earlier, they would have taken steps sooner to protect their PII.  *See, e.g.*, Am. Compl. ¶¶ 87, 92, 104.  Those conclusory statements do not add up to any allegation of incremental injuries beyond those allegedly caused by the cyber-attack itself.

### 2.   The Economic Loss Doctrine Bars The Claim

The plaintiffs' negligence claim is also precluded by the economic loss doctrine, which "bars a plaintiff from recovering for purely economic losses under a tort theory of negligence." *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 528 (N.D. Ill. 2011); *see also, e.g.*, *Seely v. White Motor Co.*, 403 P.2d 145, 151 (Cal. 1965) (in negligence "there is no recovery for economic loss alone"); 65 C.J.S. Negligence § 56 ("Under the economic loss doctrine, a plaintiff may not recover damages under a negligence claim when the plaintiff has suffered no personal injury or property damage.").  The doctrine "reflects the belief that tort law affords the proper remedy for loss arising from personal injury or damages to one's property, whereas contract law and the Uniform Commercial Code"—where the parties are in privity—"provide the appropriate remedy for economic loss stemming from diminished commercial expectations without related injury to person or property." *In re Target Corp. Customer Data Sec. Breach Litig.*, 2014 WL 7192478, at *15 (D. Minn. Dec. 18, 2014) (internal quotation marks omitted); *see Aas v. Superior Ct. of San Diego Cnty.*, 12 P.3d 1125, 1135 (Cal. 2000) (economic loss doctrine preserves distinction between tort and contract), *superseded by statute on other grounds as noted in Rosen v. State Farm Gen. Ins. Co.*, 70 P.3d 351, 357 (Cal. 2003).

The plaintiffs here allege only economic losses, which, as courts have held in similar cases, cannot state a claim for negligence.  *See, e.g.*, *Sony II*, 996 F. Supp. 2d at 967-73 (dismissing California negligence claim under economic loss doctrine); *Michaels*, 830 F. Supp. 2d at 530-31 (dismissing Illinois negligence claim under economic loss doctrine, and noting "other courts dealing with data breach cases have also held that the economic loss doctrine bars the plaintiff's tort claim because the plaintiff has not suffered personal injury or property damage").

The plaintiffs seek to evade this bar by alleging that they had a "special relationship" with SPE.  Am. Compl. ¶ 149.  Under *J'Aire Corp. v. Gregory*, 598

P.2d 60 (Cal. 1979), courts determine the existence of a "special relationship" by examining "(1) the extent to which the transaction [at issue] was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." *Id.* at 63.  The plaintiffs do not have a "special relationship" with SPE, for the reasons persuasively set forth in *Sony II*.[6]

In particular, the plaintiffs' argument fails because they have not alleged anything approaching a "certainty" that they "suffered injury" (let alone cognizable injury) as a result of SPE's alleged negligence.  *See supra* Part II.  This is the most important of the *J'Aire* factors; as the California Supreme Court has explained, absent "that fundamental prerequisite to a tort claim, it is difficult to imagine what other factors, singly or in combination, might justify the court in finding liability." *Aas*, 12 P.3d at 1138; *see also Sony II*, 996 F. Supp. 2d at 968-69.

Moreover, it is clear that this case does not involve the type of "special relationship" contemplated by *J'Aire*.  Indeed, while California courts have not yet addressed whether the employer-employee relationship qualifies as a "special relationship" for economic loss purposes, they have rejected that proposition in a closely related context.  *See Foley v. Interactive Data Corp.*, 765 P.2d 373, 395

---

[6]     Indeed, the plaintiffs' *J'Aire* allegations are almost identical to those rejected in *Sony II*.  *Compare* Am. Compl. ¶¶ 142, 143, 147, 149, 205 (alleging that "SPE's security system … [was] intended to and did affect Plaintiffs," that "[i]t was foreseeable that if SPE did not take reasonable security measures, the [PII] of Plaintiffs … would be stolen," that "[t]here is a very close connection between SPE's failure … and the injuries suffered by Plaintiffs," that "SPE's acts … constitute immoral … activities," and that "[t]he policy of preventing future harm weighs strongly in favor of finding a special relationship"), *with Sony II*, 996 F. Supp. 2d at 968-69.

1   (Cal. 1988) (employer-employee relationship was not a "special relationship" for

2   purposes of recognizing a tort action for breach of the implied covenant).

3        Allowing the plaintiffs to recover for economic loss under these

4   circumstances would blow open *J'Aire*'s narrow exception to the economic loss

5   doctrine.  *See Sony II*, 996 F. Supp. 2d at 972 ("[A]s noted by countless California

6   courts applying *J'Aire*, '[i]f a duty of care to avoid economic injury existed [in

7   every contract], every manufacturer would become an insurer, potentially forever,

8   against economic loss from negligent defects in a product used for its intended

9   purpose.'") (citation omitted).

10   **B.      The Plaintiffs Fail To Plead Facts Sufficient To State An Implied**

11   **Covenant Claim**

12        Plaintiffs' claim for breach of the implied covenant of good faith and fair

13   dealing fails at the starting gate.  "The necessary predicate for such a claim is the

14   existence of a valid contract."  *Stanley v. Univ. of S. California*, 178 F.3d 1069,

15   1078 (9th Cir. 1999).  Plaintiffs nowhere allege an express, written agreement, nor

16   do they allege an implied-in-fact employment contract or factors that would

17   support the existence of one.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 389

18   n.2 (1987) ("Under California law, an implied contract of employment may arise

19   from a combination of factors, including longevity of service, commendations and

20   promotions, oral and written assurances of stable and continuous employment, and

21   an employer's personnel practices.").  This alone is sufficient to dispose of their

22   implied covenant claim.  *See Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 26

23   Cal. Rptr. 2d 762, 770 (Ct. App. 1994) ("Without a contractual underpinning, there

24   is no independent claim for breach of the implied covenant.").

25        Even if the plaintiffs could surmount this hurdle, the claim fails for other

26   reasons as well.  "[T]he implied covenant of good faith is read into contracts in

27   order to protect the express covenants or promises of the contract."  *Carma*

28   *Developers (California), Inc. v. Marathon Dev. California, Inc.*, 826 P.2d 710, 727

(Cal. 1992) (internal quotation marks omitted).  That is, the covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*…. It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat'l Inc.*, 8 P.3d 1089, 1110 (Cal. 2000) (internal quotation marks and internal citations omitted). Consistent with these principles, "to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated." *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012) (internal quotation marks omitted).  Even if plaintiffs could show the existence of an implied contract—which they do not attempt to do—the plaintiffs point to nothing that would support a further implication of contract terms addressing PII.

In addition, to state a claim for breach of the implied covenant, just as in any breach of contract claim, the plaintiffs must allege that they were "harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).  Specifically, "[u]nder California law, a breach of contract claim requires a showing of appreciable and actual damage." *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009), *aff'd*, 380 F. App'x 689 (9th Cir. 2010).  The plaintiffs have alleged no such damages here; their allegations of increased risk of future identity theft and credit monitoring costs do not suffice. *See id.* at 917 (dismissing contract claim where plaintiff "has not been a victim of identity theft," and so "he can present no evidence of appreciable and actual damage"); *see also id.* at 918 (no contract claim premised on credit monitoring costs, because plaintiff "has no actual damages to mitigate since he has never been a victim of identity theft").  The plaintiffs' failure to plead any concrete, non-speculative injury therefore dooms this claim for the same reason the plaintiffs cannot establish standing or state a negligence claim.

Finally, the plaintiffs' allegation of negligence does not suffice to state an implied-covenant claim. To state such a claim, plaintiffs must plead "facts showing *bad faith* and demonstrating a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence, *but rather by a conscious and deliberate act*." *Env't Furniture, Inc. v. Bina*, 2010 WL 5060381, at *3 (C.D. Cal. Dec. 6, 2010) (internal quotation marks omitted) (emphasis added). Alleged failures to safeguard PII or to timely notify the plaintiffs that their information was compromised are not "the type of conscious and deliberate acts" that breach the implied duty of good faith and fair dealing. *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 865 (N.D. Cal. 2011) (dismissing claim that defendant breached the implied duty by "fail[ing] 'to take commercially reasonable steps to safeguard and secure' plaintiff's PII information, and … fail[ing] 'to promptly and sufficiently notify' plaintiff that his PII had been compromised"); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1329 (11th Cir. 2012) (holding that alleged "fail[ure] to safeguard" PII or "fail[ure] to promptly and sufficiently notify" plaintiffs of data theft is insufficient to state a claim for breach of the implied duty of good faith and fair dealing). Without allegations that SPE consciously and deliberately failed to safeguard their PII, the plaintiffs' claim for breach of the implied duty of good faith and fair dealing fails.

## IV.   THE PLAINTIFFS' STATUTORY CLAIMS FAIL

### A.   California Customer Records Act

The plaintiffs' claim under the California Customer Records Act (CRA), California Civil Code §§ 1798.80 *et seq*., fails for at least three reasons.

*First*, the plaintiffs may not sue under the CRA because they are not "customer[s]" within the meaning of the statute. As its title demonstrates, the California *Customer* Records Act provides relief to "[a]ny *customer* injured by a violation of this title." Cal. Civ. Code § 1798.84(b) (emphasis added). The term "customer" means "an individual who provides personal information to a business

for the purpose of purchasing or leasing a product or obtaining a service from the business." *Id.* § 1798.80(c).  Only a "customer" as defined by the statute may obtain relief—whether "damages, statutory penalties, or injunctive relief." *Boorstein v. CBS Interactive, Inc.*, 165 Cal. Rptr. 3d 669, 675 (Ct. App. 2013).  The plaintiffs here are former employees, not customers, of SPE.  Am. Compl. ¶¶ 4,131.  They do not claim to have purchased anything from SPE or to have obtained any service that would entitle them to relief under the CRA.

*Second*, under the CRA, the plaintiffs must plausibly allege that they were "injured" by SPE's conduct.  Cal. Civ. Code § 1798.84(b); *see also Boorstein*, 165 Cal. Rptr. 3d at 675 ("a plaintiff must have suffered a statutory injury to have standing to pursue a cause of action under" the CRA).  But as shown above, the plaintiffs' claimed injuries are purely speculative.  *See supra* Part III.A.1.

*Third*, to the extent plaintiffs allege that SPE delayed in notifying them of the cyber-attack, Am. Compl. ¶ 173, they fail to allege any cognizable harm attributable to the purported delay.  *See Adobe*, 2014 WL 4379916, at *10 (under CRA, plaintiff must allege "incremental harm as a result of the delay" in notification); *see also supra* Part III.A.1.

**B.   California Confidentiality Of Medical Information Act**

The plaintiffs' claim under the California Confidentiality of Medical Information Act (CMIA) also fails for at least three reasons.

*First*, the CMIA defines "medical information" as "any individually identifiable information … in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment."  Cal. Civ. Code § 56.05(j).  Five plaintiffs—Corona, Forster, Levine, Springer, and Bailey— allege generally that they provided "medical information" to SPE.  Am. Compl. ¶¶ 80, 90, 100, 106, 112.  But they do not allege that the cyber-attackers ever stole any of that information, nor that the information they allegedly provided to SPE

1   was "derived from" any of the sources identified in the statute.  Shapiro alleges

2   that he "believes" that his "medical information" was "compromised" in the attack.

3   *Id*. ¶ 122.  But like the other plaintiffs, Shapiro fails to allege that the information

4   was "derived from" any of the sources specified by the statute, and his asserted

5   belief is based solely on general accounts of the cyber-attack rather than any facts

6   indicating that his own medical information was compromised.  *See id*. (alleging

7   "he heard" about compromised medical information of SPE employees).

8        *Second*, the plaintiffs' claim fails because they have not alleged that SPE

9   undertook an "affirmative act of communication" with respect to their medical

10  information.  *Regents of Univ. of California v. Superior Ct.*, 163 Cal. Rptr. 3d 205,

11  216 (Ct. App. 2013), *as modified on denial of reh'g* (Nov. 13, 2013) (defining

12  "disclosure" as used in CMIA § 56.10); *see also Sutter Health v. Superior Ct.*, 174

13  Cal. Rptr. 3d 653, 658-59 (Ct. App. 2014) (discussing *Regents*).  The plaintiffs

14  themselves recognize that SPE did not take any affirmative act to communicate

15  their medical information; their own Complaint alleges that a third party stole it.

16  Am. Compl. ¶¶ 21, 23 ("[T]he hackers had stolen … medical … information.").

17       *Sutter Health* is instructive.  In that case, a thief stole medical records

18  maintained by a group of health care providers.  174 Cal. Rptr. 3d at 656.  The

19  plaintiffs sued the providers for violating the CMIA by "disclos[ing]" their medical

20  information.  *Id*.  These allegations did not state a claim under the CMIA, the

21  Court of Appeal explained, because the defendant "did not intend to disclose the

22  medical information to the thief, so there was no affirmative communicative act by

23  [defendant] to the thief."  *Id.* at 660.  The plaintiffs' claims similarly fail.

24       *Third*, to the extent the plaintiffs seek to recover actual damages on their

25  CMIA claims, they have alleged no harm resulting from any alleged violation of

26  the CMIA (*see supra* Part III.A.1), and thus no basis for such damages.

27

28

Memorandum in Support of Motion to Dismiss

### C.     California Unfair Competition Law

#### 1.     The Plaintiffs Do Not Allege Loss Of Money Or Property

The plaintiffs lack standing to sue under the California's Unfair Competition Law (UCL) because they have not alleged the loss of any "money or property" within the meaning of the statute.  *See Troyk v. Farmers Grp., Inc.*, 90 Cal. Rptr. 3d 589, 625 n. 31 (Ct. App. 2009) (UCL plaintiff's alleged "'injury in fact'" must "specifically involve 'lost money or property'").  The plaintiffs' UCL claim is premised on the alleged loss and diminution of value of their PII, the heightened risk of identity theft, and money spent on mitigating the alleged loss of information. Am. Compl. ¶ 216.  But courts have consistently held in cases involving compromised PII that losses of this type do not qualify as "money or property" under the UCL.  *See, e.g.*, *Sony I*, 903 F. Supp. 2d at 966 ("[T]he heightened risk of identity theft, money spent on mitigation of that risk, and property value of one's information, do not suffice as injury under the UCL[.]"); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd in relevant part*, 572 F. App'x 494 (9th Cir. 2014) ("[P]ersonal information does not constitute property for purposes of a UCL claim."); *iPhone*, 2011 WL 4403963, at *14.

#### 2.     The Plaintiffs Allege No Unlawful, Unfair, Or Fraudulent Conduct

The plaintiffs also fail to adequately plead violations of law or policy that could constitute unlawful or unfair conduct within the meaning of the UCL.  They claim that "SPE's acts, omissions, and conduct were unlawful because they violated the [CRA], the CMIA, and HIPAA," Am. Compl. ¶ 197, because they were negligent, *id.*, and because they failed to comport with the policies served by those statutes and the California Information Practices Act (IPA), *id.* ¶ 203.  The plaintiffs also claim that SPE's alleged conduct was "unfair" because it "undermines or violates the stated policies" of the CRA and IPA.  *Id.* ¶ 204.  But the plaintiffs have not stated (and cannot state) predicate violations under the CRA,

the CMIA, or common-law negligence.  *See supra* Parts III.A.1, IV.A-B.  Nor can they plausibly allege a violation of the IPA, because that statute applies exclusively to the information collection practices of governmental agencies—not private businesses like SPE.  *See* Cal. Civ. Code §§ 1798 *et seq.*  Plaintiffs' off-hand allusion to HIPAA violations also fails because they do not allege that SPE is a "covered entity" under HIPAA; indeed, they cannot, because SPE is neither a health plan nor a health care clearinghouse or provider.  *See* 45 C.F.R. § 160.103.

The plaintiffs also recite various tests under the UCL's "unfair" prong, but they do not provide factual allegations sufficient to meet those tests.  Am. Compl. ¶ 205.  Such threadbare allegations are inadequate to establish "unfairness" under the UCL.  *See Iqbal*, 556 U.S. at 678; *see also Drum v. San Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46, 53-54 (Ct. App. 2010) (affirming dismissal of UCL claim where plaintiff failed to allege facts to satisfy the "unfair" prong); *Bardin v. DaimlerChrysler Corp.*, 39 Cal. Rptr. 3d 634, 638-46 (Ct. App. 2006) (similar).

Finally, the plaintiffs cannot predicate their UCL claim on alleged fraud.  *See* Am. Compl. ¶¶ 206, 210-211.  As a threshold matter, where a UCL claim is premised on alleged fraud, plaintiffs are required to satisfy the more exacting pleading requirements of Fed. R. Civ. P. 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  The plaintiffs have not done so here.

Moreover, the plaintiffs still do not plead a UCL claim because the only purported misrepresentation that plaintiffs point to is a statement regarding the 2011 PlayStation Network attack that Sony "ha[d] … done everything to bring [its] practices at least in line with industry standards or better."  Am. Compl. ¶ 211.  This cannot form the basis of a fraud claim for at least two reasons.

*First*, that statement explicitly refers to, and was made in the context of, the restoration of the PlayStation Network service (which is not owned or operated by SPE), could not reasonably be interpreted to apply to SPE, and thus is irrelevant here.  *See, e.g., Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995)

(holding that a flyer, read in context with its qualifying language, defeats a misrepresentation claim).  *Second*, even if this statement could be construed as deceptive to an SPE employee—which it was not—the plaintiffs fail to allege they knew about or relied on it in providing PII to SPE.  *See Sony II*, 996 F. Supp. 2d at 989.  The plaintiffs do not allege that they were even aware of this statement in 2011.  And in fact, eight of the nine plaintiffs began working for SPE years *before* the remark, and therefore could not have relied on it in deciding whether to provide their information to SPE.  Am. Compl. ¶¶ 77, 83, 95, 99, 105, 111, 118, 125; *see also Sony I*, 903 F. Supp. 2d at 969-70 ("[B]ecause Plaintiffs had already purchased … their consoles when the alleged misrepresentations were made, reliance on such statements in purchasing their consoles is impossible.").  While Plaintiff Forster claims to have been hired by SPE after the comment, he fails to allege reliance upon any alleged deceptive statement prior to providing his information to SPE.  Am. Compl. ¶ 89.  Accordingly, the plaintiffs' affirmative misrepresentation claim must fail.  *See Sony I*, 903 F. Supp. 2d at 969; *In re Steroid Hormone Prod. Cases*, 104 Cal. Rptr. 3d 329, 336-37 (Ct. App. 2010).

   The plaintiffs' failure to plead reliance also dooms their UCL claim to the extent it is based on an allegedly fraudulent omission.  The plaintiffs claim that SPE had "exclusive knowledge" of "deficient security policies and practices" that it "actively concealed."  Am. Compl. ¶¶ 207-210.  But they do not aver that they would have declined their employment offers at SPE had they known about the alleged omissions.  Instead they contradictorily allege that they "would not have provided" PII to SPE "*and* would have insisted that their PII be more securely protected" had they known of the alleged omissions.  *Id.* ¶ 214 (emphasis added).  Such allegations are facially implausible given the plaintiffs' claim that "SPE's employees were required to share sensitive personal … information with SPE as a

1   condition of employment." *Id.* ¶ 149.[7]

2   ### 3.   Restitution Is Not Available

3   To state a UCL claim for restitution, the plaintiffs must identify "monies

4   given to the defendant or benefits in which [they] ha[d] an ownership interest."

5   *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 947 (Cal. 2003). But

6   here the plaintiffs gave no money or property to SPE, so there is nothing to be

7   restored to them. Their PII is not property, *see supra* Parts III.A.2, IV.C.1, and any

8   monies they allegedly paid for supplemental credit-monitoring services were paid

9   to some unspecified third party—not to SPE, *see Sony I*, 903 F. Supp. 2d at 970

10  (plaintiffs are not entitled to relief where they "paid monies to third parties"). SPE

11  has nothing of the plaintiffs' to return. *See M & F Fishing, Inc. v. Sea-Pac Ins.*

12  *Managers, Inc.*, 136 Cal. Rptr. 3d 788, 804 (Ct. App. 2012) ("[A]ppellants could

13  not be required to return something that did not belong to [appellees].").

14  Further, to state a restitution claim, the plaintiffs must also plausibly allege

15  that any "loss" to them was a "gain" to SPE. *See, e.g.*, *Wofford v. Apple Inc.*, 2011

16  WL 5445054, at *3 (S.D. Cal. Nov. 9, 2011) ("Case law is clear that the loss of use

17  and loss of value … are not recoverable as restitution because they provide no

18  corresponding gain to a defendant." (citing *Kwikset Corp. v. Superior Court*, 246

19  P.3d 877, 895 (Cal. 2011)). The plaintiffs (sensibly) do not allege that SPE gained

20  anything in the cyber-attack.

21  ### D.   Virginia Code § 18.2-186.6(B)

22  Corona and Springer claim that SPE violated Virginia Code § 18.2-186.6(B)

23  by failing to promptly disclose the cyber-attack. Am. Compl. ¶ 233. While they

24  allege that they incurred expenses for credit monitoring and identity theft

25  ───────────────

[7]   Additionally, plaintiffs Corona, Mathis, Levine, Springer, Shapiro, Bailey,
26  and Archibeque began working for SPE before 2005, which is the earliest date
plaintiffs allege that SPE knew about alleged security deficiencies. Am. Compl.
27  ¶ 43. As a result, those plaintiffs could not have relied on SPE's alleged omissions
28  in providing their PII to SPE.

protection and spent time safeguarding themselves against possible future identity theft, they do not explain how any of those purported harms resulted from a delay in notification as opposed to the attack itself. *See id.* ¶¶ 81, 110. Because Corona and Springer fail to connect SPE's purported notification delay with some incremental injury, their claim must be dismissed. *See Grigsby v. Valve Corp.*, No. Civ. C12-cv-00553, Dkt. 51, slip op. at 12 (W.D. Wash. Mar. 18, 2013) (dismissing analogous Washington notification-delay claim where plaintiff failed to "allege facts supporting the claim that he was injured due to the interval between the hacking incident and [defendant's] notice of the incident and not just that he was injured by the hacking incident alone"); *see also supra* Part III.A.1.

## E. Colorado Consumer Protection Act

Forster claims that SPE violated the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. § 6-1-716(2), by failing to promptly notify him of the cyber-attack. Am. Compl. ¶ 243. His claim fails for at least two reasons. *First*, the Colorado statute does not create a private right of action. It authorizes "the attorney general" to "bring an action in law or equity to address violations." Colo. Rev. Stat. Ann. § 6-1-716(4). Forster accordingly lacks standing to sue.[8] *Second*, Forster also fails to connect any of his injuries to SPE's supposed delay in providing him notification. He alleges no identity theft or other misuse of his PII between November 24, 2014, the date of the attack, and December 9, 2014, when he claims to have received notice of the attack from SPE. Although Forster claims

---

[8] Although another court held that it was "ambiguous" as to whether the Colorado statute confers a private right of action because it also states that "the provisions of this section are not exclusive," *Target Corp.*, 2014 WL 7192478, at *12, SPE submits that this was a misreading of Colorado law. The "exclusive" clause merely clarifies that the statute does not "relieve" covered entities "from compliance with all other applicable provisions of law." Colo. Rev. Stat. Ann. § 6-1-716(b)(4). Absent a "loud and clear" expression of legislative intent to create a private right of action and remedy, under Colorado law, such a right should not be inferred. *See Holter v. Moore & Co.*, 681 P.2d 962, 965 (Colo. App. 1983).

-23-

1    that someone used his PII to "attempt to open a PayPal credit card" under his name

2    in January 2015, *after* SPE's notification, he does not connect that supposed injury

3    to SPE's alleged notification delay.  Am. Compl. ¶ 93.  Accordingly, Forster's

4    claim should be dismissed.  *See supra* Part III.A.1.

5    **V.    THE PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION OR**

6    **        DECLARATORY RELIEF**

7            The plaintiffs seek a declaration that "SPE's existing security measures do

8    not comply with its obligations," and that "SPE must implement and maintain

9    reasonable security measures."  Am. Compl. ¶ 225.  They also seek sweeping

10   injunctive relief, asking the Court to order SPE's compliance with no fewer than

11   nine conditions on a forward-looking basis.  *Id.* ¶¶ 154, 175, 189, 217.  The

12   plaintiffs are entitled to no prospective relief whatsoever—let alone to judicial

13   intervention and ongoing supervision of such extraordinary intrusiveness.

14           The plaintiffs are not entitled to injunctive relief because they have not

15   alleged, and could not allege, that damages would be insufficient to compensate

16   them for the injuries they assert.  "According to well-established principles of

17   equity, a plaintiff seeking a permanent injunction … must demonstrate … that

18   remedies available at law, such as monetary damages, are inadequate to

19   compensate for that injury."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,

20   391 (2006).  If the plaintiffs could plausibly allege any injury, such injury would

21   arise from a single *past* incident—the theft of PII from SPE's network—and the

22   plaintiffs cannot argue that damages would be insufficient to compensate them.

23           Relatedly, because the plaintiffs have alleged only a retrospective injury,

24   they lack standing to seek the prospective relief of an injunction or declaratory

25   judgment.  "[A] plaintiff must demonstrate standing separately for each form of

26   relief sought."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528

27   U.S. 167, 185 (2000).  And "it is not the presence or absence of a past injury that

28   determines Article III standing to seek injunctive relief; it is the imminent prospect

-24-

of future injury." *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014) (internal quotation marks omitted); *Munns v. Kerry*, 2015 WL 1260709, at *6 (9th Cir. Mar. 20, 2015) (to state a claim for injunctive and declaratory relief, plaintiffs "must still show that the threat of injury in the future is 'certainly pending' or that it presents a 'substantial risk' of recurrence").

The extraordinary breadth of the relief that the plaintiffs seek should not be overlooked.  The plaintiffs ask the Court to order—and, presumably, supervise on an indefinite basis—no fewer than nine forward-looking conditions on fine details of SPE's cyber-security, ranging from the content of training materials to the frequency and content of audits, all of which would require the Court to impose its own judgments about what constitutes "prudent industry practices" at any given time. Am. Compl. ¶175.  In effect, the plaintiffs ask this Court to act as a regulator that defines industry standards, oversees all of the details of SPE's information technology security, and imposes its own judgment, both present and future, on this area of constant technological evolution.  Such intrusive standard-setting and monitoring, beyond straining the Court's institutional capacity, would impose remarkable burdens on the Court given the constant evolution of technology and "prudent industry practices" in this field.  Although district courts exercise "considerable discretion in granting injunctive relief," a "court abuses its discretion by fashioning an injunction which is overly broad."  *United States v. AMC Entm't, Inc.*, 549 F.3d 760, 768 (9th Cir. 2008).  Even if the plaintiffs had standing to seek the kind of prospective relief outlined in their complaint—which they do not—they ask this Court to step outside its proper judicial role in order to manage SPE's cyber-security operations well into the future.

## CONCLUSION

The plaintiffs lack standing, do not plead cognizable injury, and cannot sufficiently allege the elements of a viable claim against SPE.  The Complaint should be dismissed in its entirety.

DATED:  March 23, 2015          Respectfully submitted,

By: /s/  *William F. Lee*
    William F. Lee

WILMER CUTLER PICKERING
HALE AND DORR LLP

Attorneys for Defendant

SONY PICTURES ENTERTAINMENT INC.

Memorandum in Support of Motion to Dismiss