Matthew J. Preusch (SBN 298144)
mpreusch@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1129 State Street, Suite 8
Santa Barbara, CA 93101
T: (805) 456-1496
F: (805) 456-1497

Lynn Lincoln Sarko, *admitted pro hac vice*
lsarko@kellerrohrback.com
**KELLER ROHRBACK L.L.P**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
T: (206) 623-1900
F: (206) 623-3384

Daniel C. Girard (SBN 114826)
dcg@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
T: (415) 981-4800
F: (415) 981-4846

Michael W. Sobol (SBN 194857)
msobol@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
T: (415) 956-1000
F: (415) 956-1008

*Interim Co-Lead Class Counsel*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CORONA, CHRISTINA MATHIS, et al., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SONY PICTURES ENTERTAINMENT, INC.,<br><br>Defendant. | **CASE NO. 2:14−CV−09600−RGK−SH**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**<br><br>Hearing Date:   May 11, 2015<br>Time:                 9:00 a.m.<br>Courtroom:       850<br>Judge:             Hon. R. Gary Klausner |

# TABLE OF CONTENTS

I.  Introduction ................................................................................................. 1

II.  Summary of Plaintiffs' Factual Allegations ............................................. 2

III.  Argument .................................................................................................... 4

A.  Plaintiffs Have Article III Standing ................................................ 4

1.  Plaintiffs allege a present injury as well as a "certainly impending" injury and "substantial risk" of harm ................................. 4

2.  Plaintiffs also incurred costs to mitigate the risk of harm ................... 8

3.  SPE relies on distinguishable out-of-circuit cases ............................... 9

B.  Plaintiffs State a Claim for Negligence ............................................ 10

1.  Plaintiffs have suffered an injury ........................................ 10

2.  The economic loss rule does not bar plaintiffs' claim ...................... 12

C.  Plaintiffs State a Claim for Breach of Implied Contract ................... 14

D.  Plaintiffs State a Claim for Violation of the Customer Records Act ............... 16

E.  Plaintiffs State a Claim for Violation of the Confidentiality of Medical Information Act ............................................. 17

F.  Plaintiffs State a Claim for Violation of the Unfair Competition Law ............ 18

1.  Plaintiffs allege loss of money or property ......................... 18

2.  Plaintiffs allege unlawful, unfair and fraudulent conduct ................ 19

G.  Plaintiffs State a Claim for Violation of Virginia Code § 18.2-186.6(B) ......... 22

H.  Plaintiffs State a Claim for Violation of the Colorado Consumer Protection Act ............................................. 23

i

I.    Plaintiffs Are Entitled to Injunctive and Declaratory Relief...........................24

IV.   Conclusion .................................................................................................25

ii

# TABLE OF AUTHORITIES

**Cases**

*Abels v. Bank of America*
  No. C 11-0208 PJH, 2011 WL 1362074 (N.D. Cal. Apr. 11, 2011) .............................. 19

*Anderson v. Hannaford Bros. Co.*
  659 F.3d 151 (1st Cir. 2011) ..................................................... 12

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ......................................................... 4, 8, 18, 22

*Bates v. United Parcel Service, Inc.*
  511 F.3d 974 (9th Cir. 2007) .................................................... 8

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ............................................................ 4

*Boorstein v. CBS Interactive, Inc.*
  222 Cal. App. 4th 456 (2013) .................................................. 16

*Bruce v. Harley-Davidson, Inc.*
  No. CV 09-6588 CAS, 2010 WL 3521776 (C.D. Cal. Apr. 19, 2010) ............... 21

*Burrows v. Purchasing Power, LLC*
  No. 1:12-cv-22800-UU, 2012 WL 9391827 (S.D. Fla. Oct. 18, 2012) ........... 10

*California Medical Association, Inc. v. Aetna U.S. Healthcare of California, Inc.*
  94 Cal. App. 4th 151(2001) ................................................... 20

*Carma Developers, Inc. v. Marathon Development California, Inc.*
  2 Cal. 4th 342 (1992) ........................................................ 15

*Carten v. Hartford Life & Accident Insurance Co.*
  No. C 10-04019 WHA, 2010 WL 4236805 (N.D. Cal. Oct. 21, 2012) ............. 25

*Caterpillar Inc. v. Williams*
  482 U.S. 386 (1987) .......................................................... 14

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY
PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
  20 Cal. 4th 163 (1999).......................................................................................20

*City of Los Angeles v. Lyons*
  461 U.S. 95 (1983) .....................................................................................6, 24

*Clapper v. Amnesty International USA*
  133 S. Ct. 1138 (2013) .......................................................................5, 7, 8, 24

*Claridge v. RockYou, Inc.*
  785 F. Supp. 2d 855 (N.D. Cal. 2011) ............................................................15

*Colorado Insurance Guaranty Ass'n v. Menor*
  166 P.3d 205 (Colo. App. 2007) ....................................................................23

*Falkenberg v. Alere Home Monitoring, Inc.*
  No. 13-cv-00341-JST, 2015 WL 800378 (N.D. Cal. Feb. 23, 2015)...........................18

*Faulkner v. ADT Security Services, Inc.*
  706 F.3d 1017 (9th Cir. 2013).........................................................................4

*Ferrington v. McAfee*
  No. 10-cv-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010).........................20

*Galaria v. Nationwide Mutual Insurance Co.*
  998 F. Supp. 2d 646 (S.D. Ohio 2014)..............................................................9

*Gerrity Oil & Gas Corp. v. Magness*
  946 P.2d 913 (Colo. 1997) .............................................................................23

*Gottreich v. San Francisco Investment Corp.*
  552 F.2d 866 (9th Cir. 1977)..........................................................................21

*Grigsby v. Valve Corp.*
  No. C 12-0553 JLR, 2012 WL 5993755 (W.D. Wash. Nov. 14, 2012).........................11

*Grigsby v. Valve Corp.*
  No. C 12-0553 JLR, Dkt. No. 51 (W.D. Wash. Mar. 18, 2013) ..................................23

iii

*In re Adobe Systems, Inc. Privacy Litigation*
  No. 13-cv-05226-LHK, 2014 WL 4379916 (N.D. Cal. Sept. 4, 2014) .................passim

*In re Barnes & Noble Pin Pad Litigation*
  No. 12-cv-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ......................................10

*In re Facebook Privacy Litigation*
  791 F. Supp. 2d 705 (N.D. Cal. 2011)
  *aff'd* 572 F. App'x 494 (9th Cir. 2014) .........................................................................19

*In re iPhone Application Litigation*
  No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)..............10, 19

*In re iPhone Application Litigation*
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..........................................................................18

*In re Michaels Stores Pin Pad Litigation*
  830 F. Supp. 2d 518 (N.D. Ill. 2011) ................................................................................9

*In re Science Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litigation*
  45 F. Supp. 3d 14 (D.D.C. 2014) ......................................................................................9

*In re Sony Gaming Networks & Customer Data Security Breach Litigation*
  903 F. Supp. 2d 942 (S.D. Cal. Oct. 11, 2012) ..............................................................11

*In re Sony Gaming Networks & Customer Data Security Breach Litigation*
  996 F. Supp. 2d 942 (S.D. Cal. 2014) .....................................................................passim

*In re Target Corp. Customer Data Security Breach Litigation*
  MDL No. 14-2522, 2014 WL 7192478 (D. Minn. Dec. 18, 2014).........................12, 23

*J'Aire Corp. v. Gregory*
  24 Cal. 3d 799 (1979)......................................................................................................13

*Kalitta Air, L.L.C. v. Central Texas Airborne Systems, Inc.*
  315 F. App'x 603 (9th Cir. 2008).....................................................................................13

*Krottner v. Starbucks Corp.*
  628 F.3d 1139 (9th Cir. 2010)..................................................................................5, 6, 8

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY
PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT

*Lemon v. Kurtzman*
  411 U.S. 192 (1973) .............................................................................25

*Lewert v. P.F. Chang's China Bistro, Inc.*
  No. 14-cv-4787, 2014 WL 7005097 (N.D. Ill. Dec. 10, 2014)........................9

*Lincoln General Insurance Co. v. Access Claims Administrators, Inc.*
  596 F. Supp. 2d 1351 (E.D. Cal. 2005) ................................................15

*Maurey v. Univ. of S. Cal.*
  87 F. Supp. 2d 1021 (C.D. Cal. 1999)
  *aff'd*, 12 F. App'x 529 (9th Cir. 2001) ...............................................14

*Mayfield v. United States*
  599 F.3d 964 (9th Cir. 2010) ..............................................................24

*McVicar v. Goodman Global, Inc.*
  No. SACV 13-1223-DOC, 2014 WL 794585 (C.D. Cal. Feb. 25, 2014).....................21

*Merchant v. Lopez*
  No. 09 cv 0856 WQH, 2009 WL 5199410 (S.D. Cal. Dec. 23, 2009) .........................25

*Miller v. Gammie*
  335 F.3d 889 (9th Cir. 2003) ................................................................6

*Moyer v. Michaels Stores, Inc.*
  No. 14 C 561, 2014 WL 3511500 (N.D. Ill. July 14, 2014) ...........................6

*Northstar Financial Advisors Inc. v. Schwab Investments*
  779 F.3d 1036 (9th Cir. 2015) ............................................................14

*Peters v. St. Joseph Services Corp.*
  No. 4:14-cv-2872, 2015 WL 589561 (S.D. Tex. Feb. 11, 2015) ....................9

*Pisciotta v. Old National Bancorp*
  499 F.3d 629 (7th Cir. 2007) ..........................................................6, 11

*Polanco v. Omnicell, Inc.*
  988 F. Supp. 2d 451 (D.N.J. 2013) ................................................10

v

*R.J. Kuhl Corp. v. Sullivan*
   13 Cal. App. 4th 1589 (1993) ....................................................................... 15

*Regents of University of California v. Superior Court*
   220 Cal. App. 4th 549 (2013) ....................................................................... 17

*Remijas v. Neiman Marcus Group, LLC*
   No. 14 C 1735, 2014 WL 4627893 (N.D. Ill. Sept. 16, 2014) ................... 6, 10

*Resnick v. AvMed, Inc.*
   693 F.3d 1317 (11th Cir. 2012) .................................................................... 16

*Ruiz .v Gap, Inc.*
   540 F. Supp. 2d 1121 (N.D. Cal. 2008)
   *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ................................................... 10, 11

*Ruiz v. Gap, Inc.*
   No. 07-5739 SC, 2009 WL 250481 (N.D. Cal. Feb. 3, 2009)
   *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ....................................................... 19

*Seely v. White Motor Co.*
   63 Cal. 2d 9 (1965) ...................................................................................... 12

*Semegen v. Weidner*
   780 F.2d 727 (9th Cir. 1985) ........................................................................ 21

*Storm v. Paytime, Inc.*
   No. 14-cv-1138, 2015 WL 1119724 (M.D. Pa. Mar. 13, 2015) ...................... 9

*Strautins v. Trustwave Holdings, Inc.*
   27 F. Supp. 3d 871 (N.D. Ill. 2014) ............................................................. 10

*Susan B. Anthony List v. Driehaus*
   134 S. Ct. 2334 (2014) ................................................................................... 5

*Tonry v. Security Experts*
   20 F.3d 967 (9th Cir. 1994) .......................................................................... 14

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY
PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT

*United States v. AMC Entertainment, Inc.*
549 F.3d 760 (9th Cir. 2008) ........................................................................25

*Witriol v. LexisNexis Group*
No. C 05-02392 MJJ, 2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) ...........19

*Woods v. Google, Inc.*
889 F. Supp. 2d 1182 (N.D. Cal. 2012) .......................................................22

**Rules**

Fed. R. Civ. P. 9(b) ...............................................................................21, 22

**Statutes**

Cal. Civ. Code § 56.05(j) ...........................................................................17

Cal. Civ. Code § 56.20 ...............................................................................17

Cal. Civ. Code § 56.20(a) ...........................................................................17

Cal. Civ. Code § 56.36(b) ....................................................................17, 18

Cal. Civ. Code § 1621 ................................................................................14

Cal. Civ. Code § 1798.81.5(a) ...................................................................16

Cal. Civ. Code § 1798.81.5(b) ...................................................................16

Cal. Civ. Code § 1798.82(a) .......................................................................16

Cal. Civ. Code § 1798.84(c) .......................................................................16

Colo. Rev. Stat. § 24-72-502(3) .................................................................23

Colo. Rev. Stat. § 6-1-716(2) .....................................................................23

Va. Code § 18.2-186.6(b) ...........................................................................22

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY
PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT

**Other Authorities**

65 C.J.S. Negligence § 56 (2015) ....................................................................13

Restatement (Second) of Torts § 919(1) (1979) ............................................12

viii

## I. Introduction

On November 24, 2014, the media reported that Sony Pictures Entertainment, Inc. ("SPE") had been hacked. Among the nearly 100 terabytes of stolen data was the sensitive personal information of at least 15,000 of SPE's current and former employees, some of whom had not worked at SPE for ten years or more. This data breach did not have to happen. SPE knew its security measures were inadequate and that its employees' personal information was at risk. Instead of heeding the repeated warnings of internal and external auditors, SPE chose cost savings over fixing critical deficiencies in its data security.

Plaintiffs are nine former SPE employees whose financial, medical and other personally identifiable information ("PII") was accessed in the data breach and then posted on the internet. Now that their PII has been exposed, plaintiffs and other SPE employees face a lifetime of vigilance against identity theft. In fact, plaintiffs' and class members' PII has already been traded on black market websites and used by identity thieves. Plaintiffs therefore bring this proposed class action on behalf of all other SPE employees for damages and injunctive relief requiring SPE to implement specific, industry-standard security measures (such as security audits and testing, training, and special protections for employee data) that would have prevented the data breach, and to provide SPE employees and their dependents with ongoing identity theft protection services.

SPE contends that plaintiffs lack Article III standing, but plaintiffs' allegations establish their standing under both Ninth Circuit and Supreme Court precedent. SPE also moves to dismiss each of plaintiffs' claims. As discussed below, plaintiffs have adequately pled their claims for negligence, breach of implied contract, and for violations of the California Consumer Records Act, the California Confidentiality of Medical Information Act, the California Unfair Competition Law, the Colorado Consumer Protection Act, and Virginia's data breach notification statute. SPE's motion to dismiss should be denied.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY
PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.      Summary of Plaintiffs' Factual Allegations

Last year's massive data breach was not the first time a Sony entity was hacked. SPE and its sister companies have been hacked numerous times over the last several years, exposing significant weaknesses in the Sony companies' data security practices. ¶¶ 31-33, 37, 39-41.[1] For example, the 2011 infiltration of the Sony PlayStation Network, which compromised information from over 75 million customer accounts. Experts attributed the breach to an unsophisticated method of hacking that would not have been successful if even the most basic security measures had been in place. ¶ 33. After the breach the CIO of SPE's parent company, Sony Corporation, said the company had "done everything to bring our practices at least in line with industry standards or better." ¶ 35. But hackers were able to breach SPE's and other Sony companies' security measures several more times in the years that followed. ¶¶ 37, 39-41.

These prior data breaches and the recent increase of data breaches at major corporations put SPE on notice that it needed to adopt effective security measures to protect its confidential data. ¶ 42. But SPE chose to forego improvements because of its view, as expressed by its executive director of information security, that "it's a valid business decision to accept the risk" of a security breach. ¶ 43. Both internal and external audits raised alarms about major vulnerabilities in SPE's security systems, including protections for its employees' personal information. ¶¶ 45-46, 50-53, 58. Yet SPE dedicated meager resources to data security. ¶ 51. A former employee called SPE's information security team "a complete joke," and said, "We'd report security violations to them and our repeated reports were ignored." *Id.*

The hackers began releasing portions of the stolen data on November 30, starting with a series of unreleased movies, soon followed by links to a file-sharing site containing a trove of SPE's personnel information. ¶ 22. Over the next several weeks, the hackers posted an estimated 38 million files containing, among other things, SPE employees' names, addresses, birth dates, social security numbers, federal tax records,

---

[1] "¶ __" refers to paragraphs in plaintiffs' Amended Class Action Complaint, ECF No. 43.

2

payroll and other compensation data, performance reviews, bank account and credit card information, criminal background checks, and information about benefits and medical plans. ¶¶ 23-26, 29. The files also contained SPE employees' medical information and the medical information of their family members, including details about health conditions of employees and family members. ¶ 30. The hackers used the stolen data to threaten SPE employees and their families with physical harm, sending emails warning that "not only you but your family will be in danger." ¶¶ 27-28. Plaintiffs' and other SPE employees' PII has been posted on black market websites and used by identity thieves. ¶¶ 24, 72, 82, 93, 98, 115-116.

Instead of promptly notifying its employees that their PII had been stolen, SPE embarked on a public relations campaign to control the damage associated with unflattering comments in emails about movie stars and President Obama, and removing pirated films from the internet. ¶ 61. On the evening of December 2, 2014, more than a week after the breach was revealed, SPE finally issued an internal memo to its current employees advising them "to assume that information about you in the possession of the company might be in [the hackers'] possession." ¶ 63. A second memo issued on December 8 advised current employees that the disclosed information included their social security numbers, bank account and credit card information, compensation, and "HIPAA protected health information." ¶ 65. It was not until December 15, three weeks after the breach was revealed, that SPE posted a "message" for current *and* former employees advising that "the security of certain personally identifiable information about its current and former employees, and their dependents that participated in SPE health plans and other benefits, may have been compromised." ¶ 67. SPE later sent this message to some former employees, but SPE still has not notified all former employees. ¶¶ 66-67.

Now that SPE employees' PII has been stolen and exposed on the internet as a result of SPE's deficient security measures, they and their dependents are victims of identity theft and will be haunted by this massive breach for the rest of their lives. ¶¶ 69-76. In 2013, "one in three consumers who received notification of a data breach became a

3

victim of fraud," and "[d]ata breaches are the greatest risk factor for identity fraud." ¶ 70. By delaying notice to its employees that their PII had been compromised, SPE increased the risk that its employees' PII would be subject to identity theft as employees were unable to take steps to mitigate the risk. ¶ 68. Experts believe the hackers were inside SPE's network for some time, becoming familiar with the network. ¶¶ 54-55, 60. The data released by the hackers also included some of SPE's private cryptographic keys. ¶ 55. As one expert noted, losing control of these cryptographic "keys to the kingdom" is "a big deal," since they can be used to infiltrate SPE's network without detection. ¶¶ 55-56. Absent adequate security measures, SPE's employees' PII will continue to be at risk.

## III.   Argument

A complaint is not required to include "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept "[a]ll well-pleaded allegations of material fact in the complaint" as true and construe them "in the light most favorable to the non-moving party." *Faulkner v. ADT Security Services, Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.   Plaintiffs Have Article III Standing

#### 1.   Plaintiffs allege a present injury as well as a "certainly impending" injury and "substantial risk" of harm

Plaintiffs' allegations are more than sufficient to establish standing. They far exceed the allegations in garden-variety data breach cases where, for example, replaceable credit card numbers are lost. Plaintiffs' allegations demonstrate present as well as concrete and imminent injury because they have forever lost control of every piece of data their employer had about them, including their social security numbers, home addresses, compensation and termination records, financial records, medical information, and dependents' data. Under binding Ninth Circuit precedent, Plaintiffs and

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT

their dependents have suffered harm, and will continue to do so far into the future.

The parties agree that in *Krottner v. Starbucks Corp.*, the Ninth Circuit held that a credible *threat* of immediate harm satisfies Article III's injury-in-fact requirement. 628 F.3d 1139, 1143 (9th Cir. 2010). The plaintiffs were employees whose names, addresses, and social security numbers were stored on a stolen laptop. *Id.* at 1140. The court found that although the plaintiffs' personal information had not been misused, they had suffered an injury-in-fact due to the theft of their unencrypted personal information. *Id.* at 1143.

*Krottner* is still binding precedent despite SPE's erroneous assertion that *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013), somehow changed Article III standing principles. *Clapper* stands for the unremarkable proposition "that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Id.* at 1147 (citation omitted) (alteration in original). In fact, the Supreme Court reaffirmed that its decisions do not

> uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about. In some instances, we have found standing based on a "substantial risk" that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm.

*Id.* at 1150 n. 5; *see also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (confirming that "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur"). What is more, the Court's findings were specific to the "especially rigorous" standing inquiry for constitutional challenges to executive power, *Clapper*, 133 S. Ct. at 1147, leading it to find that the plaintiffs fell short of the "substantial risk" standard as well. *Id.* at 1150 n.5.[2]

---

[2] *Clapper* did not involve stolen PII and did not address what constitutes "real and immediate" or "certainly impending" harm in that context. The plaintiffs challenged the constitutionality of section 1881a of the Foreign Intelligence Surveillance Act of 1978, which allows the government to conduct surveillance on foreign individuals who are reasonably believed to be located outside the U.S. *Id.* at 1142. The plaintiffs argued they had standing because there was an "objectively reasonable likelihood" that they would be targets of surveillance as their work required them to engage in sensitive communications

Because *Clapper* did not change the law, it did not overrule *Krottner*. The Ninth Circuit's standard was based on binding Supreme Court precedent. *See Krottner*, 628 F.3d at 1142-43 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *see also In re Sony Gaming Networks & Customer Data Security Breach Litig.*, 996 F. Supp. 2d 942, 961 (S.D. Cal. 2014) ("*Sony II*") ("*Clapper* did not set forth a new Article III framework, nor did the Supreme Court's decision overrule previous precedent requiring that the harm be 'real and immediate.'").[3] While the Ninth Circuit may have phrased the standard slightly differently than the Supreme Court did in *Clapper*, a "credible threat of real and immediate harm" is substantially the same as a "certainly impending" injury or "substantial risk" of harm. *See In re Adobe Systems, Inc. Privacy Litig.*, 2014 WL 4379916, at *8 (N.D. Cal. Sept. 4, 2014) ("The Court does not find that *Krottner* and *Clapper* are clearly irreconcilable. … [The] difference in wording is not substantial.").

SPE admits that courts in this circuit have found that *Clapper* did not implicitly overrule *Krottner*. *See Adobe*, 2014 WL 4379916, at *7-8; *Sony II*, 996 F. Supp. 2d at 961. Courts in this circuit are bound by *Krottner*, not the out-of-circuit district court cases SPE cites. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) ("[D]istrict courts should consider themselves bound by [] intervening higher authority and reject the prior opinion of this court as having been effectively overruled" only when the intervening higher authority is "clearly irreconcilable with our prior circuit authority.").

Plaintiffs' allegations satisfy *Clapper*'s "certainly impending" or "substantial risk" of harm standard. Plaintiffs allege that the hackers spent weeks or more in SPE's network collecting the information they wanted, ¶¶ 54-55, 60, and deliberately targeted the PII of

---

with foreign individuals, *id*., at 1142-43, and the threat of future surveillance caused them to incur costs to protect the confidentiality of their communications. *Id*. at 1145–46.

[3] SPE argues that the Ninth Circuit relied on *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007), which some district courts say was overruled by *Clapper*. But the Ninth Circuit's standard came from *Lyons*, not *Pisciotta*. And courts are split as to whether *Clapper* overruled *Pisciotta*. *See Remijas v. Neiman Marcus Group, LLC*, 2014 WL 4627893, at *2 (N.D. Ill. Sept. 16, 2014) (reconciling *Pisciotta* and *Clapper*); *Moyer v. Michaels Stores, Inc.*, 2014 WL 3511500, at *4-6 (N.D. Ill. July 14, 2014) (same).

6

SPE's employees, as evidenced by the threats they issued directly to the employees. ¶¶ 27-28. All of the plaintiffs allege that their unencrypted PII was stolen in the data breach and then exposed on the internet, including their financial records, health insurance information, social security numbers, employment information, and the PII of their family members. ¶¶ 80, 86, 91, 98, 101, 107, 115, 122, 128. Plaintiff Archibeque's and Plaintiff Bailey's PII was available for sale on black market websites. ¶¶ 98, 115. Plaintiff Corona, Forster and Bailey's PII was used by identity thieves. ¶¶ 82, 93, 116.

Thus, plaintiffs' PII was *already stolen* and they are *already* victims of identity theft as a result of SPE's inadequate security measures. Plaintiffs all face the immediate and substantial risk of anyone with internet access misusing their PII. Plaintiffs' risk of harm is thus nothing like the "highly attenuated chain of possibilities" that would have had to occur in *Clapper* before the plaintiffs ever suffered any harm. 133 S. Ct. at 1148-49. The harm plaintiffs face in this case is far from hypothetical. It is present and real.

In *Adobe*, the court found the plaintiffs satisfied Article III where the plaintiffs alleged that hackers stole *replaceable* credit and debit card data from Adobe's servers but did not allege that their PII had been misused. The court found that "in contrast to *Clapper*, where there was no evidence that any of respondents' communications either had been or would be monitored … here, there is no need to speculate as to whether Plaintiffs' information has been stolen and what information has been taken." 2014 WL 4379916, at *8. Moreover, because the hackers "deliberately target[ed] Adobe's servers," spent several weeks collecting consumers' personal information, and some of the stolen data had been posted on the internet, "the danger that Plaintiffs' stolen data will be subject to misuse can plausibly be described as 'certainly impending.'" *Id.* The court noted that "[t]he threatened injury here could be more imminent only if Plaintiffs could allege that their stolen personal information had already been misused," but that "to require Plaintiffs to wait until they actually suffer identity theft or credit card fraud in order to have standing would run counter to the well-established principle that harm need not have already occurred or be 'literally certain' in order to constitute injury-in-fact." *Id.*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY
PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT

Similarly, in *Sony II*, the court held that the plaintiffs' allegations that their credit and debit card data had been stolen in the 2011 PlayStation Network data breach satisfied *Clapper*'s "certainly impending" standard. 996 F. Supp. 2d at 962 ("Plaintiffs' allegations that their Personal Information was collected by Sony and then wrongfully disclosed as a result of the intrusion [are] sufficient to establish Article III standing at this stage in the proceedings."). The court found "both *Clapper* and *Krottner* controlling, and case law in the circuit analyzing the 'injury-in-fact' requirement following *Krottner* highly persuasive." *Id.* at 961-62 (citing cases). In sum, in both *Adobe* and *Sony II*, the courts found standing based on allegations of harm that were far less egregious than in this case.

SPE also argues that Plaintiffs Bailey, Corona and Forster have not alleged that the identity thefts they experienced were connected with the data breach. But plaintiffs allege that these thefts occurred shortly after the data breach and after they discovered their PII was available on the internet. ¶¶ 80, 82, 91, 93, 115, 116. The Court may plausibly infer from these allegations that the identity theft resulted from the data breach. *See Iqbal*, 556 U.S. at 678. As in *Adobe* and *Sony II*, however, plaintiffs' standing does not depend on the actual misuse of their data, since they have shown that a "certainly impending" and "substantial risk" of harm due to their unencrypted PII being exposed on the internet. And "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

### 2.       Plaintiffs also incurred costs to mitigate the risk of harm

Plaintiffs allege that they have spent, and will continue to spend, considerable time and money in an effort to mitigate the risk of identity theft by purchasing identity protection and monitoring services, changing and monitoring bank and credit card accounts, and placing fraud alerts with credit agencies and the IRS. ¶¶ 80-81, 87, 91-92, 94, 97-98, 101-03, 109-10, 114, 122-23, 129. Unlike the costs the plaintiffs incurred in *Clapper*, which the Supreme Court found were incurred to "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending," 133 S. Ct. at 1151, plaintiffs' costs were reasonably incurred to

8

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY
PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT

mitigate of avoid the substantial risk of harm. *Id.* at 1150 n.5; *see also Adobe*, 2014 WL 4379916, at *9 ("As the Court has found that all Plaintiffs adequately alleged that they face a certainly impending future harm from the theft of their personal data, … the Court finds that the costs Plaintiffs … incurred to mitigate this future harm constitute an additional injury-in-fact.").

### 3.     SPE relies on distinguishable out-of-circuit cases

SPE urges the Court to part ways with the *Adobe* and *Sony II* courts and instead rely on out-of-circuit cases. *None* of SPE's cases have facts nearly as compelling as the facts of this case. In most of SPE's cases, the stolen data was credit card information, which is rendered useless when the cards are replaced, not highly personal and irreplaceable data like social security numbers and employment and medical information. *See, e.g.*, *Lewert v. P.F. Chang's China Bistro, Inc.*, 2014 WL 7005097, at *1 (N.D. Ill. Dec. 10, 2014) (credit and debit card data); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 522 (N.D. Ill. 2011) (same). In other cases, the plaintiffs' data had not been exposed on the internet or misused by identity thieves. *See Storm v. Paytime, Inc.*, 2015 WL 1119724, at *3, 7 (M.D. Pa. Mar. 13, 2015); *Galaria v. Nationwide Mutual Insurance Co.*, 998 F. Supp. 2d 646, 650, 654 (S.D. Ohio 2014).

In some of the cases SPE cites, the risk of harm depended on a "speculative chain of possibilities" as in *Clapper*. *See In re Science Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 25 (D.D.C. 2014) (a thief who stole encrypted backup tapes would have to know what they were, obtain specialized equipment to read them, break the encryption, and obtain specialized software to read the data before being able to misuse it); *Peters v. St. Joseph Services Corp.*, 2015 WL 589561, at *7 (S.D. Tex. Feb. 11, 2015) (the plaintiff's feared harm would be realized only "*if* third parties become aware of her exposed information and reveal their interest in it; *if* they form an intent to misuse her information; and *if* they take steps to acquire and actually use her information to her detriment").

The remainder of SPE's cases are distinguishable because it was not clear that the

9

plaintiffs' personal information had even been stolen. *See Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 874, 876 (N.D. Ill. 2014) (it was unclear if the plaintiff's information had even been taken); *Remijas*, 2014 WL 4627893, at *3 ("the overwhelming majority of the plaintiffs allege only that their data *may* have been stolen"); *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 467-70 (D.N.J. 2013) (plaintiff "essentially concede[d]" she was not at increased risk of her data being misused); *In re Barnes & Noble Pin Pad Litig.*, 2013 WL 4759588, at *4, 6 (N.D. Ill. Sept. 3, 2013) (allegations did not establish that fraudulent charges resulted from data breach); *see also In re iPhone Application Litig.*, 2011 WL 4403963, at *4-5 (N.D. Cal. Sept. 20, 2011) (the plaintiffs alleged injuries to "consumers" generally, not to themselves).

### B. Plaintiffs State a Claim for Negligence

#### 1. Plaintiffs have suffered an injury

Plaintiffs have alleged "appreciable, non-speculative, present harm." Plaintiffs allege that "unauthorized individuals … have already used [their] compromised information to commit identity theft and fraud," ¶ 153, that their PII is being traded online, that they and their dependents have forever lost control over their irreplaceable employment files and other unique information, that they and their dependents have had no choice but to pay for identity protection services, and that their PII has been otherwise misused. For example, Plaintiff Corona discovered that an identity thief had used his compromised PII to attempt to open a new bank account. ¶ 82. Plaintiff Forster learned that an identity thief used his PII to attempt to open a PayPal credit card in his name. ¶ 93. An identity thief used Plaintiff Bailey's PII to make unauthorized cash withdrawals from her husband's bank account, causing her family to incur overdraft charges. ¶ 116. Plaintiffs have therefore suffered appreciable, present harm. *See Burrows v. Purchasing Power, LLC*, 2012 WL 9391827, at *3 (S.D. Fla. Oct. 18, 2012) (sustaining a negligence claim where "an unknown individual" filed a federal tax return in the plaintiff's name); *Ruiz .v Gap, Inc.*, 540 F. Supp. 2d 1121, 1126 (N.D. Cal. 2008) (sustaining a negligence

claim where the plaintiff alleged "an increased risk that his identity may be stolen at some time in the future"), *aff'd*, 380 F. App'x 689 (9th Cir. 2010).

Plaintiffs' allegations are nothing like the vague, speculative allegations in *In re Sony Gaming Networks & Customer Data Security Breach Litigation*, where the court held that the plaintiffs did not state a claim for negligence because they made no "specific factual statements" that their consumer data "has been misused." 903 F. Supp. 2d 942 963 (S.D. Cal. Oct. 11, 2012) ("*Sony I*"). Plaintiffs have also alleged more than just the hypothetical risk of future identity theft, distinguishing their allegations from *Grigsby v. Valve Corp.*, 2012 WL 5993755, at *2 (W.D. Wash. Nov. 14, 2012), and the cases discussed in *Pisciotta*, 499 F.3d at 639. Moreover, plaintiffs only learned of—and, in some cases, succeeded in averting for now—the misuse of their PII after spending time and money to protect their identity. *See, e.g.*, ¶ 103. It is also plausible that plaintiffs' PII has been misused in other ways that they have not yet discovered, as the short-term credit monitoring SPE has offered is insufficient to alert them to all potential misuses and identity theft can go undetected for years. ¶¶ 74, 76.

Plaintiffs' expenditure of time and money in an effort to protect their identities is another cognizable injury in and of itself. *See Ruiz*, 380 F. App'x at 691 (noting that such efforts might constitute an injury under California law). As Judge Diane Wood observed at the hearing for the *Neiman Marcus* appeal, money spent to safeguard one's identity is proof of injury: "You win, I think, only if we think that people should ignore these compromises of their [PII] and that companies like Neiman Marcus are behaving in an economically irrational way to offer $1 million worth of credit insurance."[4] Indeed, why would SPE pay for credit monitoring if it was not trying to guard against real economic damage? SPE cannot have it both ways—offering short-term credit monitoring to protect itself against liability for data breaches, ¶¶ 74-75, while at the same time arguing that when plaintiffs pay to protect themselves with more robust coverage, those out-of-pocket

---

[4] Oral Argument at 16:44, *Remijas v. Neiman Marcus Group, LLC*, No. 14-3122 (7th Cir. Jan. 23, 2015), available at http://media.ca7.uscourts.gov/oralArguments /oar.jsp?caseyear=14&casenumber=3122&listCase=List+case%28s%29.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT

expenses are merely optional and fail to constitute a real injury. SPE did not spend money on credit monitoring for "no reason," and neither do plaintiffs. That is why it is a bedrock principle that "[o]ne whose legally protected interests may have been endangered by the tortious conduct of another is entitled to recover for expenditures reasonably made … in a reasonable effort to avert the harm threatened." Restatement (Second) of Torts § 919(1) (1979); *see also Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 165 (1st Cir. 2011) (plaintiffs may recover reasonable mitigation costs). If plaintiffs did nothing, SPE would argue that they failed to mitigate. While some plaintiffs may have escaped further damage for now, they remain at risk of additional harm as their PII has been exposed.

Finally, plaintiffs have alleged an injury caused by SPE's failure to timely notify them of the breach. *See In re Target Corp. Customer Data Security Breach Litig.*, 2014 WL 7192478, at *15 (D. Minn. Dec. 18, 2014) (denying motion to dismiss where plaintiffs alleged that timely disclosure would have allowed them to take measures to mitigate the risk of identity theft). Several plaintiffs discovered their PII online before they ever heard from SPE that their PII had been compromised by the data breach. ¶¶ 86, 91, 101-02, 128. Plaintiffs allege that they could have taken steps to mitigate the harm if SPE had promptly notified them that their PII had been compromised in the data breach. ¶¶ 81, 87, 92, 98, 104, 110, 129. Plaintiffs allege that due to SPE's delay, they lost the opportunity to immediately secure identity protection, monitoring and recovery services, flag their asset, credit and tax accounts for fraud, report the theft of their social security numbers to financial institutions, credit agencies, and the IRS, monitor their credit reports and financial and health accounts, place credit fraud alerts on their accounts, and take other steps to protect themselves from identity theft. ¶ 173.

### 2. The economic loss rule does not bar plaintiffs' claim

The economic loss rule developed to contain disputes over consumer transactions to contract law. *See Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965) (discussing the difference between "tort recovery for physical injuries and warranty recovery for economic loss"). The doctrine has no place in this case, where plaintiffs bought nothing

from SPE, have been forced to spend time trying to mitigate the effects of the data breach, and face a lifetime of insecurity due to the exposure of their PII on the internet. ¶¶ 68-73, 76, 80-82, 87-88, 91, 94, 97-98, 101-04, 107-10, 114-17, 122-24, 129-30. SPE tries to have it both ways, arguing that plaintiffs have not alleged facts of a contract or "factors that would support the existence of one," while simultaneously arguing that the economic loss rule, which "restricts contracting parties to contractual remedies," 65 C.J.S. Negligence § 56 (2015), bars plaintiffs' tort claim.

Even assuming the economic loss rule does apply, its exception for parties with a "special relationship" preserves plaintiffs' claim. As the California Supreme Court noted in discussing the economic loss rule in *J'Aire Corp. v. Gregory*, the California Legislature's "declaration of the basic principle of tort liability" in Civil Code section 1714 "does not distinguish among injuries to one's person, one's property or one's *financial interests*." 24 Cal. 3d 799, 806 & n.3 (1979) (emphasis added). The injury SPE caused to plaintiffs' financial interests can and should be remedied by tort law.

Application of the six *J'aire* factors confirms that plaintiffs have a "special relationship" with SPE. *See Kalitta Air, L.L.C. v. Central Texas Airborne Systems, Inc.*, 315 F. App'x 603, 605-06 (9th Cir. 2008) (describing the factors and their application). First, SPE required plaintiffs to provide their PII as a condition of employment, not incident to payment for a good or service. *See, e.g.*, ¶ 78.[5] Second, plaintiffs allege that SPE could and should have foreseen the data breach given the prior breaches it and other Sony companies experienced and the warnings of auditors who identified weaknesses in SPE's security system. ¶¶ 31-33, 37, 39-46, 50-53, 58. Third, plaintiffs have suffered injury in the form of identity theft, costs for credit monitoring that will continue for years to come, and the increased risk of future identity theft. *See, e.g.*, ¶¶ 69-76, 82, 93, 98, 115. Fourth, the connection between those injuries and SPE's negligence is supported not only by the close temporal nexus between the two, ¶¶ 80, 86, 91, 98, 101, 107, 115, 122,

---

[5] *Cf. Sony II*, 996 F. Supp. 2d at 969 (finding no special relationship in the context of "everyday consumer transactions").

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT

128, but also by the fact that the PII plaintiffs discovered online was the type that would only have come from SPE's systems. Fifth, SPE's conduct was "blamable" because SPE chose to sacrifice security for profits and ignore warnings about its security. ¶ 43. Finally, as in *Sony II*, plaintiffs allege "that Sony knew of its security vulnerabilities and that imposing liability might influence other businesses to take the necessary precautions." 996 F. Supp. 2d at 972; *see also* ¶ 149. The economic loss rule therefore does not apply.

### C.  Plaintiffs State a Claim for Breach of Implied Contract

SPE argues that plaintiffs cannot state a claim for breach of an implied contract because they have not alleged the existence of a contract. But plaintiffs allege that they entered into implied-in-fact contracts with SPE. "An implied-in-fact contract requires proof of the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and a lawful subject matter." *Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1050-51 (9th Cir. 2015) (citation omitted). Plaintiffs allege each of the necessary elements: that SPE offered them employment in exchange for compensation and other employment benefits, a condition of which was the provision of their PII to SPE, and that plaintiffs accepted the offer and provided their PII to SPE. ¶¶ 78, 84, 90, 96, 100, 106, 112, 119, 126, 158-162. Plaintiffs are not required to allege a written agreement, since an implied contract is "one, the existence and terms of which are manifested by conduct." Cal. Civ. Code § 1621; *Tonry v. Security Experts*, 20 F.3d 967, 971 (9th Cir. 1994) (the existence of an implied contract turns on the intent of the parties). As the case SPE cites makes clear, "an implied contract for employment may arise from a combination of factors," including "an employer's personnel practices." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 389 n.2 (1987). SPE argues that the facts will not support the existence of an implied contract, but that is a determination that should be made by the trier of fact, not at the pleading stage. *See, e.g.*, *Maurey v. Univ. of S. Cal.*, 87 F. Supp. 2d 1021, 1036 (C.D. Cal. 1999), *aff'd*, 12 F. App'x 529 (9th Cir. 2001).

Plaintiffs allege that SPE had a duty to ensure that plaintiffs' PII was used only to

14

provide their compensation and employment benefits, and to reasonably safeguard and protect it from unauthorized uses. ¶¶ 159-60. SPE contends that the implied covenant of good faith and fair dealing does not extend to these duties because they are beyond the terms of the implied contract. The implied covenant of good faith and fair dealing prohibits not just deliberate bad faith conduct, as SPE suggests, it more broadly prohibits parties from acting in a manner that is objectively unreasonable or that would frustrate the reasonable expectations of the other contracting party. *See Carma Developers, Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 373 (1992) (the "covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive" and "[t]he guiding question is whether a party's "conduct [is]contrary to the contract's purposes and the parties' legitimate expectations"); *Lincoln General Insurance Co. v. Access Claims Administrators, Inc.*, 596 F. Supp. 2d 1351, 1369 (E.D. Cal. 2005) ("bad faith may be overt or may consist of inaction") (quoting *R.J. Kuhl Corp. v. Sullivan*, 13 Cal. App. 4th 1589, 1602 (1993)). In entering into implied contracts with SPE, plaintiffs reasonably "expect[ed] that SPE would exercise reasonable care to safeguard and maintain the confidentiality of [the] PII and other confidential information" they were required to provide to SPE as a condition of employment. ¶¶ 78, 84, 90, 96, 100, 106, 112, 119, 126. Plaintiffs allege that SPE performed in a manner that was objectively unreasonable and contrary to plaintiffs' legitimate expectations. ¶ 162.

SPE argues that plaintiffs have not alleged "conscious or deliberate" acts by SPE. Even if that were the standard, which it is not, *see Carma*, 2 Cal. 4th at 373, plaintiffs have alleged in detail not just negligence by SPE, but conscious and deliberate conduct, including SPE's disregard of numerous warnings about its deficient data security, decision to accept the risk of losses associated with a data breach rather than invest resources in fixing known security gaps, and knowing failure to timely and accurately notify employees about the data breach. *See* ¶¶ 31-33. These allegations distinguish this case from those SPE relies on, where the plaintiffs provided "no supporting or factual allegations," *see Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 865 (N.D. Cal. 2011),

1    or provided only general statements that the defendant "failed to safeguard" information,

2    *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1329 (11th Cir. 2012).

3           Finally, as discussed in sections III.A and B above, plaintiffs have alleged harm.

4    ### D.    Plaintiffs State a Claim for Violation of the Customer Records Act

5           Plaintiffs allege that SPE violated California's Customer Records Act ("CRA") by

6    failing to implement reasonable security measures appropriate to the nature of its

7    employees' PII and by failing to immediately notify affected employees that their PII had

8    been compromised. ¶¶ 172-73. SPE contends that plaintiffs cannot state a claim for

9    violation of the CRA because they are not "customers." But the CRA applies to more

10   than customers. The purpose of the Act is to "ensure that personal information about

11   *California residents* is protected" and "encourage businesses that own, license, or

12   maintain personal information about *Californians* to provide reasonable security for that

13   information." Cal. Civ. Code § 1798.81.5(a) (emphasis added). It requires businesses that

14   own or maintain "personal information about a *California resident*" to implement

15   reasonable security practices. *Id.* § 1798.81.5(b) (emphasis added). While the statute

16   allows only a customer to recover damages for a violation, *id.* § 1798.84(a), its injunctive

17   remedy is broader: "Any business that violates, proposes to violate, or has violated this

18   title may be enjoined." *Id.* § 1798.84(e). SPE relies on *Boorstein v. CBS Interactive, Inc.*,

19   222 Cal. App. 4th 456, 464 (2013), but there the plaintiff alleged a violation of section

20   1798.83, which requires businesses to take reasonable steps to dispose of customer

21   records. Plaintiffs allege violations of section 1798.81.5(b), which requires businesses to

22   implement and maintain reasonable security procedures for "personal information about

23   California residents," and section 1798.82(a), which requires businesses to disclose

24   breaches to "a resident of California" whose data was compromised. ¶¶ 172-74.

25          SPE contends that plaintiffs have not alleged that they were injured by SPE's

26   conduct, but as discussed in sections III.A and B above, plaintiffs have alleged that they

27   were injured by SPE's failure to adopt and maintain reasonable security measures. *See*

28   *Adobe*, 2014 WL 4379916, at *11 (finding that "Plaintiffs' allegations of injury-in-fact

16

satisfy the CRA's statutory standing requirement for the same reasons these allegations satisfy Article III"). SPE also argues that plaintiffs have not alleged any harm attributable to SPE's delay in notifying them, but as discussed in section III.B, this is not true. Unlike *Adobe*, plaintiffs have alleged "incremental harm as a result of the delay." *Id.* at *10.

### E. Plaintiffs State a Claim for Violation of the Confidentiality of Medical Information Act

The California Confidentiality of Medical Information Act ("CMIA") requires employers to protect their employees' medical information. *See* Cal. Civ. Code § 56.20. Plaintiffs allege that SPE failed to safeguard its employees' medical information in violation of section 56.20(a), and negligently released its employees' medical information in violation of section 56.36(b). SPE argues that this claim should be dismissed because plaintiffs do not allege that SPE made "an affirmative act of communication" with respect to the PII at issue. But an affirmative act of communication is only required for a violation of section 56.10, which addresses the "disclosure" of medical information. "'[T]o disclose' and 'to release' are not synonymous." *Regents of Univ. of California v. Superior Court*, 220 Cal. App. 4th 549, 564 (2013). Release "is broader" and does not require an affirmative act. *Id.* Instead, "under the usual and ordinary meaning of the statutory language," an employer "who has negligently maintained confidential medical information and thereby allowed it to be accessed by an unauthorized third person—that is, permitted it to escape or spread from its normal place of storage—may have negligently released the information within the meaning of CMIA." *Id.* at 565; *see also id.* at 566 (noting that section 56.36(b) "created a private cause of action for the negligent release of medical records, not only for their unauthorized disclosure or use").

SPE argues that plaintiffs do not allege that their "medical information," as that term is defined by the CMIA, was accessed. The definition of "medical information" is broad, and encompasses "any individually identifiable information … derived from a provider of health care [or] health care service plan … regarding a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j). Several

17

plaintiffs allege that they provided SPE with medical information during their employment. *See* ¶¶ 78, 80 (medical information necessary to determine responsibility for health provider payments, and correspondence relating to health care); ¶ 90 (information about health condition), ¶ 100 (information relevant to health insurance coverage), ¶ 106 (medical information necessary to treat him in the event of a medical emergency), ¶ 112 (medical and health insurance information), ¶¶ 119, 122 (information about major medical procedures and insurance claims). SPE itself informed plaintiffs that their "HIPAA protected health information, such as….claims appeals information you submitted to SPE (including diagnosis and disability code)" and other "health/medical information" they provided outside of the SPE health plans had been compromised. ¶¶ 65, 187. Plaintiffs also allege that a variety of medical information was leaked by the hackers, including communications between SPE and its insurer, memos to SPE's benefits committee, and human resources spreadsheets listing medical costs and health conditions. ¶ 30. Accepting these allegations as true, the Court can reasonably infer that plaintiffs' medical information was accessed. *See Iqbal*, 556 U.S. at 678.

Finally, as discussed in section III.A above, plaintiffs have alleged harm caused by SPE's negligent maintenance and release of their medical information. *See Falkenberg v. Alere Home Monitoring, Inc.*, 2015 WL 800378, at *4 (N.D. Cal. Feb. 23, 2015) ("The relevant injury the CMIA seeks to protect against is the unauthorized disclosure of an individual's CMI."). In any case, plaintiffs are entitled to statutory damages, which SPE does not dispute. Cal. Civ. Code § 56.36(b)(1).

## F. Plaintiffs State a Claim for Violation of the Unfair Competition Law

### 1. Plaintiffs allege loss of money or property

Plaintiffs have alleged sufficient facts to establish their standing under the UCL. To state a claim for injunctive relief under the UCL, a plaintiff need only allege a loss of money or property, and not that the defendant acquired the money or property. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1071-72 (N.D. Cal. 2012) (discussing the "innumerable ways in which economic injury from unfair competition may be

18

shown" (citation omitted)). Plaintiffs allege that they incurred costs to purchase identity protection, monitoring and recovery services for themselves and their families. ¶¶ 81, 87, 97, 103, 109, 114, 123, 129, 216. These allegations are sufficient to establish standing under the UCL. *See, e.g.*, *Witriol v. LexisNexis Group*, 2006 WL 4725713, at *6 (N.D. Cal. Feb. 10, 2006) (finding that an allegation that plaintiff incurred "costs associated with monitoring and repairing credit impaired by the unauthorized release of private information" was sufficient to establish standing under UCL).[6]

The cases SPE cites are distinguishable. In contrast to this case, in two of the cases SPE cites, the plaintiffs did not allege any actual out-of-pocket losses. *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011) (plaintiffs alleged only sharing of their personal information), *aff'd* 572 F. App'x 494 (9th Cir. 2014); *iPhone*, 2011 WL 4403963, at *14 (same). A careful reading of the third case supports plaintiffs' statutory standing. In *Sony I*, the court relied on a single district court case in concluding that money spent on mitigation was not a cognizable injury under the UCL, *Ruiz v. Gap, Inc.*, 2009 WL 250481, at *3-4 (N.D. Cal. Feb. 3, 2009). 903 F. Supp. 2d at 966. But in *Ruiz*, the plaintiff admitted that he did not spend any money to mitigate the data breach, and the court distinguished *Witriol* on that basis, pointing out that in *Witriol* the plaintiffs alleged that they paid money to mitigate the data breach. *Ruiz*, 2009 WL 250481 at *3-4. Unlike *Ruiz*, plaintiffs allege that they incurred out-of-pocket expenses as a result of the breach.

### 2.  Plaintiffs allege unlawful, unfair and fraudulent conduct

Contrary to SPE's assertions, plaintiffs have alleged unlawful, unfair and fraudulent conduct. First, because plaintiffs have adequately pled violations of the CRA and CMIA and for common law negligence, they have pled violations of the UCL's "unlawful" prong. *See Adobe*, 2014 WL 4379916, at *17 (finding the plaintiffs stated a claim under the unlawful prong because they pled a claim for violation of the CRA); *Abels v. Bank of America*, 2011 WL 1362074, at *4 (N.D. Cal. Apr. 11, 2011) ("An act is 'unlawful' under section 17200 if it violates an underlying state or federal statute or

---

[6] Plaintiffs do not intend to seek restitution under the UCL.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY
PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT

common law."). And a violation of a statute that does not provide a private right of action may still constitute a violation of the UCL's unlawful prong, so plaintiffs may base their claim on SPE's violation of the California Information Practices Act ("IPA"). *See Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 169 (2001).

Second, plaintiffs have adequately pled violations of the UCL's "unfair" prong, under both the "tethering" and "balancing" tests applied by California courts. SPE argues, without authority, that no unfair prong violation is pled because plaintiffs have not stated predicate *violations* of other laws. But the unfair prong "creates a cause of action for a business practice that is unfair even if not proscribed by some other law." *Adobe*, 2014 WL 4379916, at *17. The tethering test is satisfied if the policies underlying a statute or common law are implicated by a defendant's misconduct, even if that misconduct does not constitute an actionable violation of the statute or law. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *Adobe*, 2014 WL 4379916, at *18. As in *Adobe*, plaintiffs allege that SPE's information security practices failed to comport with a standard of care and California public policy embodied in various statutes, including the IPA, CRA, CMIA, and HIPAA. ¶ 205. Although there is no private right of action under the IPA, its policies can still support an unfair prong claim. *See Adobe*, 2014 WL 4379916, at *18 (upholding the plaintiffs' "unfair" claim based on conduct that was allegedly inconsistent with policies underlying the IPA).

Plaintiffs' allegations are also sufficient to state a claim under the balancing test. The balancing test "examines whether the challenged business practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Adobe*, 2014 WL 4379916, at *17 (citation omitted); *see also Ferrington v. McAfee*, 2010 WL 3910169, at *13 (N.D. Cal. Oct. 5, 2010) ("A determination under this test requires an examination of the conduct's 'impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.'" (citation omitted)). Plaintiffs allege that SPE ignored repeated warnings

about problems with its data security and emphasized cost savings over preventing data breaches. ¶¶ 31-33. Plaintiffs also allege that SPE's conduct harmed plaintiffs by exposing their PII to substantial risk of identity theft. ¶¶ 68-76. No more is required.

SPE claims that plaintiffs' unfairness allegations are not sufficiently specific under *Iqbal*, but SPE looks only at the allegations in a single paragraph (¶ 205) and ignores the detailed allegations throughout the Amended Complaint that describe SPE's wrongful conduct and plaintiffs' injuries. Plaintiffs are not required to re-assert all of those allegations when pleading the elements of the claim. *McVicar v. Goodman Global, Inc.*, 2014 WL 794585, at *7 (C.D. Cal. Feb. 25, 2014) (rejecting the defendant's argument that the UCL claim should be dismissed because it did not restate allegations elsewhere in the complaint); *Adobe*, 2014 WL 4379916, at *18 (finding the plaintiffs' allegations "elsewhere in the complaint" were adequate to state a claim under the balancing test).

Third, plaintiffs state a claim under the "fraudulent" prong of the UCL. Plaintiffs' allegations are more than sufficient, under Rule 9(b), to put SPE on notice of the specific deceptive conduct for which relief is sought. *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (holding that Rule 9(b) is satisfied as long as the "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong"); *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1977) (a pleading "is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations'" (citation omitted)). Plaintiffs have alleged, in considerable detail, a course of conduct in which SPE both actively concealed deficiencies in its data security,[7]

---

[7] These allegations independently satisfy Rule 9(b). *See Bruce v. Harley-Davidson, Inc.*, 2010 WL 3521776, at *5 (C.D. Cal. Apr. 19, 2010) ("plaintiffs' allegations concerning defendants' superior knowledge and active concealment of a 'material fact' could give rise to the reasonable inference that [defendant] was under a duty to disclose the defect …because plaintiffs' case is based on a theory of fraudulent omission or concealment, the Court recognizes that plaintiffs will not be able to specify the time, place and specific content of an omission as precisely as a plaintiff in a false representation claim").

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY
PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT

1    and in at least one instance affirmatively misrepresented the level of data security SPE
2    maintained. *See* ¶¶ 35-37, 39, 40-41, 45-46, 49, 52, 54-59, 206-214. This detail—
3    including allegations of the information SPE knew but concealed, the timing of the
4    misrepresentation, the speaker, and the actual language used—satisfies Rule 9(b).

5           SPE contends that the alleged affirmative misrepresentation is not actionable
6    because it was "made in the context" of Sony's PlayStation Network service and thus,
7    according to SPE, is "irrelevant" to this case. Plaintiffs disagree since the statement was
8    made by the CIO of Sony Corporation, the parent company of both SPE and the Sony
9    company that owns and operates the PlayStation network, and plausibly addressed the
10   security systems of the Sony corporations generally. ¶ 35. At this stage, the Court should
11   draw that reasonable inference in plaintiffs' favor, leaving resolution of the meaning and
12   import of the statement for a later date. *See Iqbal*, 556 U.S. at 678.

13          SPE argues that plaintiffs could not have relied on the statement because they
14   started working for SPE before it was made. Not only is it reasonable to infer that
15   plaintiffs continued to provide PII to SPE throughout their employment, but plaintiffs
16   allege that they would have insisted that their PII be more securely protected if they had
17   known the truth about SPE's data security, demonstrating their ongoing reliance on
18   SPE's purportedly adequate security measures. Whether plaintiffs reasonably relied upon
19   these misrepresentations and omissions is a question of fact that cannot be resolved on
20   the pleadings. *See Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1196 (N.D. Cal. 2012)
21   ("Reasonableness of reliance is ordinarily a question of fact."). This is not a case in
22   which consumer purchases were made before alleged misrepresentation and omissions, as
23   in *Sony I* and *Sony II*. Nor is there anything inherently contradictory in plaintiffs'
24   allegations that, absent the misrepresentations and omissions, they would not have
25   provided PII to SPE or would have insisted that it be more securely protected.

26   **G.     Plaintiffs State a Claim for Violation of Virginia Code § 18.2-186.6(B)**
27          Plaintiffs allege that SPE violated Virginia's data breach notification statute by
28   failing to notify for them for at least three weeks that their PII had been compromised by

the data breach. ¶ 67 (earliest notification to former employees was December 15). SPE's sole challenge to this claim is that plaintiffs have not alleged an incremental injury caused by the delay. But as discussed in section III.B above, plaintiffs do allege that they were harmed by SPE's delay. *See* ¶ 235. Plaintiff Corona, a Virginia resident, discovered an unencrypted spreadsheet containing his PII online on December 7, before he heard anything from SPE about his PII being compromised by the data breach and before he had an opportunity to obtain identity protection services and take other steps to monitor his accounts. ¶¶ 80-81. SPE cites *Grigsby v. Valve Corp.,* No. 12-00053, Dkt. 51 (W.D. Wash. Mar. 18, 2013), but there the defendant notified the plaintiff of the breach just four days later and the plaintiff alleged no injury caused by the short delay. *Id.*, slip op. at 12.

## H. Plaintiffs State a Claim for Violation of the Colorado Consumer Protection Act

As SPE acknowledges, another federal court upheld a similar claim under the Colorado Consumer Protection Act. *See Target*, 2014 WL 7192478, at *12. While the statute does not expressly create a private right of action, the Colorado legislature has shown that it knows how to prohibit one. *See, e.g.*, Colo. Rev. Stat. § 24-72-502(3) ("Nothing in this section shall be construed to create a private cause of action based on alleged violations of this section."). Moreover, a private cause of action is implied by the statute's text. *See Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 923 (Colo. 1997) (en banc) (discussing the factors for determining whether a statute implicitly creates a private remedy). Plaintiffs are data breach victims and therefore within the class of persons the statue was intended to benefit; the legislature's statement that the statute's provisions "are not exclusive" shows an intent to create a private right of action; and implying such a right encourages compliance with the statute's requirement for commercial entities to "give notice as soon as possible" to persons whose PII has been exposed. Colo. Rev. Stat. § 6-1-716(2); *see also Colorado Insurance Guaranty Ass'n v. Menor*, 166 P.3d 205, 210 (Colo. App. 2007) (finding that although a statute did not expressly provide plaintiff with a cause of action, "it implicitly does so").

1   SPE also argues that plaintiffs have not alleged an "incremental injury" caused by

2   SPE's delay, but that argument again fails for the reasons discussed in section III.B

3   above. Moreover, Plaintiff Forster discovered files with his PII online on December 6,

4   2014, three days before SPE responded to his request for assistance and six days before

5   he received a redemption code from SPE for credit monitoring. ¶¶ 91-92.

### I.   Plaintiffs Are Entitled to Injunctive and Declaratory Relief

6   SPE argues that plaintiffs are not entitled to injunctive and declaratory relief

7   because they can be adequately compensated by damages and have not shown a risk of

8   injury in the future. But plaintiffs allege both that they are at continued risk of identity

9   theft as a result of the data breach—for the rest of their lives—and that the security of

10  their PII remains vulnerable. ¶¶ 68-76. Neither of these prospective harms can be

11  adequately compensated by damages, which is why plaintiffs have requested injunctive

12  relief including ongoing identity theft protection, monitoring and recovery services for

13  class members and their dependents and the assurance that SPE will employ adequate

14  security measures to safeguard class members' PII in the future. ¶ 217.

15  Plaintiffs are entitled to this injunctive relief because they have shown that there is

16  a "substantial risk" that harm has already happened, and that future harm will occur.

17  *Clapper*, 133 S. Ct. at 1150 n.5. Once a plaintiff has been wronged, he is entitled to

18  injunctive relief if "he can show that he faces a 'real or immediate threat … that he will

19  again be wronged in a similar way.'" *Mayfield v. United States*, 599 F.3d 964, 970 (9th

20  Cir. 2010) (quoting *Lyons*, 461 U.S. at 111) (alteration in original). Plaintiffs allege that

21  their PII has been posted on the internet, and some of their PII has been sold on black

22  market websites and used by identity thieves. ¶¶ 82, 93, 98, 115-116. The exposure of

23  plaintiffs' PII subjects them to a substantial risk of future harm from identity theft,

24  particularly given the increased risk of identity theft following a data breach and the fact

25  that it may take years for identity theft to come to light. ¶¶ 68-76.

26  In addition, SPE continues to maintain plaintiffs' PII and has demonstrably failed

27  to adequately protect it. The risk of future breaches is far from speculative, since SPE's

28

data security system, and that of other Sony corporations, have proven to be ineffective on multiple occasions. ¶¶ 31-33, 37, 39-41. SPE failed to take steps to protect its data, including its employees' PII, despite internal and external audits that highlighted major weaknesses in its security system. ¶¶ 45-46, 50-53, 58. And the fact that the data released by the hackers includes some of SPE's cryptographic keys—the "keys to the kingdom"—means that future hackers may be able to access SPE's network without detection. ¶¶ 55-56. Plaintiffs have shown that there is a "substantial risk" of future harm. *See, e.g.*, *Sony II*, 996 F. Supp. 2d at 999 (finding that injunctive relief was appropriate where the plaintiffs "alleged that Sony's network security is still inadequate").

SPE argues that the equitable relief sought by plaintiffs is overbroad and "intrusive." But courts have broad discretion in fashioning appropriate injunctive relief. *See Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) ("equitable remedies are a special blend of what is necessary, what is fair, and what is workable," and "equity has been characterized by a practical flexibility in shaping its remedies"). SPE has cited no authority to support the dismissal of injunctive relief at this time. *See Merchant v. Lopez*, 2009 WL 5199410, at *6 (S.D. Cal. Dec. 23, 2009) (denying motion to dismiss injunctive relief argued to be "overbroad and inappropriate"); *see also Carten v. Hartford Life & Accident Ins. Co.*, 2010 WL 4236805, at *4 (N.D. Cal. Oct. 21, 2012) ("It is…premature to address whether the various flavors of injunctive relief requested in the complaint are 'appropriate.' When, if ever, plaintiff establishes her entitlement to relief, these questions will be ripe for adjudication."). SPE's reliance on *United States v. AMC Entertainment, Inc.*, 549 F.3d 760 (9th Cir. 2008), is misplaced. There, the Ninth Circuit held that the district court's nationwide injunction, issued after granting summary judgment, was overbroad because it "cause[d] substantial interference with the established judicial pronouncements" of the Fifth Circuit. *Id.* at 773. No similar issue exists here.

## IV.   Conclusion

Plaintiffs request that the Court deny SPE's motion to dismiss. If the Court is inclined to grant SPE's motion in any respect, plaintiffs request leave to replead.

Dated:     April 13, 2015          Respectfully submitted,

**KELLER ROHRBACK L.L.P.**

By:  */s/ Lynn Lincoln Sarko*
Lynn Lincoln Sarko, *Admitted pro hac vice*
lsarko@kellerrohrback.com
Gretchen Freeman Cappio, *Admitted pro hac vice*
gcappio@kellerrohrback.com
Cari Campen Laufenberg, *Admitted pro hac vice*
claufenberg@kellerrohrback.com
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

Matthew J. Preusch
mpreusch@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1129 State Street, Suite 8
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497

***Interim Co-Lead Class Counsel and Liaison Counsel***

By:  */s/ Daniel C. Girard*
Daniel C. Girard
dcg@girardgibbs.com
Amanda M. Steiner
as@girardgibbs.com
Linh G. Vuong
lgv@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY
PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT

By:  */s/ Michael W. Sobol*
Michael W. Sobol
msobol@lchb.com
RoseMarie Maliekel
rmaliekel@lchb.com
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Nicholas Diamand
ndiamand@lchb.com
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY10013-1413
Telephone: (212) 355-9500
Facsimile:  (212) 355-9592

*Interim Co-Lead Class Counsel*

Hank Bates
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
11311 Arcade Drive
Little Rock, AR 72212
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

Raúl Pérez
Raul.Perez@Capstonelawyers.com
Jordan L. Lurie
Jordan.Lurie@capstonelawyers.com
Robert Friedl

27

Robert.Friedl@capstonelawyers.com
Tarek H. Zohdy
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett
Cody.Padgett@capstonelawyers.com
**CAPSTONE LAW APC**
1840 Century Park East, Suite 450
Los Angeles, CA 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

John H. Gomez
john@gomeztrialattorneys.com
John P. Fiske
jfiske@gomeztrialattorneys.com
Deborah Dixon
ddixon@gomeztrialattorneys.com
**GOMEZ TRIAL ATTORNEYS**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 237-3490
Facsimile: (619) 237-3496

Joseph G.Sauder
jgs@chimicles.com
Matthew D. Schelkopf
mds@chimicles.com
Benjamin F. Johns
bfj@chimicles.com
Joseph B. Kenney
jbk@chimicles.com
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633

28

Richard A. Maniskas, Esquire
rmaniskas@rmclasslaw.com
**RYAN & MANISKAS, LLP**
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: (484) 588-5516
Facsimile: (484) 450-2582

Steven M. Tindall
stindall@rhdtlaw.com
Valerie Bender
vbrender@rhdtlaw.com
**RUKIN HYLAND DORIA & TINDALL LLP**
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile: (415) 421-1700

Katrina Carroll
kcarroll@litedepalma.com
Kyle A. Shamberg
kshamberg@litedepalma.com
**LITE DEPALMA GREENBERG, LLC**
211 W. Wacker Drive, Suite 500
Chicago, IL 60613
Telephone: (312) 750-1265
Facsimile: (312) 212-5919

***Additional Plaintiffs' Counsel***

**ATTESTATION OF E-FILED SIGNATURE**

I, Daniel C. Girard, am the ECF User whose ID and password are being used to file Plaintiffs' Memorandum of Points and Authorities in Opposition to Sony Pictures Entertainment Inc.'s Motion to Dismiss Complaint .  In compliance with Civil L.R. 5-4.3.4(a)(2)(i), I attest that Lynn Lincoln Sarko and Michael W. Sobol have concurred in this filing.

*/s/ Daniel C. Girard*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SONY
PICTURES ENTERTAINMENT INC.'S MOTION TO DISMISS COMPLAINT