David C. Marcus (SBN 158704)
david.marcus@wilmerhale.com
Christopher T. Casamassima (SBN 211280)
chris.casamassima@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

William F. Lee (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

Noah Levine (*pro hac vice*)
noah.levine@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone:  (212) 230-8800
Facsimile:  (212) 230-8888

Attorneys for Defendant
SONY PICTURES ENTERTAINMENT INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Corona, Christina Mathis, et al., individually and on behalf of others similarly situated,<br><br>                          Plaintiffs,<br><br>        vs.<br><br>Sony Pictures Entertainment, Inc.,<br><br>                          Defendant. | Case No. 2:14-cv-09600 RGK SH<br><br>**SONY PICTURES ENTERTAINMENT INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**<br><br>Hearing Date:   May 11, 2015<br>Time:           9:00 a.m.<br>Courtroom:      850<br>Judge:          Hon. R. Gary<br>                Klausner |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................. ii

I.     THE PLAINTIFFS LACK STANDING ......................................... 1

II.    THE PLAINTIFFS' COMMON LAW CLAIMS FAIL ................................. 4

    A.    Negligence ................................................................ 4

        1.    The Plaintiffs Fail To Allege Appreciable, Present Harm .......... 4

        2.    The Economic Loss Doctrine Bars The Plaintiffs' Claims ........ 6

    B.    Implied Contract ........................................................ 7

III.    THE PLAINTIFFS' STATUTORY CLAIMS FAIL ...................................... 9

    A.    California Customer Records Act ....................................... 9

    B.    California Confidentiality of Medical Information Act .................... 10

    C.    California Unfair Competition Law ...................................... 11

        1.    Costs Incurred Voluntarily For Credit Monitoring Do Not Establish Standing Under The UCL ........................................ 11

        2.    The Plaintiffs Fail To Plead Unlawful, Unfair, Or Fraudulent Conduct Sufficient To State A UCL Claim ............ 12

    D.    Virginia Code § 18.2-18.6(B) ........................................... 14

    E.    Colorado Consumer Protection Act ..................................... 14

IV.    THE PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION OR DECLARATORY RELIEF ................................................. 15

CONCLUSION ......................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson Elec. v. Ledbetter Erection Corp.*,
   503 N.E. 2d 246 (Ill. 1986)...............................................................6

*Anderson v. Hannaford Bros. Co.*,
   659 F.3d 151 (1st Cir. 2011)..............................................................5

*Boorstein v. CBS Interactive*, *Inc.*,
   165 Cal. Rptr. 3d 669 (Ct. App. 2013) .........................................10

*Burrows v. Purchasing Power, LLC*,
   No. 1:12-cv-22800-UU, 2012 WL 9391827
   (S.D. Fla. Oct. 18, 2012)..................................................................4

*Carma Developers (California), Inc. v. Marathon Dev. California, Inc.*,
   826 P.2d 710 (Cal. 1992)...............................................................8, 9

*Caterpillar Inc. v. Williams*,
   482 U.S. 386 (1987).........................................................................7

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   973 P.2d 527 (Cal. 1999)........................................................... 12-13

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013)...............................................................1, 12

*Colorado Ins. Guar. Ass'n v. Menor*,
   166 P.3d 205 (Colo. App. 2007)....................................................14

*Falkenberg v. Alere Home Monitoring, Inc.*,
   No. 13-cv-00341-JST, 2014 WL 5020431
   (N.D. Cal. Oct. 7, 2014) .................................................................12

*Falkenberg v. Alere Home Monitoring, Inc.*,
   No. 13-cv-00341-JST, 2015 WL 800378
   (N.D. Cal. Feb. 23, 2015) ...............................................................11

*Forbes v. Wells Fargo Bank, N.A.*,
   420 F. Supp. 2d 1018 (D. Minn. 2006) ............................................5

Reply Brief in Support of Motion to Dismiss

*Grigsby v. Valve Corp.*,
  No. Civ. C12-cv-00553, Dkt. 51 (W.D. Wash. Mar. 18, 2013) ...................14

*Ham v. Hain Celestial Grp., Inc.*,
  No. 14-cv-02044-WHO, 2014 WL 4965959
  (N.D. Cal. Oct. 3, 2014) ..........................................................................15

*Holter v. Moore & Co.*,
  681 P.2d 962 (Colo. App. 1983) ...............................................................14

*In re Adobe Sys., Inc. Privacy Litig.*,
  No. 13-CV-05226-LHK, 2014 WL 4379916
  (N.D. Cal. Sept. 4, 2014) ......................................................................1, 13

*In re Barnes & Noble Pin Pad Litig.*,
  No. 12-cv-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ......................2

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
  No. 13-7418 (CCC), 2015 WL 1472483 (D.N.J. Mar. 31, 2015) ..................1

*In re Michaels Stores Pin Pad Litig.*,
  830 F. Supp. 2d 518 (N.D. Ill. 2011) .........................................................6

*In re Science Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
  45 F. Supp. 3d 14 (D.D.C. 2014) ...........................................................3, 4

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) .....................................................4, 11

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ...................................................1, 6, 7

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  MDL No. 14-2522 (PAM/JJK), 2014 WL 7192478
  (D. Minn. Dec. 18, 2014)..........................................................................6

*J'Aire Corp. v. Gregory*,
  598 P.2d 60 (Cal. 1979) ...........................................................................6

*Krottner v. Starbucks Corp.*,
  628 F.3d 1139 (9th Cir. 2010) ..................................................................1

*Krottner v. Starbucks Corp.*,
  406 F. App'x 129 (9th Cir. 2010) ..............................................................4

-iii-

*Lewert v. P.F. Chang's China Bistro, Inc.*,
    No. 14-cv-4787, 2014 WL 7005097 (N.D. Ill. Dec. 10, 2014) ......................2

*Munns v. Kerry*,
    __ F.3d __, 2015 WL 1260709 (9th Cir. 2015) ...............................................15

*Opperman v. Path, Inc.*,
    No. 13-cv-00453-JST, 2015 WL 1306494
    (N.D. Cal. Mar. 23, 2015) ............................................................................15

*Peters v. St. Joseph Servs. Corp.*,
    No. 4:14-CV-2872, 2015 WL 589561 (S.D. Tex. Feb. 11, 2015) .................2

*Ruiz v. Gap, Inc.*,
    No. 07-5739 SC, 2009 WL 250481 (N.D. Cal. Feb. 3, 2009) ...............11, 12

*Ruiz v. Gap, Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) .........................................................4

*Ruiz v. Gap, Inc.*,
    622 F. Supp. 2d 908 (N.D. Cal. 2009) .......................................................5, 7

*Saunders v. Garay*,
    No. 11-cv-06322-WHO, 2014 WL 4386727
    (N.D. Cal. Sept. 4, 2014) ............................................................................15

*Shafran v. Harley-Davidson, Inc.*,
    No. 07 Civ. 01365 (GBD), 2008 WL 763177
    (S.D.N.Y. Mar. 20, 2008) ..............................................................................5

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    113 Cal. Rptr. 2d 399 (Ct. App. 2001) ........................................................13

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
    533 F.3d 162 (3d Cir. 2008) ..........................................................................6

*Storm v. Paytime, Inc.*,
    No. 14-cv-1138, 2015 WL 1119724 (M.D. Pa. Mar. 13, 2015) .................1, 2

*Witriol v. LexisNexis Grp.*,
    No. C05-02392 MJJ, 2006 WL 4725713
    (N.D. Cal. Feb. 10, 2006) ............................................................................12

**STATUTES, RULES, AND REGULATIONS**

California Confidentiality of Medical Information Act,
    Cal. Civ. Code § 56 *et seq.* ...........................................................................10

California Customer Records Act, Cal. Civ. Code § 1798.80 *et seq.*..................9, 12

California Information Practices Act, Cal. Civ. Code § 1798 *et seq.*......................12

California Unfair Competition Law,
    Cal. Bus. & Prof. Code § 17200 *et seq*..........................................................11

Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-716............................14

Virginia Code § 18.2-18.6 ......................................................................................14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Reply Brief in Support of Motion to Dismiss

Five months have passed since the cyber-attack on Sony Pictures Entertainment Inc. (SPE). In that time, none of the plaintiffs has been the victim of identity theft or otherwise suffered any cognizable present injury from the misuse of his or her personally identifying information (PII). At most, two claim to have successfully thwarted attempts at identity theft—in one case by signing up for the fraud-detection service offered by SPE to affected employees, and in the other through routine fraud-detection procedures. The plaintiffs nonetheless assert they are entitled to damages on behalf of a class, as well as injunctive relief that would dictate, on a going-forward basis, the "specific … security measures" SPE is required to maintain. The plaintiffs lack standing and are not entitled to any of the relief they seek. The Complaint should be dismissed.

## I.   THE PLAINTIFFS LACK STANDING

SPE cited a raft of cases holding that plaintiffs in data-breach cases lack standing when they claim injury in the form of increased risk of identity theft and the expense of preventing that risk. *See* Mot. 5-6. That trend in the case law has continued unabated: Since the Amended Complaint, two more federal courts have dismissed data-breach cases for lack of standing. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 2015 WL 1472483, at *4-6 & n.5 (D.N.J. Mar. 31, 2015); *Storm v. Paytime, Inc.*, 2015 WL 1119724, at *6-7 (M.D. Pa. Mar. 13, 2015). Plaintiffs accordingly cling to the outlier decisions in *In re Adobe Systems, Inc. Privacy Litigation*, 2014 WL 4379916 (N.D. Cal. Sept. 4, 2014), and *In re Sony Gaming Networks & Customer Data Security Breach Litigation* ("*Sony II*"), 996 F. Supp. 2d 942 (S.D. Cal. 2014). But *Adobe* and *Sony II* are out of step with the trend on this issue, growing by the day, and should not be followed. Court after court has recognized that *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013), requires dismissal in cases like this one. To the extent the Ninth Circuit's pre-*Clapper* decision in *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th

Reply Brief in Support of Motion to Dismiss

Cir. 2010), suggests a different result, it is contrary to Supreme Court precedent and should not be followed.  *See* Mot. 8-9.[1]

The plaintiffs attempt to distinguish this case on the ground that their PII has allegedly already been "exposed on the internet."  Opp. 7, 9.  But that was so in other data-breach cases where plaintiffs were found to lack standing.  For example, in *Lewert v. P.F. Chang's China Bistro, Inc.*, 2014 WL 7005097 (N.D. Ill. Dec. 10, 2014), the plaintiffs alleged their credit- and debit-card information had been "purchased by an unnamed bank from a black market site that was specifically offering what the sellers claimed to be card data obtained from the P.F. Chang's breach."[2]  That information was then used throughout the country to make fraudulent purchases, with one plaintiff claiming that "fraudulent activity had been detected on his debit card."  2014 WL 7005097, at *2-3.  The court dismissed for lack of standing, finding that neither the thwarted debit-card fraud, nor the increased risk of future identity theft, nor plaintiffs' claimed mitigation damages conferred standing.  *Id.* at *3.  Other cases are in accord.  *See also, e.g.*, Am. Compl. ¶ 45, *Peters v. St. Joseph Servs. Corp.* (S.D. Tex. June 30, 2014) (alleging plaintiff's PII and health information "was bought and sold several times on the robust international cyber black market"); *Peters v. St. Joseph Servs. Corp.*, 2015 WL 589561, at *8 (S.D. Tex. Feb. 11, 2015) (dismissing for lack of standing).  Put simply, the plaintiffs' distinction is immaterial absent allegations that the exposure has resulted in actual misuse of their PII that, in turn, has caused actual, compensable harm.  *See Peters*, 2015 WL 589561, at *7; *see also In re Barnes & Noble Pin Pad Litig.*, 2013 WL 4759588, at *6 (N.D. Ill. Sept. 3, 2013).

---

[1]     The plaintiffs' reliance on *Clapper*'s "substantial risk" language (at 4-8) does not help them.  Courts have regularly found that plaintiffs do not face a "substantial risk" of future injury, and therefore lack standing, based on allegations like the plaintiffs' here.  *See, e.g.*, *Storm*, 2015 WL 1119724, at *4 n.4.

[2]     Kosner Compl. ¶ 15, 2014 WL 5280476 (N.D. Ill. July 30, 2014).

The plaintiffs further contend that the presence of their PII on the internet makes the risk of future identity theft greater than in other data-breach cases, and seek to distinguish the case law on that ground. *See* Opp. 7-8, 9-10. But the plaintiffs' insistence (at 7) that they face an "immediate and substantial risk of anyone with internet access misusing their PII" rings hollow. Five months have passed since the attack and still not a single plaintiff alleges a redressable injury from an actual instance of identity theft.[3] Courts have rejected claims with far more credible allegations of a heightened risk of identity theft than the plaintiffs make here. For example, in *In re Science Applications International Corp. (SAIC) Backup Tape Data Theft Litigation*, 45 F. Supp. 3d 14, 33-34 (D.D.C. 2014), the court held that the fact that *some* named plaintiffs had suffered actual misuse of their PII as a result of a data breach was not enough to establish that the *other* named plaintiffs faced a substantial risk of identity theft from the same data breach sufficient to confer standing. Plaintiffs say *SAIC* is irrelevant because there, "the risk of harm depended on a 'speculative chain of possibilities' as in *Clapper*." Opp.

---

[3]   The plaintiffs make an assortment of plaintiff-specific allegations, none of which even purports to support the claims of their co-plaintiffs, and all of which SPE showed in its opening brief to be legally insufficient. *See* Mot. 6 n.3, 7-8. The opposition brief's discussion of Bailey's allegations merits a further response. In the Amended Complaint, Bailey alleged that "her family's PII" had been compromised, leading to an "identity thief … making unauthorized cash withdrawals on her husband's bank account." Am. Compl. ¶ 116. SPE argued that Bailey failed to establish standing because she pleaded no specific facts about her family's PII (*i.e.*, what and whose PII was breached) tying the cyber-attack to the alleged unauthorized access, nor did she allege in any event that the unauthorized charges were not reimbursed. *See* Mot. 7-8. Plaintiffs' opposition now includes a conclusory statement that *Bailey's* PII was used to make unauthorized withdrawals from her husband's account (Opp. 10), but that allegation does not appear in the Amended Complaint. It also would be no answer to SPE's arguments concerning Bailey's lack of standing. She does not allege that *she* suffered any injury nor, in fact, does she properly allege that even her husband suffered *any* injury, given that she has never said whether the unauthorized charges were reimbursed in the normal course.

9.  But in *SAIC*, the harm had actually materialized, as some named plaintiffs suffered concrete injury.  45 F. Supp. 3d at 25.  Here, *no named plaintiff* has alleged actual (as opposed to successfully thwarted) identity theft as a result of the attack on SPE, and only three of the nine allege any attempted misuse of PII.

## II.   THE PLAINTIFFS' COMMON LAW CLAIMS FAIL

### A.   Negligence

#### 1.   The Plaintiffs Fail To Allege Appreciable, Present Harm

The "appreciable, present harm" requirement of a negligence claim poses an even higher hurdle to the plaintiffs' claims than the standing requirement, as the law requires present, not future, harm that is both appreciable and nonspeculative.  Mot. 10 & n.5.  The plaintiffs do not dispute this.  Opp. 10.  Instead, they reassert their allegations of thwarted attempted identity theft (Opp. 10), but such allegations are insufficient because they are not assertions of actual "identity theft or unauthorized use of [PII] causing a pecuniary loss."  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.* ("*Sony I*"), 903 F. Supp. 2d 942, 962 (S.D. Cal. 2012).  None of the cases the plaintiffs cite holds that anything less than actual identity theft resulting in recoverable damages will suffice to state a negligence claim.  For example, in *Burrows v. Purchasing Power, LLC*, 2012 WL 9391827, at *1-3 (S.D. Fla. Oct. 18, 2012), the plaintiff suffered "monetary loss from the use of his PII" when an identity thief filed a tax return in his name, thus depriving him of his federal tax refund.[4]

---

[4]     The plaintiffs' reliance on *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121 (N.D. Cal. 2008), is puzzling.  In denying the motion to dismiss, the district court concluded that Ruiz had alleged injury sufficient to state a negligence claim because it had already concluded that "Ruiz has alleged an injury in fact" for standing purposes. *Id.* at 1126.  But the Ninth Circuit subsequently clarified in *Krottner v. Starbucks Corp.*, 406 F. App'x 129 (9th Cir. 2010), that standing-injury and negligence-injury are distinct, and that a plaintiff may have standing but still fail to allege an injury adequate to state a negligence claim.  *Id.* at 131.  Indeed, the district court in *Ruiz* ultimately dismissed the negligence claim, finding that the "increased risk of

Nor are the expenses that the plaintiffs allegedly incurred to monitor their credit sufficient to establish harm for purposes of a negligence claim, especially where SPE already offered credit monitoring and identity theft insurance free of charge.  *See Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1020-21 (D. Minn. 2006); *Shafran v. Harley-Davidson, Inc.*, 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008).  Tellingly, the plaintiffs' most prominent authority for this point are the comments of a single judge during oral argument in a pending appeal in a case in which the merits of the negligence claim were not under review.  *See* Opp. 11-12.  The plaintiffs also cite *Ruiz* (Opp. 11), in which the court expressly declined to reach this issue.  380 F. App'x at 691.  And in *Anderson v. Hannaford Brothers Co.*, 659 F.3d 151, 164-65 (1st Cir. 2011), the court held that plaintiffs reasonably incurred costs replacing their credit cards when over 1,800 fraudulent charges had already been identified as a result of the data breach—a stark contrast to the Amended Complaint here, where the plaintiffs have not identified a single instance of actual identity theft as a result of the attack and fail to explain why SPE should be responsible for their voluntary *additional* efforts to mitigate the risk of future identity theft beyond the free credit monitoring and identity theft services that SPE has offered (and which were successful in thwarting the attempted fraud on Corona's account (Mot. 7)).

Finally, the plaintiffs' general allegations that SPE's supposed delay in notifying them of the attack deprived them of the opportunity to mitigate the alleged increased risk of identity theft are woefully insufficient.  First, *Sony II* is directly on point.  There, plaintiffs alleged they were notified their PII was compromised 10 and 11 days after a cyber-attack, and the court dismissed the delayed-notification claims without leave to amend because no plaintiffs could

---

future identity theft … does not rise to the level of appreciable harm necessary to assert a negligence claim under California law."  *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 913-14 (N.D. Cal. 2009), *aff'd*, 380 F. App'x 689 (9th Cir. 2010).

show their asserted injuries could be attributed to "the alleged untimely disclosure, and not the intrusion itself." *Sony II*, 996 F. Supp. 2d at 965.  That was so even though at least one named plaintiff had discovered two unauthorized charges on his credit card following the intrusion.  *Id.* at 957.  Second, the plaintiffs here still fail to plead any facts or offer any explanation as to how the alleged harm they fear they may suffer in the future was caused by any delay in notification rather than the attack itself.  That is, they do not explain how earlier notification would have averted the harms they claim they may suffer from the attack itself.

### 2. The Economic Loss Doctrine Bars The Plaintiffs' Claims

The plaintiffs claim that the economic loss doctrine has "no place in this case" (Opp. 12), but fail to cite a single case that supports their assertion.  To the contrary, courts in data-breach cases routinely dismiss negligence claims alleging purely economic losses, such as the purchase of credit monitoring services.  *See, e.g.*, *Sony II*, 996 F. Supp. 2d at 966-73 (dismissing California negligence claim under economic loss doctrine); *In re Target Corp. Customer Data Sec. Breach Litig.*, 2014 WL 7192478, at *16 (D. Minn. Dec. 18, 2014) (same); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 528-31 (N.D. Ill. 2011) (same under Illinois law); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175-78 (3d Cir. 2008) (same under Pennsylvania law).[5]

Further, the plaintiffs cannot circumvent the economic loss doctrine because they have not alleged a "special relationship" with SPE under *J'Aire Corp. v. Gregory*, 598 P.2d 60 (Cal. 1979).  The plaintiffs conclusorily assert that various allegations satisfy the *J'Aire* factors (Opp. 13-14), but they do not engage SPE's arguments to the contrary (Mot. 12-14), and in particular they fail to convincingly

---

[5]      Contrary to the plaintiffs' assertion (Opp. 13), application of the economic loss doctrine does not turn on whether there is an available contract remedy.  *See, e.g.*, *Anderson Elec. v. Ledbetter Erection Corp.*, 503 N.E. 2d 246, 249 (Ill. 1986) ("A plaintiff seeking to recover purely economic losses … cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract.").

distinguish *Sony II*, which held that the "special relationship" exception did not apply on almost identical allegations.  *See* 996 F. Supp. 2d at 968-73; Mot. 12-13. The plaintiffs note this case involves an employment relationship, while *Sony II* involved "everyday consumer transactions" (Opp. 13 n. 5), but that distinction cuts *against* the plaintiffs on the *J'Aire* analysis, in light of California's refusal to recognize a "special relationship" between an employer and an employee in a closely related context.  *See* Mot. 13-14.

### B.   Implied Contract

The plaintiffs argue that they entered into "implied-in-fact" employment contracts with SPE under which they would provide SPE with their employment services in exchange for benefits and compensation.  Opp. 14.  An implied condition of these implied contracts, they further contend, was that the plaintiffs would share their PII with SPE subject to certain unstated protections.  *Id.*  Neither proposition is correct.[6]

As a threshold matter, the plaintiffs fail to plausibly allege an implied contract.  They cite *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987), for the proposition that "'an implied contract for employment may arise from a combination of factors,' including 'an employer's personnel practices.'"  Opp. 14 (quoting *Caterpillar*, 482 U.S. at 389 n.2).  But the plaintiffs never specify the relevant "personnel practices" allegedly giving rise to an implied contract here, either collectively or individually.  What is more, they elide the other factors the Supreme Court identified as relevant under California law—"longevity of service, commendations and promotions, [and] oral and written assurances of stable and continuous employment."  *Caterpillar*, 482 U.S. at 389 n.2.  The plaintiffs allege

---

[6]   Nor, of course, have the plaintiffs stated any injury redressable in contract. *See Ruiz*, 622 F. Supp. 2d at 917-18 (dismissing contract claim for failure to allege injury, "consistent with [the decisions] of other federal courts considering breach of contract claims in lost-data cases").

none of those factors, and fail to identify any case in which a court has implied an employment contract based on unspecified "personnel practices" alone.

The plaintiffs' claim is even more extreme, however, asking this Court to find in their (non-existent) implied contracts a further implied term specifically governing SPE's data-security practices. This argument badly misconceives the law of the implied covenant of good faith and fair dealing. "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (California), Inc. v. Marathon Dev. California, Inc.*, 826 P.2d 710, 727 (Cal. 1992). Having identified no *express* terms, the plaintiffs provide this Court no basis for identifying any *implied* obligations necessary to give the express contract provisions effect, consistent with both sides' expectations.

Plaintiffs also fail to explain how the terms they would imply follow ineluctably from the purposes of their various purported implied contracts. Plaintiffs say the purpose of those implied contracts was the provision of employment services in exchange for compensation and benefits. *See* Opp. 14; *see also, e.g.*, Am. Compl. ¶ 158. The plaintiffs fail to explain how SPE's allegedly inadequate data-security practices contravened that purpose. They allege no hindrance to their ability to perform their job functions, nor any impact on their compensation and benefits. Moreover, the cyber-attack occurred well after the employment relationship between the named plaintiffs and SPE ended, so even if they had made such allegations, the cyber-attack could in no way frustrate the purpose of these alleged implied employment contracts.

The plaintiffs argue that SPE's alleged misconduct was contrary to their "legitimate expectations." Opp. 15. But that is yet another misreading of the law on implied covenants. The covenant does not exist to vindicate *one* party's unilateral expectations about a *relationship*. It is concerned with *both* parties' reasonable expectations about *the contract*. *See Carma*, 826 P.2d at 728 (the

Reply Brief in Support of Motion to Dismiss

implied covenant prohibits conduct contrary "to the *parties'* legitimate
expectations" (emphasis added)).  And the plaintiffs do not, and could not, allege
that SPE reasonably expected that the parties had entered into a contractual duty to
protect employees' PII, much less to do so against all potential threats, including a
sophisticated cyber-attack attributed to a foreign government.

At bottom, the plaintiffs ask this Court to recognize an implied term in an
implied contract based on an implied covenant—a term based not on the purpose
of the alleged contract, but rather on the plaintiffs' own belief that SPE's conduct
did not "comport with … California public policy."  Opp. 20.  That is entirely
improper; as the California Supreme Court has cautioned, "the implied covenant of
good faith is read into contracts in order to protect the express covenants or
promises of the contract, *not* to protect some general public policy interest not
directly tied to the contract's *purpose*."  *Carma*, 826 P.2d at 727 (emphasis added)
(internal quotation marks omitted).

## III.   THE PLAINTIFFS' STATUTORY CLAIMS FAIL

### A.   California Customer Records Act

The plaintiffs do not claim they are "customers" under the California
Customer Records Act (CRA).  *See* Opp. 16-17; *see also id.* at 12-13 ("plaintiffs
bought nothing from SPE").  Because they accordingly fall outside the ambit of the
statute's plain language, the plaintiffs cherry-pick general statements from one
section of the statute and argue that those statements stand for the proposition that
the CRA broadly protects all "'California resident[s].'"  *Id*. at 16 (quoting Cal. Civ.
Code § 1798.81.5(a)) (emphasis omitted).  But like the other portions of the CRA,
even the section on which plaintiffs rely is concerned with *customer* records.  *See*
Cal. Civ. Code § 1798.81.5(a)(2) (referring to "personal information that a
business retains as part of the business' internal *customer* account or for the
purpose of using that information in transactions with the person to whom the
information relates" (emphasis added)).

The plaintiffs' attempt to expand the reach of the CRA is also foreclosed by *Boorstein v. CBS Interactive, Inc.*, 165 Cal. Rptr. 3d 669 (Ct. App. 2013). Although the plaintiffs attempt to distinguish *Boorstein* on the ground that it involved a violation of a different provision of the CRA than the one asserted in their complaint (Opp. 16), the case interpreted section 1798.84(b), which establishes the right of action for *all* violations of the Act. *Boorstein*, 165 Cal. Rptr. 3d at 675. *Boorstein* held that section 1798.84(b) provides a remedy for "any *customer* 'injured by a violation of this title.'" *Id.* (emphasis added). It further held that section 1798.84(e), which provides for injunctive relief, does not create a right of action "independent" of subsection (b) (*id.*), thus foreclosing the plaintiffs' secondary argument that the CRA's "injunctive remedy is broader" than its damages remedy (Opp. 16).

For the same reasons discussed in Part I, the plaintiffs' allegations of injury do not satisfy the CRA's statutory standing requirement, which is coextensive with Article III, and the plaintiffs also fail to allege any incremental harm attributable to SPE's alleged delay in notifying them of the attack (Part II.A.1).

## B. California Confidentiality of Medical Information Act

The plaintiffs' general allegations about "medical information" compromised in the cyber-attack are insufficient to state a claim under the California Confidentiality of Medical Information Act (CMIA). The CMIA specifically requires that "[m]edical information" be "in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor." Cal. Civ. Code § 56.05(j). The plaintiffs point to a few vague allegations about medical information that they provided to SPE, but they never plausibly allege that any of that information was in fact compromised in the cyber-attack or that it was "in possession of or derived from" any of the sources listed in the statute. *See, e.g.*, Am. Compl. ¶¶ 100, 106, 119. SPE's broad warning stating that it "*believe[d]*" that "HIPAA protected health information" "*may* have been

obtained by unauthorized individuals" (Am. Compl. ¶ 65 (emphasis added) (internal quotation marks omitted)), does not establish that any such information was compromised in the attack at all, let alone that any such information about the named plaintiffs was compromised.

Additionally, the plaintiffs have failed to allege any injury resulting from the alleged breach that demonstrates a violation of the CMIA or would entitle them to actual damages.  Their reliance (at 18) on *Falkenberg v. Alere Home Monitoring, Inc.*, 2015 WL 800378, at *4 (N.D. Cal. Feb. 23, 2015), is misplaced—the quoted language simply recites how a plaintiff establishes a *violation* of the CMIA (which these plaintiffs have not done); it does not address entitlement to *actual damages*.

## C.    California Unfair Competition Law

Implicitly conceding that they paid nothing to SPE and that SPE did not in any way benefit from the cyber-attack, the plaintiffs acknowledge that they are not seeking restitution under the California Unfair Competition Law (UCL).  *See* Opp. 19 n.6; *see also* Mot. 22.  The questions, then, are whether the plaintiffs have standing under the UCL to seek injunctive relief and whether the plaintiffs have stated any claim under the UCL.  They do not have standing and have not stated any claim under the UCL.

### 1.    Costs Incurred Voluntarily For Credit Monitoring Do Not Establish Standing Under The UCL

To establish standing under the UCL, plaintiffs must allege a loss of money or property.  *See* Mot. 19.  The plaintiffs' allegations that they "incurred costs to purchase identity protection, monitoring and recovery services" (Opp. 19) do not satisfy this requirement.  Courts have held that allegations of "money spent on mitigation" of a heightened risk of identity theft "do not suffice as injury under the UCL."  *Sony I*, 903 F. Supp. 2d at 966; *see also Ruiz v. Gap, Inc.*, 2009 WL 250481, at *4 (N.D. Cal. Feb. 3, 2009) (denying leave to amend complaint to add allegations of credit-monitoring expenses because "it is far from clear that the time

and expenditure associated with monitoring one's credit is the kind of loss of money or property necessary for standing to assert a claim under [the UCL]").

Moreover, the costs that the plaintiffs allegedly incurred were entirely self-imposed because SPE offered them credit monitoring services free of charge. *See* Am. Compl. ¶ 74. The plaintiffs may not "manufacture standing by choosing to make expenditures" beyond the services offered by SPE. *Clapper*, 133 S. Ct. at 1143; *see also Ruiz*, 2009 WL 250481, at *3; *Falkenberg v. Alere Home Monitoring, Inc.*, 2014 WL 5020431, at *4 (N.D. Cal. Oct. 7, 2014).[7]

### 2. The Plaintiffs Fail To Plead Unlawful, Unfair, Or Fraudulent Conduct Sufficient To State A UCL Claim

The plaintiffs acknowledge they must allege a predicate violation of a statute or common law to satisfy the UCL's "unlawful" prong. Opp. 19-20. As shown in Parts II.A, III.A, and III.B, they fail to state a claim for common-law negligence or violation of the CRA or CMIA. Nor can they state a claim under the California Information Practices Act of 1977 (IPA), Cal. Civ. Code § 1798 *et seq.* The statute—which governs *only* the collection, use, maintenance, and dissemination of an individual's personal information *by a governmental agency*, *id.* § 1798.3 (defining "personal information" as that maintained "by an agency")—simply does not proscribe any conduct SPE is alleged to have undertaken.

Nor have the plaintiffs pleaded an "unfairness" claim. The plaintiffs fail to show how their claim is "tethered to some legislatively declared policy" in a "constitutional or statutory provision." *Cel-Tech Commc'ns, Inc. v. Los Angeles*

---

[7] The plaintiffs pin their hope on a single case—*Witriol v. LexisNexis Grp.*, 2006 WL 4725713, at *6 (N.D. Cal. Feb. 10, 2006)—but *Ruiz* correctly distinguished that decision on this ground. Gap offered Ruiz "twelve months of credit monitoring and fraud assistance without charge." 2009 WL 250481, at *4. In view of that fact, *Witriol*—which concluded that expenses incurred "'monitoring and repairing credit impaired by the unauthorized release of private information,'" 2006 WL 4725713, at *6, constituted an actual injury—was held to be inapposite, *Ruiz*, 2009 WL 250481, at *3. The same distinction obtains here.

1   *Cellular Tel. Co.*, 973 P.2d 527, 543-44 (Cal. 1999).  They point to some nebulous

2   information-security "standard of care" underlying various California statutes (Opp.

3   20), but each of those pertains to specific circumstances not implicated here: the

4   protection of *customers'* personal data (CRA), the regulation of *government* use of

5   personal data (IPA), and the regulation of *healthcare providers'* handling of

6   medical information (CMIA, HIPAA).  The California Supreme Court has made

7   clear that plaintiffs cannot contrive a duty under the UCL through "[v]ague

8   references to 'public policy.'"  *Cel-Tech*, 973 P.2d at 543.

9        Under the balancing test, the court "'must weigh the utility of the

10  defendant's conduct against the gravity of the harm to the alleged victim.'"  *Smith*

11  *v. State Farm Mut. Auto. Ins. Co.*, 113 Cal. Rptr. 2d 399, 415 (Ct. App. 2001).  But

12  as discussed in Parts I and II.A.1, the plaintiffs have failed to allege any actual

13  harm resulting from SPE's alleged misconduct.  Plaintiffs rely on *Adobe* and argue

14  that, in view of their allegation that "SPE's conduct harmed plaintiffs by exposing

15  their PII to substantial risk of identity theft … [n]o more is required."  Opp. 21.

16  But *Adobe* itself required more, finding that the balancing test favored the plaintiffs'

17  UCL claim in part because the plaintiffs alleged that "Adobe's conduct … caused

18  [them] to overpay for Adobe products and services."  2014 WL 4379916, at *18.

19  There is no comparable allegation here.  The balancing decisively favors SPE and

20  defeats the plaintiffs' standing under the UCL.

21       The plaintiffs' claim under the "fraudulent" prong fares no better.  The

22  plaintiffs acknowledge that the alleged misrepresentation on which they claim to

23  have relied was a statement made in the context of the 2011 PlayStation Network

24  attack, but nevertheless argue that it "plausibly addressed the security systems of

25  the Sony corporations generally."  Opp. 22.[8]  Even if the plaintiffs are correct that

26

27  _____

28  [8]   Plaintiffs say in their opposition that the alleged misrepresentation was made
    by Sony Corporation's Chief Information Officer.  Opp. 22.  That is incorrect and

the statement could be misconstrued to refer to all Sony entities—it cannot—the plaintiffs still fail to allege reliance on the statement.  All but one named plaintiff began working for SPE years before the statement.  Mot. 21.  The plaintiffs ask the Court to "infer that plaintiffs continued to provide PII to SPE" after this statement and in reliance on it.  Opp. 22.  But they do not allege those facts; they would have if the facts were true.  No such inference is warranted.

### D.   Virginia Code § 18.2-18.6(B)

As discussed in Part II.A.1, the plaintiffs fail to point to any allegations in the Amended Complaint that Corona and Springer suffered incremental injury as a result of SPE's alleged delay in notifying them of the breach.  *See, e.g.*, *Grigsby v. Valve Corp.*, No. Civ. C12-cv-00553, Dkt. 51, slip op. at 12 (W.D. Wash. Mar. 18, 2013).  Corona alleges that he "discovered an unencrypted spreadsheet containing his PII online" before SPE notified him of the attack (Opp. 23), but he does not allege that earlier notification would have prevented the spreadsheet from being posted, or that he suffered any actual injury from the spreadsheet's presence online, let alone an injury that was in any way attributable to SPE's supposed delay.

### E.   Colorado Consumer Protection Act

The Colorado Consumer Protection Act expressly authorizes the attorney general, but no others, to "bring an action" to address violations.  Colo. Rev. Stat. § 6-1-716(4).  Contrary to the plaintiffs' assertion (Opp. 23) that a private right of action should be implied unless expressly prohibited, Colorado courts apply the opposite presumption.  *See Holter v. Moore & Co.*, 681 P.2d 962, 965 (Colo. App. 1983).[9]  Because the legislature explicitly vested enforcement powers in the

---

contrary to the allegations in the Amended Complaint, which correctly identify a different individual as the CIO.  Am. Compl. ¶ 35.

[9]  *Colorado Insurance v. Menor*, 166 P.3d 205 (Colo. App. 2007), is off point. The statute there was silent on legal remedies, and its purpose would be frustrated if there were no way to enforce it.  Here, the legislature provided for the attorney general to "ensure compliance" with the Act.  Colo. Rev. Stat. § 6-1-716(4).

-14-

attorney general, and chose not to include a private remedy, a private right of action should not be read into the Act.  Forster's allegations about the effects of SPE's alleged delay are identical to Corona's and Springer's, and his claim—even if he had a right to bring it—should be rejected on the same grounds.

## IV.   THE PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION OR DECLARATORY RELIEF

The plaintiffs claim they are entitled to broad injunctive and declaratory relief because they suffer "increased risk of identity theft."  Opp. 24.  Yet in the five months since the attack, they have not identified a single instance of identity theft or fraud resulting in actual loss, let alone the prospect of repeated losses.  "'Past exposure to harmful … conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects.'"  *Munns v. Kerry*, __ F.3d __, 2015 WL 1260709, at *6 (9th Cir. 2015).  The plaintiffs' failure to identify even past injury forecloses the sweeping relief they seek.  Injunctive relief also would not address the alleged harm, which exists by virtue of the cyber-attack having placed the PII outside the control of SPE.

In any event, the plaintiffs do not even attempt to defend the scope of the relief they seek; they simply argue it would be premature to dismiss the request.  But it is apparent from the face of the pleading that the plaintiffs' requested injunctive relief would be inappropriate and unmanageable regardless of the ultimate resolution of their claims.  The court can and should dismiss the plaintiffs' claim for equitable relief now.  *See, e.g.*, *Opperman v. Path, Inc.*, 2015 WL 1306494, at *16-17 (N.D. Cal. Mar. 23, 2015); *Saunders v. Garay*, 2014 WL 4386727, at *4 (N.D. Cal. Sept. 4, 2014); *Ham v. Hain Celestial Grp., Inc.*, 2014 WL 4965959, at *5-6 (N.D. Cal. Oct. 3, 2014).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

1  DATED:  April 23, 2015          Respectfully submitted,

2                                  By: /s/  *William F. Lee*

3                                        William F. Lee

4                                  WILMER CUTLER PICKERING
                                    HALE AND DORR LLP

5                                  Attorneys for Defendant

6                                  SONY PICTURES ENTERTAINMENT INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply Brief in Support of Motion to Dismiss