# EXHIBIT F

## PUBLIC VERSION

# In The Matter Of:

*MICHAEL CORONA*
*v.*
*SONY PICTURES ENTERTAINMENT INC.*

_____

## *SHAPIRO, STEVEN SANDOR - Vol. 1*
### *June 18, 2015*

_____

# *CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER*

**MERRILL CORPORATION**

**LegaLink, Inc.**

20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


MICHAEL CORONA, CHRISTINA MATHIS, ) CASE NO.

et al., individually and on       ) 2:14-cv-09600-

behalf of others similarly        ) RGK-SH

situated,                         ) Pages 1 - 188

       Plaintiffs,          )

   vs.                            )

SONY PICTURES ENTERTAINMENT INC., )

       Defendant.           )

---------------------------------)


CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER


VIDEOTAPED DEPOSITION

STEVEN SANDOR SHAPIRO

THURSDAY, JUNE 18, 2015

9:38 A.M.




Reported by:

    JENNY S. BOOKER

    CSR No. 9237, RPR, CLR

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

1       Videotaped Deposition of STEVEN SANDOR SHAPIRO,

2   taken on behalf of the defendant, on Thursday,

3   June 18, 2015, 9:38 a.m., at 350 South Grand Avenue,

4   Suite 2100, Los Angeles, California, before

5   JENNY S. BOOKER, CSR No. 9237, RPR, CLR.

6

7   APPEARANCES OF COUNSEL:

8   FOR THE PLAINTIFFS:

9       GIRARD GIBBS LLP

10      LINH G. VUONG, ATTORNEY AT LAW

11      601 California Street, 14th Floor

12      San Francisco, California 94108

13      (415) 981-4800

14      lgv@girardgibbs.com

15   -and-

16      RYAN AND MANISKAS, LLP

17      RICHARD A. MANISKAS, ATTORNEY AT LAW

18      995 Old Eagle School Road, Suite 311

19      Wayne, Pennsylvania 19087

20      (484) 588-5516

21      maniskas@mclasslaw.com

22

23

24

25

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 3

```
 1   APPEARANCES (CONTINUED):

 2

 3   FOR THE DEFENDANT:

 4        WILMER CUTLER PICKERING HALE AND DORR LLP

 5        CHRISTOPHER T. CASAMASSIMA, ATTORNEY AT LAW

 6        ELAINE ZHONG, ATTORNEY AT LAW

 7        350 South Grand Avenue, Suite 2100

 8        Los Angeles, California 90071

 9        (213) 443-5374

10        chris.casamassima@wilmerhale.com

11        elaine.zhong@wilmerhale.com

12

13   ALSO PRESENT:

14        Stephen Smith, Videographer

15

16

17

18

19

20

21

22

23

24

25
```

CONFIDENTIAL – PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO – 6/18/2015

Page 4

```
 1                      I N D E X

 2

 3   WITNESS

 4   STEVEN SANDOR SHAPIRO

 5                       EXAMINATION          PAGE

 6                       By Mr. Casamassima   8, 184

 7                       By Ms. Vuong         182

 8

 9                    E X H I B I T S

10   NO.        PAGE        DESCRIPTION

11   Exhibit 1     8    Plaintiffs' Amended Consolidated

12                      Responses and Objections to

13                      Defendant Sony Pictures

14                      Entertainment Inc.'s First Set

15                      of Interrogatories

16   ███████    ██    ████████████████████████

17                      from Steven Shapiro dated

18                      12/8/14, Bates-stamped PL_00000549

19                      through PL_00000557

20   Exhibit 3    71    LinkedIn profile of Steven Shapiro

21   Exhibit 4    77    IMDb profile of Steven Shapiro

22   ███████    ██    ████████████████████████

23                      from Steven Shapiro dated 12/5/14,

24                      Bates-stamped PL_00000532 through

25                      PL_00000535
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 5

```
 1                 C O N T I N U E D

 2                  E X H I B I T S

 3   NO.          PAGE        DESCRIPTION

 4   Exhibit 6    102   ID Experts enrollment e-mail

 5                      dated 3/10/14, Bates-stamped

 6                      PL_00000539 through PL_00000540

 7   Exhibit 7    106   AllClear ID e-mail dated 12/12/14,

 8                      Bates-stamped PL_00000558 through

 9                      PL_00000562

10   Exhibit 8    124   Sony Pictures Exit Interview

11                      Questionnaire, Bates-stamped

12                      SPE-HC 000001951 through

13                      SPE-HC 000001957

14   Exhibit 9    132   Document titled "Group Membership,"

15                      Bates-stamped PL_00000277

16   ██████████   ███   ████████████████████████████

17                      Bates-stamped PL_00000541

18   ██████████   ███   ████████████████████████████

19                      Bates-stamped PL_00000525 through

20                      PL_00000527

21   Exhibit 12   162   Letter to Steven Shapiro from

22                      Sony Pictures Imageworks Inc.

23                      dated 10/22/03, Bates-stamped

24                      SPE-HC 000001763 through

25                      SPE-HC 000001767
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 6

```
 1                    C O N T I N U E D

 2                      E X H I B I T S

 3   NO.        PAGE         DESCRIPTION

 4   Exhibit 13   162   Letter to Steven Shapiro from

 5                      Sony Pictures Imageworks Inc.

 6                      dated 9/14/04, Bates-stamped

 7                      SPE-HC 000001753 through

 8                      SPE-HC 000001757

 9   Exhibit 14   162   Letter to Steven Shapiro from

10                      Sharon Berlin at Sony Pictures

11                      Imageworks Inc., dated 3/30/05,

12                      Bates-stamped SPE-HC 000001745

13                      through SPE-HC 000001747

14

15

16

17

18

19

20

21

22

23

24

25
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 7

```
 1                  LOS ANGELES, CALIFORNIA

 2                  TUESDAY, JUNE 16, 2015

 3                       9:38 A.M.

 4

 5        THE VIDEOGRAPHER:  Here begins Volume I,

 6   Video Disc No. 1, in the deposition of Steven Shapiro,

 7   in the matter of Corona, et al., versus Sony Pictures

 8   Entertainment Inc., in the United States District

 9   Court for the Central District of California.  The

10   case number is 2:14-cv-09600-RGK-SH.

11        Today's date is June 18, 2015.  The time on

12   the video monitor is 9:39.  The video operator today

13   is Stephen Smith contracted by DTI at 20750 Ventura

14   Boulevard, Suite 205, Woodland Hills, California

15   91364.

16        The video deposition is taking place at

17   WilmerHale, 350 South Grand Avenue, Suite 2100,

18   Los Angeles, California 90071, and was noticed by

19   WilmerHale.

20        Counsel, please voice-identify yourselves

21   and state who you represent.

22        MR. CASAMASSIMA:  Chris Casamassima from

23   WilmerHale for Defendant Sony Pictures Entertainment.

24        MS. ZHONG:  Elaine Zhong from WilmerHale

25   for Sony Pictures Entertainment.
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

```
 1              MS. VUONG:  Linh Vuong from Girard Gibbs

 2    for the plaintiffs.

 3              MR. MANISKAS:  Rich Maniskas from Ryan and

 4    Maniskas for the plaintiffs.

 5              THE VIDEOGRAPHER:  The court reporter is

 6    Jenny Booker of DTI.

 7              Would the reporter please swear in the

 8    witness.

 9

10              STEVEN SANDOR SHAPIRO,

11          having been first placed under oath,

12          was examined and testified as follows:

13

14              THE VIDEOGRAPHER:  Please begin.

15

16                      EXAMINATION

17    BY MR. CASAMASSIMA:

18       Q.   Okay.  Good morning, Mr. Shapiro.

19       A.   Good morning.

20            (Exhibit 1 marked.)

21    BY MR. CASAMASSIMA:

22       Q.   So I'd like to start this morning by

23    looking at what the court reporter has handed you

24    marked as Exhibit 1.  It is a document entitled

25    "Plaintiffs' Amended Consolidated Responses and
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

```
 1              THE WITNESS:  Yes --
 2              MS. VUONG:  Vague.
 3              THE WITNESS:  -- but not as accurately.
 4    BY MR. CASAMASSIMA:
 5         Q.   Do you know how you -- one would have
 6    ██████████████████████████████████████████
 7         A.   Us- --
 8              MS. VUONG:  Same objection.
 9              THE WITNESS:  Using Microsoft Tools, for
10    example.  If you wanted to search for -- within a
11    set of files and search for a string within that
12    set of files, there are tools within most operating
13    systems, including Windows, to be able to do that in
14    a limited fashion.
15    BY MR. CASAMASSIMA:
16         Q.   Now, you also state that you believe copies
17    of your driver's license and passport, salary
18    history before SPE, education and employment
19    history, and information about major medical
20    procedures and medical claims were compromised in
21    the data breach --
22         A.   Yes.
23         Q.   -- as well.
24              Were you able to locate that information in
25    this archive?
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

1          MS. VUONG:  Objection.  Vague.

2          THE WITNESS:  No.

3   BY MR. CASAMASSIMA:

4      Q.   And so what is the basis for your belief

5   that that information was disclosed in connection

6   with the SPE cyber attack?

7          MS. VUONG:  Same objection.  And calls for

8   a legal opinion and expert opinion.

9          THE WITNESS:  News reports stating that a

10   variety of that information was compromised.  In

11   addition, other former employees presented

12   information that that type of information was also

13   compromised.

14   BY MR. CASAMASSIMA:

15      Q.   So for the driver's license, passport,

16   salary history before SPE, education and employment

17   history, and medical information, that body of

18   information was not something that you located on

19   the Internet yourself; correct?

20          MS. VUONG:  Objection.  Asked and answered.

21          THE WITNESS:  Correct, but that is

22   information that was supplied to Sony.

23   BY MR. CASAMASSIMA:

24      Q.   Understood.

25          To your knowledge, was there information

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 23

1   released by the cyber attackers that was not in the

2   ████████████████████████████████████████

3         MS. VUONG:  Objection.  Calls for

4   speculation.

5         THE WITNESS:  Could you repeat that,

6   please?

7   BY MR. CASAMASSIMA:

8     Q.   To your knowledge, was there information

9   released by the cyber attackers that was not in the

10  ████████████████████████████████████████

11  ██████████████

12        MS. VUONG:  Same objection.

13        THE WITNESS:  Yes.

14  BY MR. CASAMASSIMA:

15    Q.   Okay.  And where do you understand that --

16  how do you understand the cyber attackers to have

17  released that information?

18        MS. VUONG:  Same objection.

19        THE WITNESS:  They released multiple

20  archives and also claimed that there was a lot of

21  other information that was not released.  I searched

22  one of the archives, not all of the archives.

23  BY MR. CASAMASSIMA:

24    Q.   Has anyone told you that your medical

25  information was released?

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 24

```
 1            MS. VUONG:  Objection.  Vague.

 2            THE WITNESS:  Me personally?  No one has

 3   told me that my direct information was specifically

 4   compromised.  They blanketed it in that all of the

 5   information that Sony had to that -- on that subject

 6   was compromised.  So I would be included in that

 7   set, presumably.

 8   BY MR. CASAMASSIMA:

 9       Q.   And who informed you of that?

10       A.   The news media and other -- other former

11   employees.

12       Q.   So you have not personally run a search on

13   the Internet that has resulted in confirmation that

14   your medical information was released as a result of

15   the cyber attack; correct?

16            MS. VUONG:  Objection.  Mischaracterizes

17   his testimony.  And asked and answered.

18            THE WITNESS:  Correct.

19   BY MR. CASAMASSIMA:

20       Q.   And to your knowledge, has anyone done

21   any type of search that confirmed your medical

22   information was released in connection with the

23   cyber attack?

24            MS. VUONG:  Objection.  Vague.  And calls

25   for speculation.
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 25

```
 1              THE WITNESS:  I don't recall.

 2    BY MR. CASAMASSIMA:

 3       Q.   Same thing with your driver's license and

 4    your passport.

 5              It's true that you have not done a search

 6    personally that confirmed the release of your

 7    driver's license and passport on the Internet;

 8    correct?

 9              MS. VUONG:  Objection.  Misstates his

10    testimony.

11              THE WITNESS:  I don't recall.  And the --

12    ████████████████████████████████████████████████

13    that, but I don't recall for sure.

14    BY MR. CASAMASSIMA:

15       Q.   When you did these searches, was there

16    a -- any documents that you generated in

17    connection --

18       A.   I'm sorry.  On the last question, I

19    ████████████████████████████████████████████████

20    in that information in the first archive.

21       Q.   Okay.

22       A.   But I'm trying to remember off the top of

23    my head.

24       Q.   So that's where I'm sort of going with

25    this.
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 53

1     Q.    And what -- was that a credit card that you

2  were going to put the purchase on or something else?

3     A.    On a credit card, yes.

4     Q.    ██████████████████████████████████

5  the time?

6     A.    Correct.

7     Q.    █████████████████████████████████

8  that you were going to make that purchase; correct?

9     A.    Correct.

10     Q.    Was that purchase ever made on your credit

11  card?

12           MS. VUONG:  Objection.  Calls for

13  speculation.

14           THE WITNESS:  I don't understand the

15  question.  What do you mean by was the purchase made

16  on the credit card?

17  BY MR. CASAMASSIMA:

18     Q.    Was the purchase made -- did someone buy

19  something on your credit card?

20           MS. VUONG:  Same objection.

21           THE WITNESS:  It was attempted.

22  BY MR. CASAMASSIMA:

23     Q.    But you didn't have to pay for it.  That's

24  my -- that's my point.  Right?

25     A.    Okay.  That wasn't what you asked, but

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

```
 1   that's correct.  After I spent the time to work with

 2   the bank, I was not charged for that.

 3       Q.   So what credit cards did you have at the

 4   time of the SPE cyber attack?

 5           MS. VUONG:  Objection.  Vague.

 6           THE WITNESS:  Do you want me -- do you want

 7   me to list all of the credit cards that I had?

 8   BY MR. CASAMASSIMA:

 9       Q.   The entities that issued them.  How about

10   that?

11       A.   And you're just talking about credit cards?

12       Q.   We'll start with credit cards.

13       A.   ████████████    █████████████████

14   that I'm the primary?  I'm an authorized user?

15   I'm --

16       Q.   I don't know.

17       A.   How do you define what credit cards I have?

18       Q.   Okay.  What credit cards are in your name

19   that you had as of November 2014?

20       A.   ██████████████████████████████████

21   █████████████

22       Q.   Is that it?

23       A.   I'm trying to remember for sure so I don't

24   forget any.  I believe that's it.

25       Q.   How about with any stores?  In particular,
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 61

1    please?

2    BY MR. CASAMASSIMA:

3        Q.    Sure.

4              Has anyone tried to open a credit card in

5    your name prior to the SPE cyber attack?

6              MS. VUONG:  Same objections.

7              THE WITNESS:  I don't know.

8    BY MR. CASAMASSIMA:

9        Q.    ███████████████████████████

10   ████████████████████████████████████

11   █████████████████████████████

12       A.    ███████████

13       Q.    ██████   ████████████████████████

14   ████████████████████████████████

15   ████████████████████████████

16   correct?

17       A.    That may be correct.  It might have been

18   that it was -- that it was closed and wasn't

19   reported as closed.  I don't recall off the top of

20   my head.

21       Q.    ███████████████████████

22   █████████████████████████████████

23   ██████████████████████████

24       A.    Not necessarily.

25       Q.    Why not necessarily?

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 62

1      A.   Because the actions taken that presented

2   ████████████████████████████████████████████████

3   not clear that it was from exactly that.

4      Q.   What were the actions taken?

5           MS. VUONG:  Objection.  Vague.

6           THE WITNESS:  By who?

7   BY MR. CASAMASSIMA:

8      Q.   ██████████████████████████████████████

9   ████████████████████████████████████████████████

10  ████████████████████████████████████████████████

11     A.   Correct.

12     Q.   Have you enrolled in credit monitoring

13  ██████████████████████████

14     A.   Yes.

15     Q.   ███████████████████████████████████████

16          MS. VUONG:  Objection.  Vague.

17          THE WITNESS:  No.

18  BY MR. CASAMASSIMA:

19     Q.   Have you ever made any claims with any

20  credit monitoring service?

21          MS. VUONG:  Same objection.

22          THE WITNESS:  What do you mean exactly by a

23  claim?

24  BY MR. CASAMASSIMA:

25     Q.   Have you ever reported identity theft to

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 64

```
 1          (Recess.)

 2          THE VIDEOGRAPHER:  Back on the record.

 3   It's 11:06.

 4   BY MR. CASAMASSIMA:

 5      Q.   ████████████████████████████████████

 6   ████████████████████████████████████████████

 7   that someone had tried to make a large purchase;

 8   correct?

 9      A.   Correct.

10      Q.   ████    ██████████████████████████████

11   card?

12      A.   I don't recall.

13      Q.   Do you recall whether it was before or

14   after 2010?

15      A.   I don't recall, actually.

16      Q.   ████████████████████████████████████

17   information?

18          MS. VUONG:  Objection.  Calls for

19   speculation.

20          THE WITNESS:  I'm not sure.

21   BY MR. CASAMASSIMA:

22      Q.   Okay.  Are you aware of anything that

23   █████████████████████████████████████████████

24   attempted purchase was related to the SPE cyber

25   attack?
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 65

```
 1              MS. VUONG:  Objection.  Calls for
 2    speculation.  Expert opinion.
 3              THE WITNESS:  Could you repeat the
 4    question, please?
 5    BY MR. CASAMASSIMA:
 6         Q.   Are you aware of anything that would lead
 7    ████████████████████████████████████████████████
 8    purchase was related to the SPE cyber attack?
 9              MS. VUONG:  Same objection.  And vague.
10              THE WITNESS:  Yes.
11    BY MR. CASAMASSIMA:
12         Q.   What?
13         A.   That all of my personal information was
14    made readily available on the Internet.
15         Q.   ██████████████████████████████████████
16    readily available on the Internet?
17              MS. VUONG:  Objection.  Calls for
18    speculation.
19              THE WITNESS:  I don't know.
20    BY MR. CASAMASSIMA:
21         Q.   You didn't find it on the Internet when you
22    searched for your personal information; correct?
23         A.   Correct.
24         Q.   And you don't know whether SPE had your
25    ████████████████████████████████████████████
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 66

```
 1      A.   Correct.

 2           MS. VUONG:  Same objection.

 3   BY MR. CASAMASSIMA:

 4      Q.   So what's your basis for believing that

 5   ███████████████████████████████████████████████

 6   been related to the SPE cyber attack?

 7           MS. VUONG:  Objection.  Calls for a legal

 8   and expert opinion.  And calls for speculation.

 9           THE WITNESS:  Because with enough personal

10   information, you can get additional account numbers

11   or other -- other information with just veri- --

12   trying to verify or -- sorry -- trying to present

13   yourself as that person.

14   BY MR. CASAMASSIMA:

15      Q.   But you have no information that that is

16   ███████████████████████████████████████████████

17   credit card; correct?

18           MS. VUONG:  Same objections.  And vague.

19           THE WITNESS:  I don't know one way or the

20   other.

21   BY MR. CASAMASSIMA:

22      Q.   All right.  So you don't know one way or

23   ███████████████████████████████████████████████

24   purchase was related to the SPE cyber attack;

25   correct?
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 67

```
 1              MS. VUONG:  Same objections.  And asked and
 2    answered.
 3              THE WITNESS:  Correct.
 4    BY MR. CASAMASSIMA:
 5       Q.   And you worked from S- -- for SPE from 2003
 6    to 2010; is that right?
 7       A.   Yes.
 8       Q.   And was there -- was that continuous
 9    employment?
10       A.   Yes.
11       Q.   ████████████████████████████████
12    to search for your personal information, did you
13    tell anyone that you had done that?
14       A.   Yes.
15              MS. VUONG:  Objection.  Vague.
16    BY MR. CASAMASSIMA:
17       Q.   Who did you tell?
18       A.   I don't recall.
19       Q.   Did you search for anyone else's personal
20    information?
21              MS. VUONG:  Objection.  Vague.
22              THE WITNESS:  I don't think so.
23    BY MR. CASAMASSIMA:
24       Q.   Because there's just something I wanted to
25    clarify in your response to Interrogatory No. 1,
```

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 116

1    couldn't think of any other records.  Are there

2    other records --

3        A.   Oh, other than what was provided?

4        Q.   Correct.

5        A.   I believe I've provided all of the records

6    that were requested, yes.

7        Q.   So if there aren't records that were

8    produced, then they don't exist; right?

9             MS. VUONG:  Objection.  Calls for

10   speculation.

11            THE WITNESS:  There might not be written

12   records, right.

13   BY MR. CASAMASSIMA:

14       Q.   Okay.  And we talked about that, because

15   you said you may have talked to your bank on the

16   phone, but you just don't remember either way;

17   right?

18       A.   I said I did talk to the bank, both on the

19   phone and in person, but I don't remember the -- the

20   substance of all of that conversation.

21       Q.   Right.  Including whether or not they had

22   notified you of an attempt on your account; correct?

23       A.   Correct.  That's correct.

24       Q.   Regardless of any notification you may or

25   may not have received, to your knowledge, you have

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 117

1    never had to come out of pocket to pay for a

2    purchase that you did not authorize since the SPE

3    cyber attack; correct?

4           MS. VUONG:  Objection.  Vague.

5           THE WITNESS:  No.  I'm not sure that is

6    correct.

7    BY MR. CASAMASSIMA:

8        Q.   Why not?

9        A.   Because I don't recall whether or not I had

10   to pay for an unauthorized charge of any kind and

11   then have it reversed or whether it was taken care

12   of before any out-of-pocket expense was incurred,

13   for example.

14       Q.   Can you recall that happening?

15       A.   Ever?

16       Q.   Since the SPE cyber attack, can you recall

17   whether or not you had to pay for an unauthorized

18   charge of any kind and then have it reversed?

19       A.   I don't know.  I don't know the order of

20   events of when the payment was due for the credit

21   card, for example, and when the charge was reversed.

22   So I -- I can't answer.

23       Q.   So you don't remember?

24       A.   Yeah.  I don't remember the order of

25   events.

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

1      Q.    You don't remember that it happened since

2    the SPE cyber attack?

3      A.    No.  I don't remember whether or not I had

4    to pay anything out of pocket and then have it

5    reimbursed or whether it was reimbursed before I had

6    to pay what was due as part of the normal billing

7    cycle.  That's -- that's what I don't remember.

8      Q.    Even if you had to be reimbursed for any

9    such unauthorized purchase, if any, you have, in

10   fact, been reimbursed; correct?

11     A.    Correct.

12     Q.    When you first agreed to work for Sony

13   Pictures Imageworks, did you have any discussions

14   or negotiations regarding the maintenance of your

15   personal information?

16     A.    Yes.

17          MS. VUONG:  Objection.  Vague.

18   BY MR. CASAMASSIMA:

19     Q.    What were those --

20     A.    Sorry.

21     Q.    -- discussions or -- well, tell me about

22   those.

23     A.    When I started, I was required to produce

24   certain information --

25     Q.    Uh-huh.

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 119

1      A.    -- with what we are calling personal

2   information.  And I asked what was required.  I

3   asked specifically how it was going to be used and

4   whether it was required.

5      Q.    And do you recall what you were told?

6      A.    Basically, paraphrasing, that it was

7   required and -- and the purpose -- and they

8   disclosed the purposes of what it was used for, for

9   example, for beneficiaries or emergency contact

10  information or other similar purposes.

11     Q.    When you left SPE, did you have any

12  communications regarding the maintenance of your

13  personal information?

14          MS. VUONG:  Same objection.

15          THE WITNESS:  Maybe.  I don't recall for

16  sure.  It was a while ago.

17  BY MR. CASAMASSIMA:

18     Q.    If you did have such discussions, who do

19  you believe you would have had them with?

20     A.    Most likely human resources, or what we

21  call digital management, or the head of software at

22  ██████████████████████    ████████████████████████

23  that potentially it would have been, but most likely

24  it would have been human resources or digital

25  management.

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
STEVEN SANDOR SHAPIRO - 6/18/2015

Page 187

```
 1    STATE OF CALIFORNIA      )

 2                             )  ss.

 3    COUNTY OF LOS ANGELES    )

 4

 5

 6         I, STEVEN SANDOR SHAPIRO, declare under the

 7    penalties of perjury of the State of California that

 8    the foregoing is true and correct.

 9         Executed on this  29  day of  July

10    2015, at  7:00pm          , California.

11

12

13

14              STEVEN SANDOR SHAPIRO

15

16

17

18

19

20

21

22

23

24

25
```