# EXHIBIT H

PUBLIC VERSION

CONFIDENTIAL

Page 1

1          UNITED STATES DISTRICT COURT
           CENTRAL DISTRICT OF CALIFORNIA

2

         Civil Action No. 2:14-cv-09600-RGK-SH

3    _____
4          CONFIDENTIAL VIDEOTAPED DEPOSITION OF:
              JOSHUA FORSTER - June 22, 2015

5    _____
6    MICHAEL CORONA, CHRISTINA MATHIS, et al., individually
     and on behalf of others similarly situated,

7

     Plaintiffs,

8

     v.

9

     SONY PICTURES ENTERTAINMENT INC.,

10

     Defendant.

11   _____
12
13               PURSUANT TO NOTICE, the confidential
14   videotaped deposition of JOSHUA FORSTER was taken on
15   behalf of the Defendant at 1225 17th Street,
16   Suite 1660, Denver, Colorado 80202, on June 22, 2015,
17   at 8:58 a.m., before Barbara Birger, Registered Merit
18   Reporter, Certified Realtime Reporter and Notary
19   Public within Colorado.
20
21
22
23
24
25

CONFIDENTIAL

                                                      Page 2

1                    A P P E A R A N C E S

2     For the Plaintiffs:

3              LINH G. VUONG, ESQ.

               Girard Gibbs LLP

4              601 California Street, 14th Floor

               San Francisco, California 94108

5

6     For the Defendant:

7              ANDREW S. DULBERG, ESQ.

               ANDY R. O'LAUGHLIN, ESQ.

8              Wilmer Cutler Pickering Hale and Dorr LLP

               60 State Street

9              Boston, Massachusetts 02109

10

      Also Present:

11

               Davis Baumunk, Videographer

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL

```
                                                         Page 3
  1                          I N D E X
  2   EXAMINATION OF JOSHUA FORSTER:                      PAGE
      June 22, 2015
  3
      By Mr. Dulberg                                 6, 273
  4
      By Ms. Vuong                                       269
  5
  6                                                  INITIAL
      DEPOSITION EXHIBITS:                          REFERENCE
  7
      Exhibit 1    Plaintiffs' Amended Consolidated      20
  8                Responses and Objections to
                   Defendant Sony Pictures
  9                Entertainment Inc.'s First Set
                   of Interrogatories
 10
      Exhibit 2    █████████████████████████████        54
 11
      Exhibit 3    ████████████████████                 59
 12
      Exhibit 4    ██████████████████████               68
 13
      Exhibit 5    ████████████████████                 71
 14
      Exhibit 6    Email to Foster from                 111
 15                ██████████████████████████
                   1/30/15, Subject:  Joshua:
 16                Your Monthly Fraud Detection
                   Update from AllClear ID
 17
      Exhibit 7    Email to Forster from                111
 18                ██████████████████████████
                   2/27/15, Subject:  Joshua:  Your
 19                Monthly Fraud Detection Update
                   From AllClear ID
 20
      Exhibit 8    Email to Forster from                111
 21                ██████████████████████████
                   3/27/15, Subject:  Joshua:
 22                Your Monthly Fraud Detection
                   Update from AllClear ID
 23
 24
 25
```

CONFIDENTIAL

Page 4

1   Exhibit 9                        127
        Sony@email.sonyentertainmentnetwork,
2       1/27/15, Subject:  PSN, Qriocity,
        and SOE customers - Eligibility
3       for settlement benefits
4   Exhibit 10

5

6

    Exhibit 11
7

8

    Exhibit 12   Letter from Bank of America       219
9

    Exhibit 13   Amended Class Action Complaint    231

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CONFIDENTIAL

Page 5

1               WHEREUPON, the following proceedings were

2       taken pursuant to the Federal Rules of Civil

3       Procedure.

4                    *     *     *     *     *

5               THE VIDEOGRAPHER:  We are now on the

6       record.  Please note that microphones are sensitive

7       and may pick up whispering and private conversations.

8       Please turn off all cell phones or place them away

9       from the microphones as they can interfere with the

10      deposition audio.  Recording will continue until all

11      parties agree to go off the record.

12              My name is Davis Baumunk, representing

13      Veritext National Deposition and Litigation Services.

14      Today's date is June 22, 2015, and the time is

15      approximately 8:58.

16              This deposition is being held at

17      1225 17th Street in Denver, Colorado, and is being

18      taken by counsel for the defendant.

19              The caption of this case is Michael

20      Corona, et al. versus Sony Pictures Entertainment Inc.

21      This case is filed in the United States District

22      Court, Central District of California, Case

23      No. 2:14-cv-09600-RGK-SH.  The name of the witness is

24      Joshua Forster.

25              At this time the attorneys present in the

CONFIDENTIAL

Page 6

1    room and attending remotely will identify themselves

2    and the parties they represent.

3                    MS. VUONG:  Linh Vuong from Girard Gibbs

4    for the plaintiffs.

5                    MR. DULBERG:  Drew Dulberg and WilmerHale

6    for Sony Pictures Entertainment.

7                    MR. O'LAUGHLIN:  Andrew O'Laughlin of

8    WilmerHale for Sony Pictures.

9                    THE VIDEOGRAPHER:  Our court reporter,

10   Barbara Birger, will swear in the witness and we can

11   proceed.

12                        JOSHUA FORSTER,

13   having been first duly sworn to state the whole truth,

14   testified as follows:

15                        EXAMINATION

16   BY MR. DULBERG:

17         Q.   Good morning, Mr. Forster.

18         A.   Good morning.

19         Q.   My name is Andrew Dulberg, and as I said,

20   I represent Sony Pictures Entertainment.  Throughout

21   today's deposition I'm going to refer to Sony Pictures

22   Entertainment and its subsidiaries as SPE; do you

23   understand?

24         A.   Yes.

25         Q.   Is there any reason you can't testify

CONFIDENTIAL

Page 34

```
 1          Q.   ████████████████████████████████████
 2  ████████████████████████
 3          A.   Yes.
 4          Q.   And none of them contained your bank
 5  account and routing numbers, correct?
 6               MS. VUONG:  Same objections.
 7          A.   Correct.
 8          Q.   (BY MR. DULBERG)  So to the best of your
 9  personal knowledge, I can't go on the Dark Web today
10  and find your bank account and routing numbers,
11  correct?
12               MS. VUONG:  Same objections.
13          A.   I don't know.  I don't know.
14          Q.   (BY MR. DULBERG)  What bank account do
15  you believe might have been disclosed in the cyber
16  attack?
17               MS. VUONG:  Objection, vague.
18          A.   ██████████████████████
19          Q.   ██████████████    ████████████████
20  ██████████████████
21          A.   Yes.
22          Q.   Any other bank accounts?
23          A.   No.
24          Q.   Even if the information about that
25  account were disclosed, the information would be
```

CONFIDENTIAL

Page 35

1    worthless because you canceled that bank account,
2    right?
3              MS. VUONG:  Objection, calls for
4    speculation and mischaracterizes his testimony.
5         A.   Yes.
6         Q.   (BY MR. DULBERG)  And you canceled the
7    only bank account that you think might have been
8    disclosed, correct?
9              MS. VUONG:  Same objections.
10        A.   Yes.
11        Q.   (BY MR. DULBERG)  You're not alleging
12   that any active bank account of yours has been
13   disclosed in the SPE cyber attack, correct?
14             MS. VUONG:  Objection, calls for a legal
15   opinion.
16        A.   Again, I haven't seen it firsthand, but
17   considering what it was that was leaked online, the
18   depth of information of what was released, I wouldn't
19   doubt it.
20        Q.   (BY MR. DULBERG)  Well, the only bank
21   account information that you gave SPE was associated
22   ███████████████████████████████████████████████
23   correct?
24             MS. VUONG:  Objection as to form.
25        A.   Closed after I was made aware of the hack

CONFIDENTIAL

Page 36

1    at Sony.

2            Q.   (BY MR. DULBERG)  Right.  But today there

3    is no active bank account in your name, the

4    information of which was disclosed in the cyber

5    attack, correct?

6            A.   Correct.

7                 MS. VUONG:  Objection, calls for

8    speculation, and vague.

9            Q.   (BY MR. DULBERG)  You also think a copy

10   of your driver's license might have been disclosed,

11   correct?

12           A.   Yes.

13           Q.   ████████████████████████████████████

14       ██   ████

     ██   ████████████████████████████████████████

  ████████████████████

     ██   ████

18                MS. VUONG:  Objection, vague.

19           Q.   (BY MR. DULBERG)  Do you currently have a

20   ███████████████████

21       ██   ████

22       ██   ████   █████████████████████████

23   ██████████████████████████████████

24   ████████████████████████████████

25   that you found, correct?

CONFIDENTIAL

Page 37

1             MS. VUONG:   Objection, vague.

2        A.   Yes.

3        Q.   ███████████████████    ████████████████████

4   ████████████████████

5             MS. VUONG:   Objection, calls for

6   speculation.

7        A.   No.

8        Q.   (BY MR. DULBERG)   Do you know when it

9   expires?

10            MS. VUONG:   Same objection.

11       A.   ███████████████████

12       Q.   ███████████████████    █████████████████

13   █████████████████████████████████

14       A.   Yes.

15            MS. VUONG:   Same objection.

16       Q.   (BY MR. DULBERG)   Yes, it has not?

17       A.   ██████████████████████████

18   ██████████████████   ████████████████████

19   ██████████████

20       Q.   ██████████████████████████

21   ██████████████████████████████

22   ████████████████████████████

23       A.   █████

24       Q.   ████████████████████████

25   ██████████████████████████████████████

CONFIDENTIAL

Page 38

1  useless, right, because it's not valid?

2              MS. VUONG:  Objection, calls for

3  speculation.

4        A.  Yes.

5        Q.  (BY MR. DULBERG)  You also think that

6  your former Resident Alien Card might have been

7  disclosed, correct?

8        A.  Yes.

9        Q.  Where were you born?

10       A.  ████████

11       Q.  ████████████████████

12       A.  █████

13       Q. █████  ████████████████

14  ██████████████████████████████████████████

15  █████

16              MS. VUONG:  Objection, calls for

17  speculation.

18       A.  Yes.

19       Q.  (BY MR. DULBERG)  And so, again, it's

20  essentially worthless because you're no longer a

21  ████████████████████████████████

22              MS. VUONG:  Same objection,

23  mischaracterizes testimony.

24       A.  Yes.

25       Q.  (BY MR. DULBERG)  And the only reason you

CONFIDENTIAL

Page 39

1    think that these categories of information we just

2    discussed might have been disclosed is because SPE

3    acknowledged that those categories of information were

4    compromised in the data breach, correct?

5              MS. VUONG:  Objection, mischaracterizes

6    testimony.

7         A.   Yes.

8         Q.   (BY MR. DULBERG)  And you don't actually

9    know one way or another whether those specific

10   documents were actually disclosed, correct?

11             MS. VUONG:  Same objection, calls for

12   speculation.

13        A.   Yes.

14        Q.   (BY MR. DULBERG)  You also said it's

15   possible, in the next sentence of your interrogatory

16   responses, that certain medical insurance carrier and

17   insurance plan information might have been disclosed,

18   correct?

19        A.   Yes.

20        Q.   Again, you weren't able to find that

21   information on the Internet, correct?

22        A.   Not my personal, but others.

23        Q.   Okay.  Focusing on your personal

24   information, I can't go on the Dark Web today and get

25   your medical insurance carrier and insurance plan,

CONFIDENTIAL

Page 40

1    correct?

2                MS. VUONG:  Objection, calls for

3    speculation, misstates his testimony.

4            A.    I don't know.

5            Q.    (BY MR. DULBERG)  And again, even if I

6    could, that information would be worthless because you

7    have completely different insurance today than you did

8    when you worked at SPE, right?

9                MS. VUONG:  Objection, calls for

10   speculation and legal and expert opinion.

11           A.    Yes.

12           Q.    (BY MR. DULBERG)  And just so that we're

13   clear, you're not claiming that any specific medical

14   information about -- or treatment or any diagnosis was

15   actually disclosed in the Sony Pictures data breach,

16   correct?

17                MS. VUONG:  Objection, calls for

18   speculation.

19           A.    That I don't know.

20           Q.    (BY MR. DULBERG)  I'm sorry, did you say

21   you don't know?

22           A.    I don't know, yeah.

23           Q.    You have no basis to think that any

24   specific medical information beyond who is your

25   insurance carrier and what plan you were enrolled in

CONFIDENTIAL

Page 55

1          A.   No.

2          Q.   (BY MR. DULBERG)  Are you aware of the

3   ███████████████████████████████████████████

4               MS. VUONG:  Objection, calls for

5   speculation, and vague.

6          A.   No.

7          Q.   (BY MR. DULBERG)  Okay.  But it says in

8   the bottom left of the first page of this exhibit, it

9   ████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████

11              MS. VUONG:  So where are you looking?

12              MR. DULBERG:  On the text box in the

13  lower left part of the first page.

14         A.   That's what it appears to be.

15         Q.   ████████████████████  █████████████████████

██  ████████████████████████████████████████████

██         ██  ████

██         ██  ███████████████████████████

██         ██  ████

██         ██  ████████████████████████████████████████

██     ███████

██         ██  ████

██         ██  ████████████████████████████████

██  ███████████████████████████████████████████

25              MS. VUONG:  Objection, vague.

CONFIDENTIAL

Page 56



9          MS. VUONG:  Objection as to form.

10     A.    Possibly.

11     Q.    (BY MR. DULBERG)  It lists your email

12 ████████████████████████████

13     A.    Yes.

14     Q.    All of this information is publicly

15 available on the Internet, correct?

16          MS. VUONG:  Objection, calls for

17 speculation.

18     Q. ████████████████  ████████████████

19     A.    I guess.

20     Q.    You don't need to download a torrent file

21 ████████████████████████████████████████

22 ██████████████

23          MS. VUONG:  Objection, calls for

24 speculation, mischaracterizes testimony.

25     A.    Yes.

CONFIDENTIAL

Page 57

1        Q.    (BY MR. DULBERG)  And you provided all of

2    ████████████████████████████████████████████████

3        A.    ██████████

4        Q.    ███████████████████████████████████████████

5    ██████████████████████████████████

6              MS. VUONG:  Objection, mischaracterizes

7    testimony.

8        A.    I don't recall.

9        Q.    (BY MR. DULBERG)  Well, you're not suing

10   ████████████████████████████████████████████████

11   address, and phone number, right?

12             MS. VUONG:  Objection as to form.

13       A.    Right.

14       Q.    (BY MR. DULBERG)  And, again, you

15   ████████████████████████████████████████████████

16   ██████████████████

17             MS. VUONG:  Objection, vague.

18       A.    Yes.

19       Q.    (BY MR. DULBERG)  Before the cyber attack

20   on SPE, correct?

21             MS. VUONG:  Same objections.

22       A.    Yes.

23       Q.    (BY MR. DULBERG)  Let's talk about the

24   employment information that you say you found on the

25   Internet following the cyber attack.

CONFIDENTIAL

Page 58

1          Your title at SPE is not a secret,
2     correct?
3                MS. VUONG:  Objection, vague, and calls
4     for speculation.
5           A.   When you say, "secret," what do you mean
6     by that?
7           Q.   (BY MR. DULBERG)  People know about it,
8     right?
9           A.   Oh.  Yes.
10          Q.   You haven't taken measures to hide your
11     title while you were employed at SPE, have you?
12          A.   No.
13          Q.   Your work location also was not a secret,
14     right?
15                MS. VUONG:  Objection, calls for
16     speculation.
17          A.   No.
18          Q.   (BY MR. DULBERG)  And when you joined
19     SPE, it is not a secret?
20                MS. VUONG:  Same objection.
21          A.   No.
22          Q.   (BY MR. DULBERG)  When you stopped
23     working at SPE also is not a secret?
24                MS. VUONG:  Same objection.
25          A.   No.

CONFIDENTIAL

Page 59

1          Q.    (BY MR. DULBERG)  In fact, you've posted
2    every single one of those items to your Linked-In
3    account, correct?
4          A.    Yes.
5                MR. DULBERG:  Can we mark this as
6    Exhibit 3.
7                (Deposition Exhibit 3 was marked.)
8          Q.    (BY MR. DULBERG)  Do you recognize
9    Exhibit 3?
10         A.    Yes.
11         Q.    What is it?
12         A.    It's my Linked-In profile.
13         Q.    And it lists your employment with Sony
14   Pictures Entertainment and Sony Pictures Imageworks,
15   correct?
16         A.    Yes.
17         Q.    Which were your titles there, right?
18         A.    Sorry.  Yes.
19         Q.    And the times that you worked at SPE,
20   correct?
21         A.    Yes.
22         Q.    And you voluntarily put all of this on
23   the Internet, correct?
24                MS. VUONG:  Objection, mischaracterizes
25   testimony, and vague.

CONFIDENTIAL

Page 60

1          A.    Yes.

2          Q.    (BY MR. DULBERG)  And you put all of this

3    detailed information about your jobs at SPE on the

4    Internet before the November 2014 cyber attack,

5    correct?

6                MS. VUONG:  Same objection.

7          A.    Yes.

8          Q.    (BY MR. DULBERG)  So you are not damaged

9    by the release of your prior employment positions or

10   when you started or stopped working at SPE, correct?

11               MS. VUONG:  Same objection, and calls for

12   a legal and expert opinion and calls for speculation.

13         A.    Yes.

14         Q.    (BY MR. DULBERG)  You're not damaged by

15   the publication of your name, correct?

16               MS. VUONG:  Same objections.

17         A.    Yes.

18         Q.    (BY MR. DULBERG)  You're not damaged by

19   the publication of your old address, correct?

20         A.    Yeah.

21               MS. VUONG:  Same objection.

22         Q.    (BY MR. DULBERG)  Not damaged by the

23   publication of your old phone number, correct?

24               MS. VUONG:  Same objections.

25         A.    Yes.

CONFIDENTIAL

Page 61



1       Q.    (BY MR. DULBERG)   None of that

2   information is private, right?

3            MS. VUONG:   Same objections.

4       A.   Right.

5       Q.   (BY MR. DULBERG)   Now let's talk about

6   your social security number.

7       A.   Uh-huh.

8       Q.

24      A.   Yes.

25           MS. VUONG:   Objection, mischaracterizes

CONFIDENTIAL

Page 173

1   attack?

2                MS. VUONG:  Objection as to form, and

3   calls for speculation.  Assumes facts not on the

4   record.

5                Q.   (BY MR. DULBERG)  I assume you did not

6   think that, right?

7                MS. VUONG:  Same objections.

8           A.   No.

9                Q.   (BY MR. DULBERG)  Did SPE promise to

10  safeguard your PII?

11               MS. VUONG:  Objection, calls for a legal

12  opinion.

13          A.   I don't remember.

14               Q.   (BY MR. DULBERG)  Did you take any of

15  those jobs based on your understanding that SPE would

16  protect your PII?

17               MS. VUONG:  Objection, vague.

18          A.   No.

19               Q.   (BY MR. DULBERG)  And each of those jobs

20  ended at the time the film ended; is that correct?

21          A.   Yes.

22               Q.   At the time you left each of those jobs,

23  did you ask SPE or Screen Gems to destroy your PII?

24               MS. VUONG:  Objection as to form.

25          A.   No.

Page 175

1           MS. VUONG:  Same objection.

2       A.   No.

3       Q.   (BY MR. DULBERG)  And obviously SPE's

4   data security policies did not dictate your decision

5   to join SPE or Screen Gems, right?

6           MS. VUONG:  Objection, mischaracterizes

7   his testimony.

8       A.   Yes.

9       Q.   (BY MR. DULBERG)  After 2010, what was

10   the next job you held?

11       A.   After 2010, I was working as an intern at

12   the Jerde Partnership.  It's J-e-r-d-e.

13       Q.   What is that?

14       A.   It's an architecture firm.

15       Q.   And so at this point you had graduated

16   from college, correct?

17       A.   No.  I was still enrolled in college.

18       Q.   I thought you said you graduated in 2012.

19   I'm sorry, you did say that.  When did you work for

20   Jerde?

21       A.   From June 2011 to the beginning of

22   July 2012.  I put June 2012 on my Linked-In because it

23   was literally, like, two days in July.

24       Q.   Okay.  And you were doing

25   architecture-related --

CONFIDENTIAL

Page 204

1    speculation.

2            A.    Yes.

3            Q.    (BY MR. DULBERG)   Have you ever applied

4    for a loan?

5            A.    No.

6            Q.    ███████████████████████████████████

     ████████████████████████████████

             █     ███

             █     ███████████████████████

     ███████████████████████████████████████

     ████████████████████████

             █     ███

             █     ███████████████████████████████████

     ██████████████████████████

             █     ███

             █     ███████████████████████████████████

     ██████████████████████████████

             █     ███

             █     ███████████████████████████████████

     █████████████████

             █     █s.

             █     ███████████████████████████████████

     ████████████████████████

             █     ███

25           Q.    Have you ever given it to a provider of



CONFIDENTIAL

Page 205



1   phone services?  Telephone provider?

2            MS. VUONG:  Objection, vague.

3        A.   Like a cell phone or . . .

4        Q.   (BY MR. DULBERG)  Sure.

5        A.   No.

6        Q.



CONFIDENTIAL

Page 206

9          MS. VUONG:  Objection, calls for

10    speculation, mischaracterizes his testimony.

11          A.   Yes.

12          Q.   (BY MR. DULBERG)  And it's not just

13

14    it, right?

15          MS. VUONG:  Same objections.

16

19          Q.   (BY MR. DULBERG)  Okay.  Got it.  Have

20    you ever provided your personally identifiable





