# EXHIBIT 1

## MODIFIED SETTLEMENT AGREEMENT AND RELEASE

This Modified Settlement Agreement and Release ("Agreement" or "Settlement Agreement") is made and entered into this 13th day of November, 2015, by and among (1) Plaintiffs (as defined in Paragraph 27), for themselves and on behalf of the Settlement Class (as defined in Paragraph 40), and (2) Sony Pictures Entertainment Inc. ("SPE"), and subject to preliminary and final Court approval as required by Rule 23 of the Federal Rules of Civil Procedure.  This agreement supersedes and replaces the Settlement Agreement and Release dated October 19, 2015 entered into between Plaintiffs and SPE.  Plaintiffs and SPE enter into this agreement by and through their respective counsel.  As provided herein, SPE, Class Counsel (as defined in Paragraph 12), and Plaintiffs hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a final order and judgment, all claims of the Settlement Class against SPE in the action titled *Corona v. Sony Pictures Entertainment Inc.*, No. 2:14-cv-09600-RGK-E (C.D. Cal.) (the "Action"), shall be settled and compromised upon the terms and conditions contained herein.

## I.    <u>Recitals</u>

1.      In the fall of 2014, SPE was the victim of an unprecedented cyberattack.  Following the cyberattack, the perpetrators released stolen SPE data on the Internet, some of which contained personally identifiable information concerning current and former employees of SPE and its subsidiaries and certain other individuals.

2.      Also following the cyberattack, SPE provided current and former employees and certain other individuals with one year of AllClear Secure identity protection services, as well as the option to enroll in AllClear PRO for one year.  AllClear PRO provides enrolled individuals and their dependents with a $1 million insurance policy (per individual) for reimbursement of actual costs and certain expenses incurred as a result of identity theft.  These services were made available by SPE free of charge.

3.      Between December 15, 2014 and January 6, 2015, ten former employees of SPE or its subsidiaries filed seven separate putative class action lawsuits against SPE in the United States District Court for the Central District of California.[1]  Six of the previously-filed complaints were dismissed, and Plaintiffs elected to proceed as named plaintiffs or putative class members in the first-filed case, *Corona v. Sony Pictures Entertainment Inc.*, No. 2:14-cv-09600-RGK-E (C.D. Cal.).  An amended complaint was filed by nine named plaintiffs in *Corona*, asserting claims on behalf of themselves and a putative

---

[1]      *See Corona v. Sony Pictures Entm't Inc.*, Civ. No. 2:14-cv-09600-RGK-SH (C.D. Cal.); *Forster v. Sony Pictures Entm't Inc.*, Civ. No. 2:14-cv-09646-AB-PLA (C.D. Cal.); *Levine v. Sony Pictures Entm't Inc.*, Civ. No. 2:14-cv-09687-SVW-SH (C.D. Cal.); *Bailey v. Sony Pictures Entm't Inc.*, Civ. No. 2:14-cv-09755 (C.D. Cal.); *Shapiro v. Sony Pictures Entm't Inc.*, Civ. No. 8:14-cv-02021 (C.D. Cal.); *Garcia Rodriguez v. Sony Pictures Entm't Inc.*, Civ. No. 2:15-cv-00014 (C.D. Cal.); *Exum v. Sony Pictures Entm't Inc.*, Civ. No. 8:15-cv-00016 (C.D. Cal.).

class.[2]  The amended class action complaint in the Action asserted claims for (1) negligence, (2) breach of implied contract, (3) violation of the California Customer Records Act, (4) violation of the California Confidentiality of Medical Information Act, (5) violation of the California Unfair Competition Law, (6) declaratory judgment, (7) violation of Virginia Code § 18.2-186.6, and (8) violation of Colorado Revised Statutes § 6-1-716.

4.     By order dated June 15, 2015, the Court granted in part and denied in part SPE's motion to dismiss the amended complaint.  Specifically, the Court dismissed Plaintiffs' implied-contract, California Customer Records Act, and Virginia and Colorado state statutory claims.  The Court also dismissed the portion of Plaintiffs' negligence claim predicated on SPE's alleged breach of the duty to timely notify putative class members of the cyberattack.  The Court denied the motion to dismiss as to the other claims.  SPE subsequently filed its answer to the amended complaint, denying any and all wrongdoing and liability and asserting various affirmative defenses.

5.     Both during the pendency of the motion to dismiss and thereafter, the Parties (as defined in Paragraph 25) engaged in extensive discovery.  Depositions were taken of each of the Plaintiffs, SPE's corporate representative, and four expert witnesses (two for Plaintiffs and two for SPE).  The Parties also exchanged extensive written discovery:  Plaintiffs produced thousands of pages of documents and answered multiple interrogatories, and SPE produced tens of thousands of pages of documents and also answered multiple interrogatories.  The Parties also held numerous conferences to resolve discovery issues.

6.     Plaintiffs filed their motion for class certification on June 30, 2015.  SPE filed its opposition on August 11, 2015.  Plaintiffs lodged their reply on September 2, 2015.

7.     On June 11, 2015, the Parties participated in a mediation with Eric D. Green of Resolutions LLC serving as mediator.  Thereafter, with the continuing assistance of the mediator, the Parties continued to discuss settlement and to exchange settlement proposals.  On September 1, 2015, the Parties reached an agreement in principle on a proposed settlement.  The Parties did not discuss attorneys' fees, costs, and expenses until after they had reached an agreement in principle, subject to preparation and execution of a written settlement agreement, on the substantive elements of the Settlement (as defined in Paragraph 38).  By order dated September 3, 2015, the Court continued all pending deadlines in the case for 45 days, pending submission to the Court of a settlement agreement and a motion for preliminary approval of the settlement agreement.

8.     The Parties now agree to settle the Action in its entirety, without any admission of liability, with respect to all Released Claims (as defined in Paragraph 34) of the Settlement Class.  The Parties intend this Agreement to bind Plaintiffs, SPE, and all

---

[2]     One of the plaintiffs named in the amended complaint in *Corona* subsequently voluntarily dismissed his claims.  *See Corona v. Sony Pictures Entm't Inc.*, Civ. No. 2:14-cv-09600-RGK-E (C.D. Cal.) (ECF No. 80) (notice of voluntary dismissal of plaintiff Lawon Exum).

members of the Settlement Class who do not timely and properly exclude themselves from the Settlement.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.   <u>Definitions</u>

In addition to the terms defined at various points within this Agreement, the following Defined Terms apply throughout this Agreement:

9.   "Additional Plaintiffs" means certain individuals, other than Plaintiffs, who filed suit against SPE in connection with the SPE Cyberattack (as defined in Paragraph 43).

10.   "Claim" means a written request submitted electronically via the Settlement Website (as defined in Paragraph 42) or by mail by a Settlement Class Member (as defined in Paragraph 41), consistent with the provisions of this Agreement, seeking a cash payment in connection with the Settlement (as defined in Paragraph 38) and shall include Identity Theft/Misuse Claims and Preventive Measures Claims (as defined in Paragraphs 18 and 31, respectively).

11.   "Claimant" means a Settlement Class Member who submits an Identity Theft/Misuse Claim or a Preventive Measures Claim.

12.   "Class Counsel" means:

KELLER ROHRBACK L.L.P.
Gretchen Freeman Cappio
Cari Campen Laufenberg
Lynn Lincoln Sarko
1201 3rd Avenue, Suite 3200
Seattle, WA 98101-3052

GIRARD GIBBS LLP
Daniel C. Girard
Amanda Steiner
Linh G. Vuong
601 California Street, 14th Floor
San Francisco, CA 94108

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Roger Heller
Michael W. Sobol
275 Battery Street, 29th Floor
San Francisco, CA 94111

13.     "Court" means the United States District Court for the Central District of California.

14.     "Effective Date" means the second business day after which all of the following events have occurred:

     a.   SPE's counsel and Class Counsel have executed this Agreement;

     b.   The Court has entered the Final Approval Order (as defined in Paragraph 16) without material change to the Parties' agreed-upon proposed Final Approval Order as described in Paragraph 67;

     c.   The time for seeking rehearing or appellate or other review has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired; and

     d.   The State Court Actions (as defined in Paragraph 44) have been dismissed with prejudice.

Notwithstanding the foregoing, the Effective Date shall not be earlier than 40 days after Final Approval (as defined in Paragraph 15).

15.     "Final Approval" means the date that the Court enters an order and judgment granting final approval of the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of the Service Awards (as defined in Paragraph 79).  In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

16.     "Final Approval Order" means the order and judgment that the Court enters upon Final Approval.  In the event that the Court issues separate orders addressing the matters constituting Final Approval, then Final Approval Order includes all such orders.

17.     "Identity Theft/Misuse" means someone assuming, without permission, the Settlement Class Member's identity and taking out a line of credit, establishing a new financial account, or taking similar actions for the purpose of fraudulently obtaining monies or other things of value in the name of the Settlement Class Member.

18.     "Identity Theft/Misuse Claim" means a Claim submitted by a Settlement Class Member for a cash payment pursuant to Paragraph 70.

19.     "Identity Theft/Misuse Claim Form" means the form, substantially in the form as that attached as Exhibit 6 to this Agreement, for Settlement Class Members to submit an Identity Theft/Misuse Claim.

20. "Notice" means the notices of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement.

21. "Notice Deadline" means 60 days after Preliminary Approval.

22. "Notice Program" means the notice methods provided for in this Agreement and consists of (1) a mailed notice to all those Settlement Class Members for whom SPE can ascertain a mailing address from its records with reasonable effort ("Mail Notice"), (2) Notice posted on the Settlement Website, and (3) Publication Notice (as described in Paragraph 61). The forms of notice shall be substantially in the forms attached as Exhibits 2, 3, and 4 to this Agreement and approved by the Court, and the Notice Program shall be effected in substantially the manner provided in Section VII.

23. "Objection Deadline" means 45 days after the Notice Deadline.

24. "Opt-Out Deadline" means 45 days after the Notice Deadline.

25. "Parties" means Plaintiffs and Sony Pictures Entertainment Inc. ("SPE").

26. "Personally Identifiable Information" (or "PII") means a Social Security number, driver's license number, passport number, personal credit or debit card number, bank account number, or health or medical information.

27. "Plaintiff" means any one of Ella Carline Archibeque, Marcela Bailey, Michael Corona, Joshua Forster, Michael Levine, Christina Mathis, Steven Shapiro, and Geoffrey Springer (collectively, "Plaintiffs").

28. "Plan of Allocation" means the plan of allocation of the Preventive Measures Claims Settlement Administration Fund (as defined in Paragraph 33) that is attached as Exhibit 5 to this Agreement.

29. "Preliminary Approval" means the date that the Court enters, without material change, an order preliminarily approving the Settlement in the form substantially the same as in the attached Exhibit 1.

30. "Preventive Measures" means measures taken by Settlement Class Members to avoid Identity Theft/Misuse resulting from the SPE Cyberattack.

31. "Preventive Measures Claim" means a Claim by a Settlement Class Member for reimbursement of Preventive Measures Losses (as defined in Paragraph 71).

32. "Preventive Measures Claim Form" means the form, substantially in the form as that attached as Exhibit 7, for Settlement Class Members to submit a Preventive Measures Claim.

33.   "Preventive Measures Claims Settlement Administration Fund" means the $2 million, non-reversionary settlement fund to be established by SPE pursuant to Paragraph 71.

34.   "Released Claims" means all claims to be released as specified in Section XI.

35.   "Released Parties" means those persons and entities released as specified in Section XI.

36.   "Releases" means all of the releases contained in Section XI.

37.   "Releasing Parties" means Plaintiffs and all Settlement Class Members who do not timely and properly exclude themselves from the Settlement, and each of their respective heirs, assigns, beneficiaries, and successors.

38.   "Settlement" means the settlement into which the Parties have entered to resolve the Action.  The terms of the Settlement are as set forth in this Agreement including the exhibits hereto.

39.   "Settlement Administrator" means Garden City Group, LLC.  Class Counsel and SPE may, by agreement, substitute a different organization as Settlement Administrator, subject to approval by the Court if the Court has previously approved the Settlement preliminarily or finally.  In the absence of agreement, either Class Counsel or SPE may move the Court to substitute a different organization as Settlement Administrator, upon a showing that the responsibilities of Settlement Administrator have not been adequately executed by the incumbent.

40.   "Settlement Class" means the class defined in Paragraph 47.

41.   "Settlement Class Member" means any person included in the Settlement Class.

42.   "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following Preliminary Approval, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Notice, the order preliminarily approving this Settlement, the Identity Theft/Misuse Claim Form, the Preventive Measures Claim Form, the operative amended complaint and SPE's answer thereto, and such other documents as Class Counsel and SPE agree to post or that the Court orders posted on the website.  These documents shall remain on the Settlement Website at least until Final Approval.  The URL of the Settlement Website shall be agreed upon by Class Counsel and SPE.  Settlement Class Members shall also be able to submit Identity Theft/Misuse Claims and Preventive Measures Claims electronically via the Settlement Website.  The Settlement Website shall not include any advertising, and shall not bear or include the SPE logo or SPE trademarks.  The Settlement Website shall be operational until at least December 31, 2017.  Ownership of the Settlement Website URL shall be transferred to SPE within 10 days of the date on which operation of the Settlement Website ceases.

6

43.     "SPE Cyberattack" means the cyberattack on SPE in the fall of 2014.

44.     "State Court Actions" means *Dukow et al. v. Sony Pictures Entertainment Inc.*, Case No. BC566884 (Super. Ct. Los Angeles Cnty.); *Doe v. Sony Pictures Entertainment Inc.*, Case No. BC567358 (Super. Ct. Los Angeles Cnty.); *McKenzie v. Sony Pictures Entertainment Inc.*, Case No. BC568472 (Super. Ct. Los Angeles Cnty.); and *Ochmanek et al. v. Sony Pictures Entertainment Inc.*, Case No. BC573366 (Super. Ct. Los Angeles Cnty.).

45.     Except where otherwise specified, any time period specified in this Agreement shall be counted in calendar days.

46.     Except where otherwise specified, any reference to a Paragraph, Section, or Exhibit shall be to the specified paragraph or section of this Agreement, or to the specified exhibit to this Agreement.

## III.    Certification of the Settlement Class

47.     For settlement purposes only, Plaintiffs shall seek, and SPE shall not oppose, certification of the following Settlement Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure:

(1) All current and former corporate and production employees of SPE and its subsidiaries as of November 24, 2014, and (2) those individuals who were not current or former corporate or production employees of SPE or its subsidiaries as of November 24, 2014 but: (a) whose PII SPE has determined was disclosed on the Internet as a result of the SPE Cyberattack; and (b) for whom SPE has contact information sufficient to provide direct notice pursuant to the terms of the Notice Program.[3]

48.     For settlement purposes only, Plaintiffs shall also seek, and SPE shall not oppose, appointment of Class Counsel, and appointment of Plaintiffs as class representatives, to represent the Settlement Class.

## IV.    Settlement Consideration

49.     This Settlement provides for the following benefits to Settlement Class Members, as set forth more fully herein:

a.   the provision of AllClear ID services (as described in Section IX);

---

[3]     A complete list of the individuals who comprise group (2) in this definition—*i.e.*, those who were not current or former corporate or production employees of SPE or its subsidiaries as of November 24, 2014 and who are included in the Settlement Class—will be provided by SPE to the Settlement Administrator by no later than fifteen business days after Preliminary Approval and will be maintained by the Settlement Administrator.

      b.  the opportunity to submit claims for reimbursement of Identity Theft/Misuse Losses and Preventive Measures Losses (as described in Section X);

      c.  payment of the costs associated with providing Notice to Settlement Class Members (as described in Section VII), as well as the costs associated with the Settlement Administrator (except as provided in the Plan of Allocation regarding distribution of any residual funds), which SPE will pay as a part of the settlement consideration separate and apart from the cash payments described in Section X;

      d.  payment of Service Awards (as described in Section XII), subject to Court approval, of no more than $34,000 in total to Plaintiffs and Additional Plaintiffs, which SPE will pay as part of the settlement consideration separate and apart from the cash payments described in Section X; and

      e.  payment of no more than $3,490,000 in attorneys' fees, costs, and expenses (as described in Section XII), subject to Court approval, which SPE will pay as a part of the settlement consideration separate and apart from the cash payments described in Section X.

## V.   <u>Preliminary Approval</u>

50.    Upon execution of this Agreement by all signatories, Class Counsel shall promptly move the Court for an order granting preliminary approval of this Settlement ("Preliminary Approval Order"). The proposed Preliminary Approval Order that will be filed with the motion shall be in a form agreed upon by Class Counsel and SPE, and substantially in the form as that attached as Exhibit 1 to this Agreement. The motion for preliminary approval shall request that the Court: (1) preliminarily approve the terms of the Settlement as within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notice; (4) approve the procedures set forth in Section VII for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (5) stay the Action pending Final Approval of the Settlement; (6) stay and/or enjoin, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning a Released Claim; and (7) schedule a Final Approval hearing for a time and date mutually convenient for the Court, Class Counsel, and counsel for SPE, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith and should be finally approved, and determine whether to approve Class Counsel's application for attorneys' fees, costs, and expenses, and for Service Awards ("Final Approval Hearing").

51.    Within 10 days of the filing of the motion for preliminary approval, SPE, at its own expense, shall serve or cause to be served a notice of the proposed Settlement, in conformance with the requirements under the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA").

## VI.   <u>Settlement Administrator</u>

52. The Settlement Administrator shall administer various aspects of the Settlement as described in the next Paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, providing Mail Notice to Settlement Class Members as described in Section VII; effecting Publication Notice; establishing and operating the Settlement Website and a toll-free number; administering the Claims processes; and distributing cash payments according to the processes and criteria set forth in Section X and Exhibits 5, 6, and 7.

53. The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement, include:

   a. Obtaining from SPE the name and mailing address information for Settlement Class Members (to the extent it is available), and verifying and updating the mailing addresses received, through the National Change of Address database, for the purpose of sending the Mail Notice to Settlement Class Members, and re-mailing returned notices to the extent updated address information can be obtained through reasonable efforts;

   b. Obtaining from SPE the list of PII-Disclosed Settlement Class Members (as defined in Paragraph 70.2.1);

   c. Effecting the Publication Notice;

   d. Establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

   e. Establishing and maintaining the Settlement Website;

   f. Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

   g. Responding to any mailed Settlement Class Member inquiries;

   h. Processing all written notifications of exclusion from the Settlement Class;

   i. Providing weekly reports and, no later than ten days after the Opt-Out Deadline, a final report to Class Counsel and SPE, that summarize the number of written notifications of exclusion received that week, the total number of written notifications of exclusion received to date, and other pertinent information;

   j. In advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of the Notice Program in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and properly provided written notification of exclusion from the Settlement Class;

9

  k. Reviewing, determining the validity of, and responding to all Claims submitted by Settlement Class Members, pursuant to criteria set forth in Section X and in Exhibits 5, 6, and 7;

  l. Establishing and maintaining the Identity Theft/Misuse Claims Settlement Administration Account (as defined in Paragraph 70.7) and the Preventive Measures Claims Settlement Administration Fund (as defined in Paragraph 71.1) for the purpose of holding funds paid by SPE and distributing cash payments for Identity Theft/Misuse Claims and Preventive Measures Claims.

  m. After the Effective Date, processing and transmitting distributions to Settlement Class Members in accordance with Section X;

  n. Providing weekly reports and a final report to Class Counsel and SPE that summarize the number of Claims since the prior reporting period, the total number of Claims received to date, the number of any Claims granted and denied since the prior reporting period, the total number of Claims granted and denied to date, and other pertinent information; and

  o. Performing any Settlement-administration-related function at the agreed-upon instruction of both Class Counsel and SPE, including, but not limited to, verifying that cash payments have been distributed in accordance with Section X.

## VII. <u>Notice to Settlement Class Members</u>

54. Within fifteen business days after Preliminary Approval, SPE will provide to the Settlement Administrator data files (collectively, the "Class List") that identify, subject to the availability of information in reasonably accessible electronic form, the names and last known mail addresses of the identifiable Settlement Class Members. SPE shall take appropriate measures to ensure that the Class List is transferred to the Settlement Administrator in a secure manner. The Settlement Administrator shall maintain the Class List in a secure manner. Upon receipt of the Class List, the Settlement Administrator shall implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order. The Notice shall include, among other information: a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date upon which the Final Approval Hearing is scheduled to occur; a description of the Claims processes; and the address of the Settlement Website at which Settlement Class Members may access this Agreement and other related documents and information.

55. The Notice shall include a procedure for Settlement Class Members to exclude themselves from the Settlement Class by notifying the Settlement Administrator in writing of the intent to exclude himself or herself from the Settlement Class. Such written notification must be postmarked no later than the Opt-Out Deadline, as specified in the Notice. The written notification must include the individual's name and address; a statement that he or she wants to be excluded from the Settlement in *Corona v. Sony*

*Pictures Entertainment Inc.*, No. 2:14-cv-09600-RGK-E (C.D. Cal.); and the individual's signature.  The Settlement Administrator shall provide the Parties with copies of all completed opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class, which Class Counsel shall move to file under seal with the Court no later than 10 days prior to the Final Approval Hearing.  Any Settlement Class Member who does not timely and validly exclude himself or herself shall be bound by the terms of this Agreement.

56.     The Notice shall include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and expenses, and for Service Awards.  Objections to the Settlement or to the application for attorneys' fees, costs, expenses, and for Service Awards must be electronically filed with the Court, or mailed to the Clerk of the Court, with copy to Class Counsel and SPE's counsel.  For an objection to be considered by the Court the objection must be: (a) electronically filed by the Objection Deadline; or (b) mailed first-class postage prepaid to the Clerk of Court, Class Counsel, and SPE's Counsel, at the addresses listed in the Notice, and postmarked by no later than the Objection Deadline, as specified in the Notice.

57.     For an objection to be considered by the Court, the objection must also set forth:

    a.  the name of the Action;

    b.  the objector's full name, address, email address, and telephone number;

    c.  an explanation of the basis upon which the objector claims to be a Settlement Class Member;

    d.  all grounds for the objection, accompanied by any legal support for the objection;

    e.  the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement, the fee application, or the application for Service Awards;

    f.  the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

    g.  a list of any persons who will be called to testify at the Final Approval Hearing in support of the objection;

    h.  a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

    i.  the objector's signature (an attorney's signature is not sufficient).

58.     Notice shall be provided to the Settlement Class in at least one of three ways:  Mail Notice, Publication Notice, and Notice on the Settlement Website, with each method

implemented pursuant to the terms of Section VII.  Notice shall be provided substantially in the forms attached as Exhibits 2, 3, and 4 to this Agreement.

59.    After the Settlement Administrator receives the Class List from SPE, the Settlement Administrator shall run the mailing addresses included in the Class List through the National Change of Address Database, and shall mail the Mail Notice to all such Settlement Class Members at the addresses as updated (the "Mail Notice Program").  For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Mail Notice to the updated address indicated.  For any Mail Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses and re-mail the Mail Notice to the extent updated addresses are identified.  The Settlement Administrator need only make one attempt to re-mail any Mail Notices that are returned as undeliverable.

60.    The Mail Notice Program shall be completed by the Notice Deadline, excluding any re-mails for Mail Notices that are returned undeliverable.

61.    The Settlement Administrator shall effectuate the Publication Notice by arranging for publication of the Publication Notice in People Magazine, substantially in a form as that attached as Exhibit 3 to this Agreement.  Publication Notice shall be completed by the Notice Deadline.

62.    The Settlement Administrator shall post the Notice on the Settlement Website in the form agreed to by the Parties and approved by the Court.  The Notice shall be posted on the Settlement Website by the Notice Deadline.

63.    Within seven days after the Notice Deadline, the Settlement Administrator shall provide Class Counsel and SPE with one or more affidavits confirming that the Mail Notice Program, Publication Notice, and posting of Notice on the Settlement Website were completed in accordance with the Parties' instructions and the Court's approval.  Class Counsel shall file such affidavit(s) with the Court as an exhibit to or in conjunction with Plaintiffs' motion for final approval of the Settlement.

64.    All costs of the Notice Program shall be paid by SPE.

65.    Within the parameters set forth in this Section VII, further specific details of the Notice Program shall be subject to the agreement of Class Counsel and SPE.

**VIII.    <u>Final Approval Order and Judgment</u>**

66.    Plaintiffs' motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur.  The Final Approval Hearing shall be scheduled no earlier than 90 days after the CAFA notices are mailed to ensure compliance with 28 U.S.C § 1715.  By no later than 21 days prior to the Objection Deadline, Plaintiffs shall file a motion for final approval of the Settlement and an application for attorneys' fees, costs, and expenses and for Service Awards.  By no later than 14 days prior to the Final Approval Hearing, the Parties shall file any responses

to any objections, and any replies in support of final approval of the Settlement and/or Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards.  At the Final Approval Hearing, the Court will consider Plaintiffs' motion for final approval of the Settlement, and Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards.  In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to the fees, costs, expenses, or Service Award application, provided the objectors filed timely objections that meet all of the requirements listed in Paragraphs 56 and 57.

67.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order granting final approval of the Settlement, and whether to approve Class Counsel's request for attorneys' fees, costs, expenses, and the Service Awards.  The proposed Final Approval Order that will be filed with the motion for final approval shall be in a form agreed upon by Class Counsel and SPE.  Such proposed Final Approval Order shall, among other things:

    a.   Determine that the Settlement is fair, adequate, and reasonable;

    b.   Finally certify the Settlement Class for settlement purposes only;

    c.   Determine that the Notice provided satisfied Due Process requirements;

    d.   Dismiss the Action with prejudice;

    e.   Bar and enjoin the Releasing Parties from asserting any of the Released Claims, as set forth in Section XI, including during the pendency of any appeal from the Final Approval Order;

    f.   Release SPE and the Released Parties from the Released Claims, as set forth in Section XI; and

    g.   Reserve the Court's continuing and exclusive jurisdiction over SPE and all Settlement Class Members (including all objectors) to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## IX.   AllClear ID Services

68.     SPE shall arrange to provide, and shall pay the costs associated with providing, the following AllClear ID services free of charge to all Settlement Class Members.

    68.1     Settlement Class Members shall have their existing coverage under AllClear Secure extended through December 31, 2017, at no cost to the Settlement Class Members.  To the extent any Settlement Class Members are not already covered by AllClear Secure in connection with the SPE Cyberattack, they will have AllClear Secure coverage extended to them, at no cost to them, through December 31, 2017.

68.2 Settlement Class Members may also enroll in AllClear PRO for coverage extending through December 31, 2017, at no cost to the Settlement Class Members. Settlement Class Members who have already enrolled in the AllClear PRO coverage offered by SPE in connection with the SPE Cyberattack shall have that coverage automatically extended through December 31, 2017, at no cost to those Settlement Class Members. All other Settlement Class Members who wish to enroll in AllClear PRO shall do so directly with AllClear ID at the web address and/or telephone number, and in the manner, prescribed in the Notice, at no cost to those Settlement Class Members. For Settlement Class Members who have not already enrolled in AllClear PRO in connection with the SPE Cyberattack, the enrollment window for them to enroll in AllClear PRO shall be open through and including 120 days after the Notice Deadline.

68.3 AllClear ID shall make available to Settlement Class Members, for the period extending through December 31, 2017, an SPE-specific toll-free phone number that may be used to contact AllClear ID.

## X.  Claims For Cash Payments

69. Settlement Class Members may submit Claims under the Settlement to recover (1) actual, unreimbursed losses resulting from Identity Theft/Misuse as a direct result of the SPE Cyberattack ("Identity Theft/Misuse Losses"), and/or (2) Preventive Measures Losses.

70. ***Identity Theft/Misuse Claims.*** Any Settlement Class Member may submit an Identity Theft/Misuse Claim to the Settlement Administrator for reimbursement for Identity Theft/Misuse Losses that a Settlement Class Member claims, documents, and proves in accordance with the Identity Theft/Misuse Claims process described below.

70.1 The Settlement Administrator may award up to $10,000 per Claimant to reimburse any Identity Theft/Misuse Claim that the Settlement Administrator decides is valid and meets the requirements for reimbursement hereunder, up to an aggregate maximum of $2,500,000 across all valid Identity Theft/Misuse Claims. No Settlement Class Member shall in any circumstances be awarded in excess of $10,000 in reimbursements for Identity Theft/Misuse Claim(s).

70.2 Settlement Class Members who choose to submit an Identity Theft/Misuse Claim shall submit, electronically via the Settlement Website or by mail, the Identity Theft/Misuse Claim Form, including signing and dating the Identity Theft/Misuse Claim Form, as well as the documentation described herein and as set forth in the Notice. In order to prove a valid Identity Theft/Misuse Claim for reimbursement, Settlement Class Members must comply with the following documentation and proof requirements:

70.2.1 Within 45 days after Preliminary Approval, SPE will provide the Settlement Administrator with a list of Settlement Class Members as to whom, based on information currently available, and after conducting a reasonable inquiry, SPE believes their PII was disclosed on the Internet as

14

a result of the SPE Cyberattack (the "PII-Disclosed Settlement Class Members"). In order to prove a valid Identity Theft/Misuse Claim for reimbursement, PII-Disclosed Settlement Class Members shall submit:

> (1)     documentation of the loss for which reimbursement is claimed;

> (2)     proof that the loss is reasonably attributable to the SPE Cyberattack—*i.e.*, from a third party's unauthorized use of information regarding the PII-Disclosed Settlement Class Member that the PII-Disclosed Settlement Class Member reasonably attributes to the SPE Cyberattack; and

> (3)     attestation that the PII-Disclosed Settlement Class Member has sought and been denied reimbursement through the normal course, including, to the extent applicable, AllClear PRO insurance and normal reimbursement by financial institutions or merchants.

70.2.2   In order to prove a valid Identity Theft/Misuse Claim for reimbursement, any Settlement Class Member who is not a PII-Disclosed Settlement Class Member (the "Non-PII-Disclosed Settlement Class Members") shall submit:

> (1)     proof that the Non-PII-Disclosed Settlement Class Member provided his or her PII to SPE or its subsidiaries;

> (2)     proof that the PII provided to SPE or its subsidiaries was publicly disclosed as a result of the SPE Cyberattack;

> (3)     documentation of the loss for which reimbursement is claimed;

> (4)     a report filed with the police concerning the incident of identity theft/misuse giving rise to the Identity Theft/Misuse Claim;

> (5)     proof that the loss more likely than not (a) resulted from a third party's unauthorized use of the PII that was provided to SPE or its subsidiaries and (b) was obtained by the third party as a result of the SPE Cyberattack; and

> (6)     attestation that the Non-PII-Disclosed Settlement Class Member has sought and been denied reimbursement through the normal course, including, to the extent applicable, AllClear PRO insurance and normal reimbursement by financial institutions or merchants.

70.3    If the Settlement Class Member was not enrolled in AllClear PRO at the time of the loss for which she or he seeks reimbursement on an Identity Theft/Misuse Claim, but the loss would have been covered under the AllClear PRO insurance policy had the Settlement Class Member been enrolled, then the loss may not be claimed for reimbursement hereunder.  This requirement applies to all Identity Theft/Misuse Claims.

70.4    Identity Theft/Misuse Claims must be filed no later than December 31, 2017.  The Settlement Administrator shall commence rendering decisions on Identity Theft/Misuse Claims on or after the Effective Date; provided however that in no event shall the Settlement Administrator begin deciding Identity Theft/Misuse Claims earlier than 60 days following Final Approval.  The Settlement Administrator shall decide all Identity Theft/Misuse Claims submitted on or before December 31, 2017 in the order in which they are received.  In the event that the aggregate amount of Identity Theft/Misuse Claims determined by the Settlement Administrator to be valid reaches $2,500,000, the Settlement Administrator shall cease reviewing Identity Theft/Misuse Claims and shall post a message on the Settlement Website informing Settlement Class Members that the fund for Identity Theft/Misuse Claims has been exhausted.  In no event shall SPE be required to pay in excess of $2,500,000 for Identity Theft/Misuse Claims.

70.5    The Settlement Administrator will evaluate each Identity Theft/Misuse Claim to determine whether (1) the Identity Theft/Misuse Claim Form is complete and accurate; (2) the Claimant signed the Identity Theft/Misuse Claim Form as required; (3) the Claimant provided the information needed to evaluate the Identity Theft/Misuse Claim Form; and (4) the Claimant has satisfied the documentation and proof requirements applicable to his/her Identity Theft/Misuse Claim, depending upon whether s/he is a PII-Disclosed Settlement Class Member or a Non-PII-Disclosed Settlement Class Member.

70.6    Prior to deciding any Identity Theft/Misuse Claim, the Settlement Administrator shall afford SPE an opportunity to review and comment on the Identity Theft/Misuse Claim and provide such relevant information to the Settlement Administrator as SPE may wish, with Class Counsel, in consultation with the Claimant, then being afforded an opportunity to review and comment on the Identity Theft/Misuse Claim in turn.  SPE's and Class Counsel's review, comment, and provision of information pursuant to this Paragraph 70.6 shall be reasonably prompt and shall not operate to unreasonably delay adjudication of the Claimant's Identity Theft/Misuse Claim.  If the Settlement Administrator determines that an Identity Theft/Misuse Claim is denied, the Settlement Administrator shall provide notice to the Claimant, identifying the reason for the denial, and the Claimant shall thereafter have 21 days after the notice is sent to attempt to cure any deficiencies that are identified in the notice.  The decision of the Settlement Administrator, consistent with the terms of this Agreement, shall be final and binding on the Claimant and on SPE.  No decisions by the Settlement Administrator shall be deemed to constitute a finding, admission, or waiver by SPE as to any matter of fact, law, or evidence having any collateral effect on any

16

Claim hereunder or in any other proceeding or before any other forum or authority.  Further, such decisions shall not be submitted to or admissible in any other proceeding or before any other forum or authority.

70.7    The Settlement Administrator shall establish a settlement administration account for payment of Identity Theft/Misuse Claims (the "Identity Theft/Misuse Claims Settlement Administration Account"), which shall be funded by SPE as instructed by the Settlement Administrator as claims are determined by the Settlement Administrator to be valid and subject to payment.  The Settlement Administrator will make payment with respect to valid Identity Theft/Misuse Claims using amounts deposited by SPE into the Identity Theft/Misuse Claims Settlement Administration Account.  Payment on any Identity Theft/Misuse Claim pursuant to any decision of the Settlement Administrator hereunder shall be made within 30 days of the Settlement Administrator's final determination of the Identity Theft/Misuse Claim.

70.8    The Identity Theft/Misuse Claims Settlement Administration Account at all times shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l.  Any costs associated with the maintenance of the Identity Theft/Misuse Claims Settlement Administration Account shall be paid by SPE.

71.     ***Preventive Measures Claims.***  Any Settlement Class Member may submit a Preventive Measures Claim to the Settlement Administrator for reimbursement of actual, unreimbursed costs (including for time expended), for Preventive Measures taken as a result of the SPE Cyberattack, that were incurred before the date of the execution of this Agreement ("Preventive Measures Losses").  Representative costs are actual, unreimbursed costs incurred before the date of the execution of this Agreement for credit monitoring, freezing/unfreezing of credit, obtaining credit reports, and lost time.

71.1    Within ten business days after the Effective Date, SPE shall transfer to the Settlement Administrator the sum of $2,000,000 to be deposited into an account held by an FDIC-insured financial institution (the "Preventive Measures Claims Settlement Administration Fund").  Class Counsel and SPE shall agree on the FDIC-insured financial institution at which the account shall be established.

71.2    The Preventive Measures Claims Settlement Administration Fund at all times shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l.  Any costs associated with the maintenance of the Preventive Measures Claims Settlement Administration Fund shall be paid by SPE.

71.3    The Preventive Measures Claims Settlement Administration Fund shall be used to fund the distribution of payments to Claimants whose Preventive Measures Claims the Settlement Administrator has finally approved, pursuant to the Plan of Allocation devised by Class Counsel and attached as Exhibit 5 to this Agreement.

The Administration of the Preventive Measures Claims Settlement Administration Fund shall be as set forth in the Plan of Allocation.

71.4   Preventive Measures Claims must be submitted no later than 90 days after the Notice Deadline.  No payments shall be made on Preventive Measures Claims before the Effective Date.  No portion of the Preventive Measures Claims Settlement Administration Fund shall revert to SPE.

## XI.   <u>Releases</u>

72.   As of the Effective Date, the Releasing Parties, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns, beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged SPE and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and the present and former directors, officers, employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them (collectively, the "Released Parties"), of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the SPE Cyberattack that were or could have been alleged in the Action, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of (1) the disclosure of Settlement Class Members' personal information; (2) SPE's maintenance of Settlement Class Members' personal information; (3) SPE's information security policies or practices; and (4) SPE's provision of notice to Settlement Class Members following the SPE Cyberattack (the "Released Claims").

73.   For the avoidance of doubt, the Released Claims include any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States (including, without limitation, any causes of action under the California Business & Professions Code § 17200 *et seq.*, California Civil Code § 1750 *et seq.*, California Civil Code § 1798.80 *et seq.*, and any similar statutes or data breach notification statutes in effect in the United States or in any states in the United States; California Labor Code §§ 2698 *et seq.* & 2800 *et seq.*, and any similar statutes in effect in the United States or in any states in the United States; California Civil Code § 56.10 *et seq.*, and any similar statutes in effect in the United States or in any states in the United States; causes of action under the common or civil laws of any state in the United States, including but not limited to: unjust enrichment, negligence, bailment, conversion, negligence *per se*, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on privacy rights provided for under the constitutions of the United States or of any states in the United

States; and also including, but not limited to, any and all claims in any state or federal court of the United States, for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief). The Released Claims do not include any claims arising from or relating to any conduct by SPE after the date the Agreement is executed.

74. Upon the Effective Date, and to the fullest extent permitted by law, each Releasing Party, including Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public, or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than the participation in the Settlement as provided herein) in which any of the Released Claims is asserted.

75. AS OF THE EFFECTIVE DATE, PLAINTIFFS AND EACH RELEASING PARTY SHALL FURTHER AUTOMATICALLY BE DEEMED TO HAVE WAIVED AND RELEASED ANY AND ALL PROVISIONS, RIGHTS, AND BENEFITS CONFERRED BY § 1542 OF THE CALIFORNIA CIVIL CODE OR SIMILAR LAWS OF ANY OTHER STATE OR JURISDICTION. SECTION 1542 OF THE CALIFORNIA CIVIL CODE READS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

76. Plaintiffs and/or any Releasing Party may hereafter discover facts other than or different from those that he/she knows or believes to be true with respect to the subject matter of the claims released pursuant to the terms of Paragraphs 72 and 73, or the law applicable to such claims may change. Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he/she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this Paragraph and Paragraphs 72 and 73.

77. In addition to any other defenses SPE may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

**XII.** **Attorneys' Fees, Costs, and Expenses, and Service Awards**

78. SPE agrees not to oppose Class Counsel's request for attorneys' fees, costs, and expenses of up to $3,490,000. Any award of attorneys' fees, costs, and expenses shall be paid by SPE separate and apart from the cash payments described in Section X.

79.  Class Counsel will ask the Court to approve, and SPE will not oppose, service awards not to exceed $24,000 in total to compensate Plaintiffs and $10,000 in total to compensate Additional Plaintiffs for their efforts in the litigation and commitment on behalf of the Settlement Class ("Service Awards").  Neither Class Counsel's application for, nor any individual's entitlement to, a Service Award shall be conditioned in any way upon such individual's support for this Agreement.

80.  Within ten business days of the Effective Date, SPE shall pay to Class Counsel all Court-approved attorneys' fees, costs, and expenses, and Service Awards, not to exceed $3,524,000.  In the event that the award of attorneys' fees, costs, and expenses, or Service Awards, is reduced on appeal, SPE shall only pay the reduced amount of such award.  Class Counsel shall timely furnish to SPE any required tax information or forms before the payment is made.

81.  The payment of attorneys' fees, costs, and expenses pursuant to Paragraph 78, and the payment of Service Awards pursuant to Paragraph 79, shall be made through a wired deposit by SPE into the attorney client trust account to be designated by Class Counsel.  After the attorneys' fees, costs, and expenses have been deposited into this account, Class Counsel shall be solely responsible for allocating such attorneys' fees, costs, and expenses and distributing each participating firm's allocated share of such attorneys' fees, costs, and expenses to that firm and SPE shall have no responsibility for distribution of attorneys' fees, costs, or expenses among participating firms.  After the Service Awards have been deposited into the designated account, Class Counsel shall be solely responsible for allocating such Service Awards to the recipients designated by the Court, and SPE shall have no responsibility for such distribution.

82.  In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses, or the payment of the Service Awards, in the amounts that Class Counsel requests, the remaining provisions of this Agreement shall remain in full force and effect.  No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of attorneys' fees, costs, and expenses or of the Service Awards shall constitute grounds for cancellation or termination of this Agreement.

83.  In no event shall SPE pay more than $3,524,000 for attorneys' fees, costs, and expenses, and Service Awards combined.

## XIII.  Dismissal With Prejudice of State-Court Actions

84.  The Parties agree that it is a necessary condition of this Agreement that, within ten business days after Final Approval, the plaintiffs in the State Court Actions shall move to have their actions dismissed with prejudice, and that the state court thereafter shall dismiss those actions with prejudice.  In the event the State Court Actions are not dismissed with prejudice, SPE may, at its sole discretion and notwithstanding any preliminary or final approval order entered by the Court, terminate this Agreement, rendering it null and void.  In such event, the effects of termination enumerated in Section XV shall apply.

## XIV.   Termination of Settlement

85.   This Settlement may be terminated by either Plaintiffs or SPE by serving on counsel for
the opposing Party and filing with the Court a written notice of termination within 14
days (or such longer time as may be agreed between Class Counsel and SPE) after any of
the following occurrences:

   a.   Class Counsel and SPE agree to termination before the Effective Date;

   b.   the Court rejects, materially modifies, materially amends or changes, or declines
to preliminarily or finally approve the Settlement;

   c.   an appellate court reverses the Final Approval Order, and the Settlement is not
reinstated and finally approved without material change by the Court on remand;

   d.   The Court or any reviewing appellate court incorporates material terms or
provisions into, or deletes or strikes material terms or provisions from, or
materially modifies, amends, or changes, the Preliminary Approval Order, the
proposed Final Approval Order (as described in Paragraph 67), or the Settlement;
or

   e.   the Effective Date does not occur.

86.   SPE also shall have the right to terminate the Settlement by serving on Class Counsel and
filing with the Court a notice of termination within 14 days of its receipt from the
Settlement Administrator of the final report specified in Paragraph 53, if more than 400
Settlement Class Members submit valid written notifications to exclude themselves from
the Settlement Class.

## XV.   Effect of a Termination

87.   The grounds upon which this Agreement may be terminated are set forth in Paragraphs
84, 85, and 86.  In the event of a termination as provided therein, this Agreement shall be
considered null and void; all of SPE's obligations under the Agreement shall cease to be
of any force and effect; the amounts in the Preventive Measures Claims Settlement
Administration Fund shall be returned to SPE in accordance with Paragraph 88; and the
Parties shall return to the status quo ante in the Action as if the Parties had not entered
into this Agreement.  In addition, in the event of such a termination, all of the Parties'
respective pre-Settlement claims and defenses will be preserved, including, but not
limited to, Plaintiffs' right to seek class certification and SPE's right to oppose class
certification.

88.   In the event of a termination as provided in Paragraphs 84, 85, and/or 86, the Settlement
Administrator shall return the balance of the Preventive Measures Claims Settlement
Administration Fund to SPE within seven days of receiving notice of the termination.

89.   In the event the Settlement is terminated in accordance with the provisions of Paragraphs
84, 85, and/or 86, any discussions, offers, or negotiations associated with this Settlement

21

shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose.  In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

90.     The Settlement shall become effective on the Effective Date unless earlier terminated in accordance with the provisions of Paragraph 84, 85, and/or 86.

## XVI.  No Admission of Liability

91.     SPE disputes the claims alleged in the Action and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind.  SPE has agreed to enter into this Agreement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Action.

92.     Class Counsel and Plaintiffs believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action.  Class Counsel and Plaintiffs have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

93.     The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

94.     Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency or other tribunal.

## XVII.  Miscellaneous Provisions

95.     <u>Singular and Plurals</u>.  As used in this Agreement, all references to the plural shall also mean the singular and to the singular shall also mean the plural whenever the context so indicates.

96.     <u>Binding Effect</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

97.    Cooperation of Parties.  The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

98.    Obligation To Meet And Confer.  Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted.

99.    Integration.  This Agreement (along with any Exhibits attached hereto) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

100.   No Conflict Intended.  Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

101.   Governing Law.  The Agreement shall be construed in accordance with, and be governed by, the laws of the State of California, without regard to the principles thereof regarding choice of law.

102.   Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts.  Original signatures are not required.  Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

103.   Jurisdiction.  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties.  The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement.  The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator.  As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

104.   Notices.  All notices to Class Counsel provided for herein, shall be sent by overnight mail to:

KELLER ROHRBACK L.L.P.
Gretchen Freeman Cappio
Cari Campen Laufenberg
Lynn Lincoln Sarko
1201 3rd Avenue, Suite 3200
Seattle, WA 98101-3052

GIRARD GIBBS LLP
Daniel C. Girard
601 California Street, 14th Floor
San Francisco, CA 94108

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Roger Heller
Michael W. Sobol
275 Battery Street, 29th Floor
San Francisco, CA 94111

All notices to SPE, provided for herein, shall be sent by overnight mail to:

Leah Weil
Senior Executive Vice President and General Counsel
SONY PICTURES ENTERTAINMENT INC.
10202 West Washington Blvd.
Culver City, CA 90232

William F. Lee
Felicia H. Ellsworth
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109

Noah A. Levine
Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

Christopher Casamassima
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

105.   <u>Modification and Amendment</u>.  This Agreement may be amended or modified only by a written instrument signed by counsel for SPE and Class Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

106.   <u>No Waiver</u>.  The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

107.   <u>Authority</u>.  Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

108.   <u>Agreement Mutually Prepared</u>.  Neither SPE nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

109.   <u>Independent Investigation and Decision to Settle</u>.  The Parties understand and acknowledge that they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement.  It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in any substantive or procedural law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law or changes in any substantive or procedural law, subsequently occurring or otherwise.

110.   <u>Receipt of Advice of Counsel</u>.  Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained in Section XI, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

IN WITNESS THEREOF, SPE's counsel and Class Counsel cause this Agreement to be executed.

Dated: _November 13, 2015_

_Lynn Lincoln Sarko_   by permission/CCL
Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 3rd Avenue, Suite 3200
Seattle, WA 98101-3052
*Class Counsel, on behalf of Plaintiffs and the Settlement Class*

25

Dated: *November 13, 2015*       *Daniel C. Girard*

                                 by permission/ccl

Daniel C. Girard
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA 94108
*Class Counsel, on behalf of Plaintiffs and the Settlement Class*


Dated: _____       _____

Michael W. Sobol
LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  78215
*Class Counsel, on behalf of Plaintiffs and the Settlement Class*


Dated: _____       _____

Noah A. Levine
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
*On behalf of Sony Pictures Entertainment Inc.*

Dated: _____

Daniel C. Girard
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA 94108
*Class Counsel, on behalf of Plaintiffs and the
Settlement Class*

Dated: __11·13·15__

Michael W. Sobol
LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  78215
*Class Counsel, on behalf of Plaintiffs and the
Settlement Class*

Dated: _____

Noah A. Levine
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
*On behalf of Sony Pictures Entertainment Inc.*

Dated: _____         _____
                                   Daniel C. Girard
                                   GIRARD GIBBS LLP
                                   601 California Street, 14th Floor
                                   San Francisco, CA 94108
                                   *Class Counsel, on behalf of Plaintiffs and the*
                                   *Settlement Class*


Dated: _____         _____
                                   Michael W. Sobol
                                   LIEFF CABRASER HEIMANN &
                                       BERNSTEIN, LLP
                                   275 Battery Street, 29th Floor
                                   San Francisco, CA  78215
                                   *Class Counsel, on behalf of Plaintiffs and the*
                                   *Settlement Class*


Dated: __11 / 13 / 2015__          _____
                                   Noah A. Levine
                                   WILMER CUTLER PICKERING
                                       HALE AND DORR LLP
                                   7 World Trade Center
                                   250 Greenwich Street
                                   New York, NY 10007
                                   *On behalf of Sony Pictures Entertainment Inc.*