UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-09600-RGK (Ex) | Date | November 24, 2015 |
|---|---|---|---|
| Title | *MICHAEL CORONA, et al v. SONY PICTURES ENTERTAINMENT, INC.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

Not Present      Not Present

**Proceedings:**      **(IN CHAMBERS) Order re Motion for Preliminary Approval of Class Settlement (DE 145)**

**I.    INTRODUCTION**

In December 2014 and January 2015, ten former employees of Sony Pictures Entertainment, Inc. ("SPE") filed seven separate lawsuits alleging claims arising out of a cyberattack on SPE's information technology infrastructure and network. All seven cases were related before this Court. On March 2, 2015, Plaintiffs Michael Corona and Christina Mathis ("Plaintiffs"), on behalf of themselves and all others similarly situated ("Class Members"), filed an Amended Complaint against SPE, which consolidated the claims of all seven actions into a single action. The Amended Complaint alleges (1) negligence, (2) declaratory judgment, (3) violation of the California Confidentiality of Medical Information Act, and (4) violation of the California Unfair Competition Law.[1]

Beginning June 11, 2015, the parties participated in mediation. On September 1, 2015, the parties reached an agreement for settlement in principle. On October 19, 2015, Plaintiff filed this unopposed motion for preliminary approval of class action settlement.

**II.    THE SETTLEMENT**

    **A.    Definition of the Proposed Class**

The proposed class is defined as:

---

[1] In addition to the claims stated above, the Amended Complaint originally alleged claims for breach of implied contract, violation of the California Customer Records Act, violation of Virginia Code §18.2-186.6(b), violation of the Colorado Consumer Protection Act, and negligence related to the timeliness of SPE's provision of notification of the SPE Cyberattack. On June 15, 2015, the Court dismissed those claims for failure to state a claim.

(1) All current and former corporate and production employees of SPE and its subsidiaries as of November 24, 2014, and (2) those individuals who were not current or former corporate or production employees of SPE or its subsidiaries as of November 24, 2014 but (a) whose PII SPE has determined was disclosed on the Internet as a result of the SPE Cyberattack; and (b) for whom SPE has contact information sufficient to provide direct notice pursuant to the terms of the Notice Program.

Modified Settlement Agreement and Release ¶ 47.

### B. Settlement Terms

Plaintiffs and Settlement Class Members will release SPE and its affiliates from any claims regarding the issues in this case in exchange for the following:

#### 1. *Identity Protection Services from AllClear ID*

SPE will provide all Settlement Class Members with certain identity protection services through AllClear ID, through December 31, 2017.[2] Specifically, all Settlement Class Members will be provided with AllClear Secure, free of charge, through December 31, 2017. This service provides assistance to recover financial losses and restore stolen identities. Additionally, all Settlement Class Members may enroll, free of charge, in AllClear PRO, for coverage through December 31, 2017. AllClear PRO provides identity theft monitoring, including fraud detection, credit monitoring, alerts by phone, lost wallet protection, detection and restoration services for identity theft associated with an enrollee's child, and identity theft insurance coverage of $1 million.[3] AllClear ID will also establish an SPE-specific telephone number that Settlement Class Members can use to contact AllClear ID for assistance and to obtain information about coverage and identity theft issues.

#### 2. *Cash Payments*

Cash payments will be available through two claims processes.

##### a. *Preventive Measures Claims*

SPE will establish a $2 million non-reversionary fund to reimburse Settlement Class Members for unreimbursed expenses they incurred and time they spent taking preventive measure to protect themselves from identity theft resulting from the SPE Cyberattack. Settlement Class Members who submit valid claims with documentation will be eligible to recover up to $1,000. Settlement Class Members will also have the option to submit claims without documentation, or claims that are for lost time exclusively, and be eligible to receive a flat payment amount, the default amount of which will be $50, with the ultimate amount depending on the number of valid claims submitted. All payments will be adjusted, on a pro rata basis, if the total reimbursement amounts for valid Preventive Measures Claims exceed or fall below the $2 million fund amount, up to a maximum of $1,500 for documented claims and $500 for undocumented claims.

---

[2] This represents a two-year extension of the single year of service that SPE provided following the SPE Cyberattack.

[3] The parties state that outside of the Settlement, the current cost to enroll in AllClear PRO is $14.95 per month, meaning it would cost a normal consumer $358.80 over two years for the AllClear PRO service.

      b.    *Identity Theft/Misuse Claims*

SPE has agreed to pay up to $10,000 individually and up to $2.5 million in total, to Settlement Class Members who experience unreimbursed losses from identity theft or misuse as a direct result of the SPE Cyberattack. This relief is intended to supplement the $1 million insurance coverage that is provided under AllClear PRO. Therefore, to the extent a loss would have been covered by AllClear PRO, a Settlement Class Member who was not enrolled in AllClear PRO at the time of such loss cannot recover on an Identity Theft/Misuse Claim. Settlement Class Members may receive up to $10,000 for out-of-pocket losses that are not recoverable through the AllClear PRO insurance protection or otherwise reimbursed through the usual course (*e.g.*, from their credit card or bank). Settlement Class Members will have until December 31, 2017 to submit Identity Theft/Misuse Claims, provided that once SPE has paid $2.5 million in the aggregate for such claims, no additional claims will be accepted, and notice to that effect will be posted on the Settlement Website.

      3.    *Class Representative Service Award*

Class Counsel will apply for service awards, not to exceed $3,000 for each Plaintiff, to compensate them for their time and effort on behalf of the Settlement Class. Additionally, Class Counsel will ask the Court to award service awards, not to exceed $1,000, for each of the other individuals who also filed suit against SPE in connection with the SPE Cyberattack. Any service award will be paid by SPE separate from the relief for the Settlement Class.

      4.    *Class Counsel Fees and Costs Awards*

Class Counsel will request attorneys' fees, costs, and expenses in an amount not to exceed $3,490,000. Class counsel will request that a portion of any fee, cost, and expense award be provided to the counsel of the plaintiffs in the state court actions, which were stayed pending resolution of the federal case.

      5.    *Settlement Administration Costs*

SPE will pay the costs associated with providing notice to the Settlement Class and the other costs of the Settlement Administrator, as set forth in the Settlement Agreement. Such costs will be paid by SPE separate from the relief provided for the Settlement Class.

## III.   JUDICIAL STANDARD

### A.   Conditional Certification

Before a court may evaluate a class settlement, the court's "dominant concern" is whether the settlement class passes muster under Federal Rule of Civil Procedure 23 subsections (a) and (b). *Amchem Prod. v. Windsor*, 521 U.S. 591, 621 (1997). This inquiry receives "undiluted, even heightened, attention in the settlement context." *Id.* at 620. Thus, a court must be satisfied that the class meets each of the four prerequisites for certification established by Rule 23(a).

The court must also be satisfied that a plaintiff seeking class certification satisfies one of the three requirements of Rule 23(b) regarding predominant questions of facts and law. *See Valeo v. Carter-Wallace, In*c., 97 F.3d 1227, 1234 (9th Cir. 1996).

### B.     Preliminary Approval of the Settlement

A class action may not be dismissed, compromised, or settled without court approval. Fed. R. Civ. P. 23(e). Such approval of a class action settlement by a district court must follow a determination that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement agreement meets these standards, courts must consider a number of factors, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

## IV.     DISCUSSION

Plaintiff requests that the Court preliminarily approve the proposed settlement of this action. Before the Court can preliminarily approve a class action settlement, it must preliminarily certify the proposed settlement class. Fed. R. Civ. P. 23(e). Thus, the Court may conditionally certify the class only if Plaintiffs demonstrate that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of Rule 23(b) has been met. The Court addresses both requirements.

### A.     Conditional Certification

    1.     *Rule 23(a)*

Federal Rule of Civil Procedure 23(a) states in pertinent part that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." As a threshold matter, in order to certify a class, a court must be satisfied that:

> (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are questions of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the class or defenses of the class (the "typicality" requirement); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" requirement). Fed. R. Civ. P. 23(a).

        a.     *Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a) (1). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010).

Here, Class Counsel represents that the Settlement Class includes several thousand individuals. SPE has informed Class Counsel that it estimates approximately 435,000 persons in the Settlement Class. Therefore, the numerosity requirement is satisfied.

b.      *Commonality*

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will generate common answers apt to drive the resolution of the litigation." *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single significant question of law or fact.'" *Id.*

Here, Plaintiffs and Class Members' claims involve common questions of law and fact, which include: (1) what efforts SPE took to protect the Settlement Class Members' personal information, and (2) whether those efforts were sufficient. & Professions Code § 17200, *et seq.*;

c.      *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The evaluation of typicality focuses on "the defendant's conduct and the plaintiff's legal theory." *Simpson v. Fireman's Fund. Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005). "Representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, Plaintiffs and the Settlement Class Members were subject to the same conduct and have the same interest in pursuing their claims against SPE. Therefore, Plaintiffs' claims arise from the same events and are identical to those of the Class Members.

d.      *Adequacy of Representation*

The final prerequisite of Rule 23(a) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 468 (9th Cir. 2000).

Because Plaintiffs' claims are substantially intertwined with those of the Class, the interests of the Class will be fairly and adequately represented in their absence. Moreover, there do not appear to be any conflicts of interest between Plaintiffs and other Class Members, or between Plaintiffs' counsel and the Class. Additionally, it appears that Plaintiffs' counsel has extensive experience in prosecuting class actions, and have sufficient resources to vigorously pursue the claims on behalf of the entire class.

2.      <u>Rule 23(b)(3)</u>

Rule 23(b) provides that a class may be certified if "the court finds that questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods." Fed. R. Civ. P. 23(b)(3).

The predominance inquiry focuses on the relationship between the common and individual

issues. *Hanlon*, 150 F.3d at 1022. "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Id.* The superiority inquiry under Rule 23(b)(3) requires "determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. This determination necessarily inquires whether alternative mechanisms exist to resolve the dispute. *Id.* Class actions not only serve to permit litigation of a suit involving common questions when there are too many plaintiffs for proper joinder, but they also "permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

Here, common questions pertain to SPE's alleged negligent conduct, and uniformly apply to Plaintiffs and all Class Members. Therefore, the resolution of the issues in this case would apply to all Class Members, and class action is a superior vehicle for the resolution of these issues. Accordingly, the Court finds that, for the purposes of settlement, the predominance requirement of Rule 23(b)(3) is satisfied.

### B. Preliminary Approval of Settlement

In determining whether to preliminarily approve a class action settlement, the Court must examine the submitted materials and determine whether the proposed settlement appears fair on its face and is appropriate for submission to the Class Members.

Considering factors such as the strength of Plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; amount offered in settlement; stage of proceedings; and the experience of Class Counsel; the Court finds the factors weigh in favor of preliminary approval of the settlement. In light of the fact that attorneys' fees will be determined upon application by Class Counsel, and after careful review of argument and evidence in support of the amount requested, the Court finds that preliminary approval of the class settlement is appropriate.

### C. Proposed Notice Plan

Rule 23(e) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1). Additionally, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be reasonably identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoint to investigate and to come forward and be heard.'" *Churchill Vill.*, 361 F.3d at 575 (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)); *see also Rodriguez v. West*, 563 F.3d 948, 962 (9th Cir. 2009).

Here, the Modified Settlement Agreement provides for direct mail notice, using the most updated information available for Settlement Class Members. Steps will be taken to locate updated address information and re-mail notices that are returned undeliverable. The agreement also provides for additional notice by publication in People Magazine. Further, the Settlement Administrator will establish and maintain a Settlement Website where Settlement Class Members can obtain additional information, view case documents, and submit claims electronically. The Settlement Administrator will also set up an informational toll-free telephone number.

The Notice is written in simple, straightforward language that includes: (1) basic information

about the case; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain benefits under the Settlement; (4) an explanation of how Class Members can exercise their right to request exclusion from or object to the Settlement; (5) an explanation that any claims against SPE that could have been litigated in this action will be released if the Class Member does not request exclusion from the Settlement; (6) the names of proposed Class Counsel and information regarding the requested attorneys' fees and costs, settlement administration costs, and Plaintiffs' service payments; (7) the Final Approval Hearing date; (8) an explanation of eligibility for appearing at the Final Approval Hearing; and (9) contact information to obtain additional information.

Based on the facts above, the Court approves the proposed Notice Plan.

## V.     CONCLUSION

The Court finds that, for the purposes of settlement, the proposed Class meets the requirements of Rule 23(a) and (b), and **GRANTS** Plaintiff's Motion for Conditional Class Certification.

The Court finds that the proposed Settlement Agreement appears to be fair and reasonable on its face, and thereby **GRANTS** Plaintiff's Motion for Preliminary Approval of the Settlement Agreement.

The Court appoints Girard Gibbs, Keller Rohrback, and Lieff Cabraser as Class Counsel for the Settlement Class.

Attorneys fees will be determined upon noticed motion by the parties.

The Final Approval Hearing is set for **March 16, 2016**, at **10:00 a.m.**

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer