Matthew J. Preusch (SBN 298144)
mpreusch@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1129 State Street, Suite 8
Santa Barbara, CA 93101
T: (805) 456-1496
F: (805) 456-1497

Lynn Lincoln Sarko, *admitted pro hac vice*
lsarko@kellerrohrback.com
**KELLER ROHRBACK L.L.P**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
T: (206) 623-1900
F: (206) 623-3384

Daniel C. Girard (SBN 114826)
dcg@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
T: (415) 981-4800
F: (415) 981-4846

Michael W. Sobol (SBN 194857)
msobol@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
T: (415) 956-1000
F: (415) 956-1008

*Class Counsel*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CORONA, CHRISTINA MATHIS, et al., individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br>   vs.<br><br>SONY PICTURES ENTERTAINMENT INC.,<br><br>       Defendant. | CASE NO. 2:14−CV−09600−RGK−E<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Hearing Date: April 6, 2016<br>Time:        10:00 a.m.<br>Courtroom:  850<br>Judge:     Hon. R. Gary Klausner |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION.................................................................................... 1

II. RELEVANT BACKGROUND................................................................ 3

    A. Plaintiffs' Claims and SPE's Motion to Dismiss............................. 3

    B. Discovery and Plaintiffs' Continuing Investigation ....................... 4

    C. Class Certification .......................................................................... 4

    D. Settlement Negotiations .................................................................. 5

    E. Modified Settlement Agreement and the Preliminary Approval Order......... 5

III. THE SETTLEMENT............................................................................... 5

    A. The Settlement Class ....................................................................... 5

    B. The Settlement Benefits .................................................................. 6

        1. Identity Protection Services ................................................... 6

        2. Cash Payments........................................................................ 7

    C. Opt-Out and Objection Procedures ................................................. 9

    D. Payment of Administrative Costs .................................................. 10

    E. Attorneys' Fees, Costs, and Expenses; Service Awards ............... 10

    F. Release............................................................................................ 10

IV. NOTICE HAS BEEN DISSEMINATED TO THE CLASS CONSISTENT WITH THE COURT-APPROVED NOTICE PROGRAM.............................................. 11

    A. Direct Notice.................................................................................. 11

    B. Publication Notice ......................................................................... 11

    C. Settlement Website and Toll-Free Number.................................... 12

V. THE RESPONSE FROM THE CLASS THUS FAR HAS BEEN POSITIVE ..... 12

VI. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT .................................................................................................... 12

    A. The Class Action Settlement Approval Process ............................ 12

    B. The Settlement is Fair, Reasonable, and Adequate........................ 13

        1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation....................................... 13

        2. The Risk of Maintaining Class Action Status Throughout the Trial . 14

i

# TABLE OF CONTENTS

**Page**

3.  The Benefits Offered in the Settlement ........................................... 15

4.  The Extent of Discovery and the Stage of Proceedings ................... 16

5.  The Experience and Views of Counsel ........................................... 17

6.  The Presence of a Government Participant ..................................... 17

7.  The Reaction of the Class .............................................................. 17

8.  Lack of Collusion Between the Parties .......................................... 18

VII.   CONCLUSION.................................................................................. 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS SETTLEMENT

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Churchill Village, LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .............................................................. 13, 14, 19

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................. 19

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ............................................................ 19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................ 13, 14

*In re Countrywide Financial Corp. Customer Data Sec. Breach Litig.*,
   2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ..................................... 16, 17

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................................... 19

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .............................................................. 17

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ............................................................... 18

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ......................................... 18

*Linney v. Cellular Alaska Partnership*,
   1997 WL 450064 (N.D. Cal. July 18, 1997) ........................................ 18

*McCabe v. Six Continents Hotels, Inc.*,
   2015 WL 3990915 (N.D. Cal. June 30, 2015) ..................................... 16

*National Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ....................................................... 15

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ............................................................. 13

*Pinter v. D.A. Davidson, Inc.*,
   No. 1:09-cv-00059-RFC, ECF No. 52 (D. Mont. Nov. 23, 2009) ............ 17

iii

## TABLE OF AUTHORITIES

**Page**

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................. 14

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................. 13

## STATUTES

Class Action Fairness Act, 28 U.S.C. § 1715 ............................................... 17

## TREATISES

4 Alba Conte & Herbert B. Newberg on Class Actions § 11:41 .................................. 18

4 Alba Conte & Herbert B. Newberg on Class Actions § 11:50 (4th ed. 2002) .............. 13

Manual for Complex Litigation, Fourth, §§ 21.63 *et seq.* (2004). ................................. 12

## I.     **INTRODUCTION**

The Court previously granted preliminary approval of the proposed Modified Settlement Agreement and Release (hereinafter, "Settlement")[1] reached by Plaintiffs and Sony Pictures Entertainment, Inc. ("SPE") (collectively, the "Parties") in this case. *See* ECF No. 151 (Preliminary Approval Order). Notice has now been disseminated to the Settlement Class[2] pursuant to the Notice Program set forth in the Settlement. By this motion, Plaintiffs respectfully request that the Court conduct a final review of the Settlement and approve the Settlement as fair, reasonable, and adequate.

The Settlement is the product of intensive arm's-length negotiations with the assistance of a highly qualified mediator; follows the Court's partial denial of SPE's motion to dismiss, full briefing on class certification, and significant discovery; and was achieved five months before the scheduled trial date. The Settlement provides significant benefits to the Settlement Class Members that are well-tailored to the nature of the harm alleged.

*First*, SPE will establish a non-reversionary cash fund of $2 million to reimburse Settlement Class Members for preventive measures they have taken to protect themselves from identity theft as a result of the SPE Cyberattack.

*Second*, SPE will provide identity protection services for two additional years, through December 2017. All Settlement Class Members will be automatically enrolled for free in AllClear Secure, which provides identity repair and restoration assistance. Additionally, all Settlement Cass Members may enroll, free of charge, in AllClear PRO (for Settlement Class Members who reside in the United States or have a United States Social Security Number) or IDT911 (for Settlement Class Members who reside outside the United States), which provide additional benefits, including $1 million in identity theft insurance, fraud detection, lost wallet protection, and detection and restoration

---

[1] A complete copy of the Modified Settlement Agreement and Release (the "Settlement") is attached as Exhibit A to the Joint Declaration of Cari Campen Laufenberg, Roger N. Heller, and Daniel C. Girard ("Joint Decl."), filed herewith.

[2] Capitalized terms have the meaning provided in the Settlement.

services for identity theft associated with an enrollee's child, as well as, for the vast majority of Settlement Class Members, credit monitoring and identity theft monitoring services. The thousands of Settlement Class Members residing in the United States who already enrolled in the initial year of AllClear PRO provided by SPE following the SPE Cyberattack will have their coverage automatically extended through December 2017. In all, these identity protection services provide millions of dollars in benefits to the Settlement Class Members. Dedicated toll-free telephone numbers have also been established for Settlement Class Members to contact AllClear and IDT911 for assistance.

*Third*, SPE will pay up to $2.5 million in the aggregate to compensate Settlement Class Members who experience losses due to identity theft or misuse as a direct result of the SPE Cyberattack that are not reimbursed through the insurance provided by AllClear PRO or IDT911 or through other normal courses (*e.g.*, by their credit card companies).

The Settlement also provides for a robust Notice Program that included direct mailed notice to Settlement Class Members, publication notice, and a Settlement Website.[3]

SPE is bearing the costs of the Notice Program and the other costs of the Settlement Administrator, as well as any court-awarded attorneys' fees, costs, and expenses for Class Counsel and any plaintiff service awards, all of which will be paid separately from the benefits provided for the Settlement Class.

While the objection and opt-out deadline is still three weeks away, the reaction from the Settlement Class thus far has been positive. As of February 17, 2016, only nine class members have opted out of the Settlement, and zero objections have been submitted.[4]

---

[3] *See generally* Declaration of Lori L. Castaneda Regarding Mailed Notice, Publication Notice, and Notice on the Settlement Website ("Castaneda Decl."), filed herewith; Supplemental Declaration of Lori L. Castaneda ("Supp. Castaneda Decl."), filed herewith.

[4] Supp. Castaneda Decl., ¶¶ 12, 13. The postmark deadline for Settlement Class Members to opt out or object is March 9, 2016. Updated numbers of opt-outs, objections,

Plaintiffs respectfully submit that the Settlement satisfies the standards for final settlement approval, and request that the Court grant final approval.

## II.    RELEVANT BACKGROUND

### A.    Plaintiffs' Claims and SPE's Motion to Dismiss

In December 2014 and January 2015, shortly after news broke about the SPE Cyberattack, ten former SPE employees filed seven cases in this Court.[5] Joint Decl. ¶¶ 7, 10; 3 n.1. Counsel for Plaintiffs cooperatively organized a leadership structure to combine their resources and decades of experience in managing complex litigation and privacy issues to effectively and efficiently litigate this matter. Joint Decl. ¶ 12. The Court appointed Keller Rohrback L.L.P., Girard Gibbs LLP, and Lieff Cabraser Heimann & Bernstein, LLP to serve as Interim Co-Lead Class Counsel.[6] ECF No. 45; Joint Decl. ¶ 20.

After interviewing numerous current and former SPE employees, investigating the facts, and researching potential claims, Plaintiffs filed an Amended Class Action Complaint. ECF No. 43; Joint Decl. ¶¶ 9, 15, 16. SPE moved to dismiss Plaintiffs' claims on March 23, 2015. ECF No. 59; Joint Decl. ¶ 48. Plaintiffs opposed the motion, ECF No. 62, and SPE filed a reply, ECF No. 66; Joint Decl. ¶ 48. The Court granted in part and denied in part SPE's motion by Order dated June 15, 2015. ECF No. 97; Joint Decl. ¶ 49.

---

and claims will be provided to the Court in advance of the April 6, 2016 Final Approval Hearing.

[5] Four additional cases were filed in Los Angeles Superior Court by former SPE employees who asserted similar claims (the "State Plaintiffs"). Joint Decl. ¶ 3 n.1. These cases were stayed pending resolution of the federal cases. This proposed Settlement, if approved, will also resolve the State Plaintiffs' claims.

[6] Other counsel of record include Carney Bates & Pulliam, PLLC, Capstone Law APC, Chimicles & Tikellis LLP, Gomez Trial Attorneys, Lite DePalma Greenberg, LLC, Rukin Hyland Doria & Tindall LLP and Ryan & Maniskas, LLP.

### B.   Discovery and Plaintiffs' Continuing Investigation

The Parties engaged in extensive discovery, making them well-informed about the strengths and weaknesses of their respective positions, and providing them with the information they needed to negotiate the proposed Settlement. Among other things, Plaintiffs drafted and responded to several sets of written discovery, reviewed over 55,500 pages of documents and 3,710 data spreadsheets produced by SPE, third parties, and experts, retained and worked with experts on liability, class certification, and damages issues, and conducted and defended several depositions, including the depositions of SPE's Rule 30(b)(6) corporate designee and two experts designated by each side. Joint Decl. ¶¶ 22-43. The Parties held frequent, often lengthy, meet and confer sessions to resolve discovery disputes, and through those efforts were able to resolve numerous disputes without requiring the Court's assistance. Joint Decl. ¶ 29. Plaintiffs engaged in third party discovery, serving subpoenas on potential sources of information, and conducted an extensive investigation and review of the files compromised in the SPE Cyberattack that were posted on the Internet, including internal SPE documents. Joint Decl. ¶¶ 44-46.

### C.   Class Certification

Plaintiffs engaged two experts to assist with developing their claims and preparing their motion for class certification—economist Henry Fishkind, Ph.D., and data breach expert Larry Ponemon, Ph.D. Joint Decl. ¶ 38. Both experts prepared detailed reports that Plaintiffs filed with their class certification motion on June 30, 2015. ECF Nos. 107, 109; Joint Decl. ¶ 39. SPE deposed both experts. Joint Decl. ¶ 42. SPE opposed Plaintiffs' motion on August 11, 2015. ECF No. 112, 133; Joint Decl. ¶ 40. Plaintiffs reviewed the more than 4,130 pages of documents produced by SPE's two experts and took their depositions. Joint Decl. ¶¶ 41-42. Plaintiffs lodged their reply brief on September 2, 2015. Joint Decl. ¶ 40. The Parties notified the Court of their proposed settlement the same day. ECF No. 134; Joint Decl. ¶ 60.

### D.   Settlement Negotiations

The Parties commenced settlement negotiations in June 2015. Joint Decl. ¶ 56. On June 11, 2015, the Parties participated in a full-day mediation session supervised by Professor Eric Green of Resolutions, LLC. Joint Decl. ¶ 58. The Parties made progress at that session, but did not reach agreement. *Id*. For months following the June 11, 2015 session, the Parties continued to negotiate with the assistance of the mediator, and held numerous telephonic conferences. Joint Decl. ¶ 59. As a result of these efforts, on September 1, 2015, the Parties were able to reach an agreement in principle, subject to preparation and execution of a written settlement agreement, on the substantive elements of the settlement. *Id*. The Parties did not discuss attorneys' fees, costs, or expenses until they had reached an agreement in principle on the substantive elements of the settlement. Joint Decl. ¶ 66. After reaching an agreement in principle, and so notifying the Court, the Parties worked diligently to craft the settlement papers, including a notice program and claims processes, working closely with the Settlement Administrator. Joint Decl. ¶ 61. On October 19, 2015, Plaintiffs filed a Motion for Preliminary Approval, together with an executed Settlement Agreement and exhibits. *Id*.

### E.   Modified Settlement Agreement and the Preliminary Approval Order

On November 13, 2015, the Parties moved for leave to file a slightly modified version of the settlement agreement, which the Court granted on November 20, 2015. ECF Nos. 149, 150; Joint Decl. ¶ 65. The modifications did not change the substance of the Settlement at all, but rather were intended to ensure that the Settlement Class definition was clear. *Id*. On November 24, 2015, the Court entered an Order granting preliminary approval of the Settlement (as modified), certifying the Settlement Class for settlement purposes, and appointing the three Interim Co-Lead Class Counsel firms as Class Counsel for the Settlement Class. ECF No. 151; Joint Decl. ¶ 68.

## III.   THE SETTLEMENT

### A.   The Settlement Class

The Settlement Class is defined as:

(1) All current and former corporate and production employees of SPE and its subsidiaries as of November 24, 2014, and (2) those individuals who were not current or former corporate or production employees of SPE or its subsidiaries as of November 24, 2014 but: (a) whose PII SPE has determined was disclosed on the Internet as a result of the SPE Cyberattack; and (b) for whom SPE has contact information sufficient to provide direct notice pursuant to the terms of the Notice Program.[7]

Settlement, ¶ 47.

### B.     The Settlement Benefits

#### 1.     Identity Protection Services

SPE will provide all Settlement Class Members with identity protection services through December 31, 2017. Settlement, § IX; ECF No. 155. This represents a two-year extension of the single year of service that SPE provided following the SPE Cyberattack.

Specifically, under the Settlement, all Settlement Class Members will have their AllClear Secure coverage extended, free of charge, through December 31, 2017. AllClear Secure provides assistance to recover financial losses and restore stolen identities.

In addition, all Settlement Class Members may enroll, free of charge, in AllClear PRO or IDT911, for coverage through December 31, 2017. AllClear PRO is available for Settlement Class Members who reside in the United States or have a U.S. Social Security Number, which includes the vast majority of the Settlement Class. IDT911 is available for any Settlement Class Members who currently reside outside of the United States.[8] AllClear PRO provides, among other benefits, identity theft insurance coverage of $1 million, identity theft monitoring, fraud detection, credit monitoring, lost wallet protection, and detection and restoration services for identity theft associated with an enrollee's child. Similarly, IDT911 will provide enrollees with identity theft insurance

---

[7] Category (2) of the proposed Settlement Class includes approximately 3,500 individuals. Pursuant to the Settlement, a complete list of these individuals is being maintained by the Settlement Administrator. Settlement, ¶ 47 n.3.

[8] Less than 8 percent of the Settlement Class Members currently reside outside of the United States. ECF No. 155.

coverage of $1 million, fraud detection, lost wallet protection, and detection and restoration services for identity theft associated with an enrollee's child. IDT911 will also provide identity theft monitoring to enrollees residing in Canada, the United Kingdom, and other countries outside of the European Union and, to the extent such identity theft monitoring service is available in their country of residence, the European Union. IDT911 will also provide credit monitoring for enrollees residing in Canada and the United Kingdom, which is where the substantial majority (approximately 90 percent) of the non-U.S. resident Settlement Class Members currently reside. ECF No. 155.

Enrollment in AllClear PRO and IDT911 is user-friendly. The notices mailed to Settlement Class Members and the Settlement Website provide clear instructions for how to enroll.[9] Moreover, the thousands of Settlement Class Members residing in the United States who were already enrolled in the AllClear PRO service offered by SPE following the SPE Cyberattack, will have their coverage automatically extended through December 2017; they will not need to re-enroll.

Dedicated telephone numbers for both AllClear ID and IDT911 have been established, which Settlement Class Members can call for assistance and to obtain information about coverage and identity theft issues. All told, these identity protection services represent millions of dollars in value to the Settlement Class.[10]

## 2. Cash Payments

Cash payments will be available to Settlement Class Members through two claims processes:

Preventive Measures Claims: SPE will establish a $2 million non-reversionary fund to reimburse Settlement Class Members for unreimbursed expenses they incurred

---

[9] See Castaneda Decl., ¶ 8, Exs. A-E.

[10] For example, the current cost for a consumer to enroll in AllClear PRO is $14.95 per month, meaning it would cost a normal consumer $358.80 over two years for the AllClearPRO service. See https://www.allclearid.com/plans/pro-plan/. IDT911 provides substantially comparable value, and AllClear Secure, which all Settlement Class Members will receive, provides significant value as well.

7

and time they spent taking preventive measures to protect themselves from identity theft resulting from the SPE Cyberattack (such as purchasing credit monitoring and identity theft monitoring services, purchasing identity theft insurance, freezing or unfreezing their credit, and obtaining credit reports). Settlement, ¶ 71.  The claims process is user-friendly.  Settlement Class Members can submit claims online, via the Settlement Website, or by mail, and they will have until April 23, 2016 (*i.e.*, 90 days after the Notice Deadline) to submit Preventive Measures Claims.  Settlement Class Members who submit valid claims with documentation will be eligible to recover up to $1,000. Settlement, Ex. 5 ("Plan of Allocation"), ¶ 4.  Settlement Class Members will also have the option to submit claims without documentation, or claims that are for lost time exclusively, and be eligible to receive a payment, the default amount of which will be $50, with the ultimate amount depending on the number of valid claims submitted.  All payments will be adjusted, on a *pro rata* basis, if the total reimbursement amounts for valid Preventive Measures Claims exceed or fall below the $2 million fund amount, up to a maximum of $1,500 for documented claims and $500 for undocumented claims.  Plan of Allocation, ¶ 8.[11]

Identity Theft/Misuse Claims:  In addition, SPE has agreed to pay up to $10,000 individually and up to $2.5 million in total, to Settlement Class Members who experience actual unreimbursed losses from identity theft or misuse as a direct result of the SPE Cyberattack.  Settlement, ¶ 70.  This relief is intended to supplement the $1 million

---

[11] To the extent there are any residual funds, subject to agreement of the Parties, if economically feasible and practical such funds will be distributed *pro rata* to Settlement Class Members who have enrolled in AllClear PRO or IDT 911 in connection with the SPE Cyberattack or the Settlement.  If such additional distribution is not economically feasible and practical given the funds remaining, or if an additional distribution is made and there are funds remaining after that, any residual funds will be distributed to the Identity Theft Resource Center to promote education about how consumers can protect themselves from identity theft.  Plan of Allocation, ¶ 10.

insurance coverage that is provided by AllClear PRO and IDT911.[12] Settlement Class Members may receive reimbursement of up to $10,000 for such out-of-pocket losses that are not recoverable through the AllClear PRO/IDT911 insurance protection or otherwise reimbursed through the usual course (*e.g.*, from their credit card company or bank). *Id*. ¶ 70. Settlement Class Members who submit valid Identity Theft/Misuse Claims and meet the eligibility requirements (including providing documentation of their losses), will be paid as claims are validated by the Settlement Administrator, up to a maximum aggregate amount of $2.5 million. *Id*. ¶ 70. Different documentation requirements apply, depending upon whether Settlement Class Members have been identified by SPE as having their PII disclosed on the Internet as a result of the SPE Cyberattack. *Id*. ¶ 70.2. To the extent claims are denied, claimants will have the ability to cure defects in their submissions identified by the Settlement Administrator. *Id*. ¶ 70.6. Settlement Class Members will have until December 31, 2017 to submit Identity Theft/Misuse Claims, provided that once SPE has paid $2.5 million in the aggregate for Identity Theft/Misuse Claims, no additional such claims will be accepted, and notice to that effect will be posted on the Settlement Website. *Id*. ¶ 70.4. As with the Preventive Measures Claims, Settlement Class Members will have the option to submit Identity Theft/Misuse Claims online, via the Settlement Website, or by mail. *Id*. ¶ 70.2.

### C. Opt-Out and Objection Procedures

Any person within the Settlement Class definition may exclude himself or herself from the Settlement Class by mailing a written request for exclusion to the Settlement Administrator, at the mailing address indicated in the notice. Settlement, ¶¶ 24, 55. Any Settlement Class Member who does not timely and validly exclude himself or herself from the Settlement Class may object to, or comment regarding, the Settlement, Class Counsel's fee, cost, and expense application, and/or the requests for service awards. To

---

[12] Accordingly, to the extent that a loss would have been covered by AllClear PRO or IDT911, as applicable, a Settlement Class Member who was not enrolled at the time of such loss cannot recover on an Identity Theft/Misuse Claim. Settlement, ¶ 70.3.

9

be considered, an objection or comment must be made in writing, must be sent to the Clerk of Court, Class Counsel, and SPE's Counsel (at the addresses identified in the long-form notice), and must include the information described in the long-form notice. *Id.*, ¶ 57. The postmark deadline to mail requests for exclusions or objections is March 9, 2016, 45 days after the Notice Deadline. *Id.*, ¶¶ 23-24.

### D.   Payment of Administrative Costs

SPE will pay the costs associated with the Notice Program and the other costs of the Settlement Administrator, as set forth in the Settlement. Joint Decl. ¶ 66. Such costs will be paid by SPE separate from the relief provided for the Settlement Class. Settlement, ¶ 49; Joint Decl. ¶ 66.

### E.   Attorneys' Fees, Costs, and Expenses; Service Awards

Class Counsel are filing concurrently an application for an award of attorneys' fees, costs, and expenses in the total amount of $3,490,000. Class Counsel intend to allocate a portion of any award (up to $244,000) to the counsel for the plaintiffs in the State Court Cases in recognition of their work and expenditures in the litigation. The attorneys' fees, costs, and expenses awarded by the Court, up to $3,490,000, will be paid separately by SPE, in addition to the relief for the Settlement Class. Settlement, ¶ 49.

Class Counsel are also asking the Court to approve service awards, in the amount of $3,000 for each of the eight Plaintiffs and $1,000 for each of the other individuals who filed suit against SPE in connection with the SPE Cyberattack (for a total of $33,000 in total requested service awards), to compensate them for their efforts in pursuing this litigation. Any service awards, up to a total of $33,000, will be paid by SPE separately from, and will therefore not reduce, the relief for the Settlement Class. *Id.*, ¶ 49; Joint Decl. ¶ 66.

### F.   Release

In exchange for the benefits provided by the Settlement, Plaintiffs and the Settlement Class Members will release SPE and its affiliates from any claims regarding the issues in this case. Settlement, ¶¶ 72-77.

## IV. NOTICE HAS BEEN DISSEMINATED TO THE CLASS CONSISTENT WITH THE COURT-APPROVED NOTICE PROGRAM

The Notice Program provided for in the Settlement has been, and is being, implemented. *See generally* Castaneda Decl.; Supp. Castaneda Decl. The Notice Program included direct mailed notice to the Settlement Class Members, publication notice, and the establishment of a Settlement Website. The Notice Program is robust and well-tailored to ensure the best notice practicable under the circumstances.

### A. Direct Notice

SPE's records were used to provide direct mailed notice to Settlement Class Members. SPE provided the Settlement Administrator with a Class List including the last known mailing addresses—to the extent they were reasonably available from SPE's electronic records—for all Settlement Class Members. The Settlement Administrator then ran the addresses through the National Change of Address database, and mailed direct notice to the Settlement Class Members at the addresses as updated.[13] The Settlement Administrator is taking appropriate steps to find updated address information and to re-mail notices that are returned undeliverable. Castaneda Decl., ¶ 9.

### B. Publication Notice

While the direct mailed notice is expected to reach the substantial majority of the Settlement Class, notice was also provided via publication notice in the January 25, 2016 edition of *People* Magazine (which was on sale January 15, 2016). Castaneda Decl., ¶ 10, Ex. F.

---

[13] The direct mail notices were mailed on January 22, 2016. Castaneda Decl., ¶ 8. Following the initial mailing, it was determined that, due to an error in the data, 423 Settlement Class Members were inadvertently not included in the initial mailing, and so notices for those individuals were promptly mailed. Supp. Castaneda Decl., ¶¶ 2-4, 6. It was also determined that, due to an error in the same data, certain Settlement Class Members were sent notices that included an incorrect first name, and so corrected notices with an explanation were promptly re-mailed to those individuals. *Id.*, ¶¶ 2-4, 7.

### C.     Settlement Website and Toll-Free Number

The Settlement Administrator also timely established a Settlement Website, where Settlement Class Members can view a long-form notice, obtain additional information, review important case documents, and submit Preventive Measures Claims and Identity Theft/Misuse Claims electronically.  Castaneda Decl., ¶ 11.  The Settlement Administrator also timely established toll-free telephone numbers for Settlement Class Members to obtain additional information and request mailed claim forms.  *Id.*, ¶ 12.[14]

## V.     THE RESPONSE FROM THE CLASS THUS FAR HAS BEEN POSITIVE

While the March 9, 2016 objection and opt-out deadline is still three weeks away, the reaction from the Settlement Class thus far has been positive.  As of February 17, 2016, only nine Settlement Class Members have opted out, and no objections have been submitted.[15]

## VI.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.     The Class Action Settlement Approval Process

Judicial proceedings under Federal Rule of Civil Procedure 23 have established a defined three-step procedure for approval of class action settlements:

(1)     Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

(2)     Dissemination of notice of the proposed settlement to the class; and

(3)     A final settlement approval hearing, in connection with which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

---

[14] The Settlement Website, toll-free numbers, mailed notices, and long-form notice on the Settlement Website all include information about the AllClear and IDT911 services available to Settlement Class Members, how to enroll, and which of the services are available to them.

[15] Supp. Castaneda Decl., ¶¶ 12-13.  Updated numbers of opt-outs, objections, and claims will be provided to the Court in advance of the April 6, 2016 Final Approval Hearing.

*See* Manual for Complex Litigation, Fourth, §§ 21.63 *et seq.* (2004). The first two steps in the process have been completed. By this motion, Plaintiffs respectfully request that the Court take the third and final step in the settlement approval process by granting final approval of the Settlement.

### B. The Settlement is Fair, Reasonable, and Adequate

The law favors the compromise and settlement of class action suits. *See, e.g.*, *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation.").

In weighing final approval of a class settlement, the Court's role is to determine whether the Settlement, taken as a whole, is fair, adequate, and reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The Ninth Circuit has established a list of factors to consider when assessing whether a proposed settlement is fair, reasonable and adequate: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the benefits offered in the settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village*, 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026. Application of these factors firmly supports the conclusion that the Settlement here is fundamentally fair, reasonable, and adequate, and should be finally approved.

### 1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Settlement appropriately balances the costs, risks, and likely delay of further litigation, on the one hand, against the benefits provided, on the other hand. *See* 4 Alba Conte & Herbert B. Newberg on Class Actions § 11:50 (4th ed. 2002) ("In most

situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

While Plaintiffs are confident in the merits of their remaining claims, continued litigation presents significant risks to the Settlement Class. Liability remains hotly disputed. Data breach cases present particular challenges in terms of establishing liability given, among other things, the complex nature of data security issues and the corresponding need for expert analysis. Those challenges are amplified in this case given the apparently sophisticated nature of the cyberattack at issue and the possible involvement of the North Korean government. Damages are disputed as well, and the Court's ruling on SPE's motion to dismiss restricts to some degree the types of harm for which Plaintiffs would be able to seek compensation for their claims. *See* ECF No. 97 at 4. Litigating this case to trial would be both expensive and risky. Even if Plaintiffs were to overcome all of the pre-trial risks that remain, they would still need to prevail at trial and, if successful at trial, prevail on an inevitable appeal which could take several years. The Settlement, by contrast, provides prompt relief for Settlement Class Members. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *National Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." (citation omitted)). Prompt relief is particularly important here given the value of providing Settlement Class Members with continued identity protection and insurance coverage.

### 2. The Risk of Maintaining Class Action Status Throughout the Trial

SPE disputes that a class trial in this case would be manageable, as its opposition to Plaintiffs' class certification motion shows. While Plaintiffs believe their arguments for certifying a litigation class are strong, obtaining and maintaining class action status throughout the trial is always a challenge, and is far from guaranteed, particularly in a complex case like this one.

14

### 3.   The Benefits Offered in the Settlement

The monetary and other valuable benefits provided by the Settlement are comprehensive and well-tailored to the claims and alleged harm. The cash payments that valid claimants will receive, through the claims processes, will be appropriately tied to their alleged harm, resulting in $2 million to $4.5 million in monetary payments by SPE. Settlement Class Members will be able to recover for actual money and time spent protecting themselves following the SPE Cyberattack, and the Settlement provides an additional source of funds should the insurance made available through AllClear PRO and IDT911 prove insufficient to cover any actual identity theft losses resulting from the SPE Cyberattack.[16]

Moreover, all Settlement Class Members will have access to valuable identity protection services from AllClear/IDT911 through December 2017 (including $1 million in identity theft loss insurance coverage and other valuable services), a benefit that is directly tied to both the theory of harm in this case and to the proposed model for measuring damages provided by Plaintiffs' damages expert in connection with Plaintiffs' class certification motion. The provision of these services to the Settlement Class represents millions of dollars in value for the Settlement Class. All Settlement Class Members will receive AllClear Secure service, and all are eligible to enroll in AllClear PRO and/or the IDT911 service.[17]

---

[16] The deadline for Settlement Class Members to submit Preventive Measures Claims is April 23, 2016. The deadline for Settlement Class Members to submit Identity Theft/Misuse Claims is December 31, 2017. As of February 17, 2016, there have been 1,452 Preventive Measures Claims and 25 Identity Theft/Misuse Claims submitted. Supp. Castaneda Decl., ¶¶ 10-11. Updated claim information will be provided to the Court in advance of the Final Approval Hearing.

[17] The deadline for Settlement Class Members to enroll in AllClear PRO and IDT911 is May 23, 2016. AllClear and IDT911 report that, as of February 16, 2016, more than 17,000 Settlement Class Members have already enrolled. This figure includes those Settlement Class Members residing the United States who enrolled in AllClear PRO previously and whose service is being automatically extended as a result of the

15

In all, the Settlement provides benefits that, at least in some respects, likely go beyond what the Settlement Class Members could have achieved through continued litigation.  Moreover, the proposed Settlement compares favorably to settlements in other data breach cases.  *See, e.g.*, *McCabe v. Six Continents Hotels, Inc.*, 2015 WL 3990915, at *10 (N.D. Cal. June 30, 2015) (finding a settlement fair "in light of other approved settlements within a similar range").  In *Countrywide*, for example, the court approved a settlement that provided up to $1.5 million to pay out-of-pocket costs related to the data breach, up to $5 million to pay losses related to identity theft, and two years of credit monitoring services to resolve data breach claims for approximately 2.4 million customers.  *In re Countrywide Financial Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *2-8 (W.D. Ky. Aug. 23, 2010).  Similarly, in *Pinter v. D.A. Davidson, Inc.*, the court approved a settlement that provided a $1 million fund to reimburse class members for losses resulting from the data breach and two years of credit monitoring.  No. 1:09-cv-00059-RFC, ECF No. 52 (D. Mont. Nov. 23, 2009).

Further, the Settlement here provides for the payment of Class Counsel's attorneys' fees, costs, and expenses on top of the benefits for the Settlement Class.  By contrast, if the case were litigated to trial, most or all of Class Counsel's fees would likely come out of whatever class damages were recovered, which would reduce the actual payments to the Settlement Class Members accordingly.

### 4.    The Extent of Discovery and the Stage of Proceedings

For this factor, courts look to whether the parties have sufficient information to make an informed decision with respect to the settlement.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  The Settlement is informed by Plaintiffs' extensive investigation and formal discovery regarding the legal and factual issues in this case. Moreover, the Settlement was reached approximately five months before the scheduled trial date, following substantial litigation that included a litigated motion to

Settlement.  Updated enrollment numbers will be provided to the Court in advance of the Final Approval Hearing.

16

dismiss, full briefing on class certification, the exchange of expert reports in connection with the class certification motion, and expert depositions. In negotiating the Settlement, the parties were informed by the Court's ruling on the motion to dismiss and by the other extensive litigation, discovery, and expert work conducted.

## 5.     The Experience and Views of Counsel

The recommendation of experienced counsel weighs in favor of granting final approval and creates a presumption of reasonableness. *See Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009); *see also Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Class Counsel have extensive experience litigating and settling class actions and other complex matters, including cases involving data breaches,[18] and they have conducted an extensive investigation into the factual and legal issues raised. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs heavily in favor of the Court approving the Settlement. *See* Joint Decl. ¶ 62.

## 6.     The Presence of a Government Participant

While no governmental entity is a party to this litigation, notice has been issued to numerous governmental agencies in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715, and to date no governmental entity has raised objections or concerns about the Settlement.

## 7.     The Reaction of the Class

The deadline for Settlement Class Members to opt-out or object is March 9, 2016. While that deadline is still three weeks away, the reaction thus far has been very positive. As of February 17, 2016, only nine Settlement Class Members have opted out of the Settlement Class, and no objections have been submitted. Supp. Castaneda Decl., ¶¶ 12-

---

[18] *See* ECF Nos. 31-2, 31-3, 32; Joint Decl., ¶¶ 88-104.

13.  The positive reaction thus far further supports the reasonableness of the Settlement. *See, e.g.*, *Churchill Village*, 361 F.3d at 577 (upholding district court's approval of class settlement with 45 objections and 500 opt-outs for a class of 150,000).

### 8.   Lack of Collusion Between the Parties

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992).  Where a settlement is the product of arm's-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable.  *See* 4 Newberg § 11.41; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

The Settlement is the product of arm's-length negotiations between the Parties and their well-qualified counsel, was informed by Class Counsel's extensive discovery, investigation, and litigation, and was negotiated with the assistance of an experienced and well-respected mediator, Professor Eric D. Green of Resolutions, LLC.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order granting final approval of the Settlement.

Dated:   February 17, 2016       Respectfully submitted,

**KELLER ROHRBACK L.L.P.**

By:     */s/ Lynn Lincoln Sarko*

Lynn Lincoln Sarko, *Admitted pro hac vice*
lsarko@kellerrohrback.com
Gretchen Freeman Cappio, *Admitted pro hac vice*
gcappio@kellerrohrback.com
Cari Campen Laufenberg, *Admitted pro hac vice*
claufenberg@kellerrohrback.com
1201 Third Avenue, Suite 3200

18

Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

Matthew J. Preusch
mpreusch@kellerrohrback.com
1129 State Street, Suite 8
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497

**GIRARD GIBBS LLP**

Daniel C. Girard
dcg@girardgibbs.com
Amanda M. Steiner
as@girardgibbs.com
Linh G. Vuong
lgv@girardgibbs.com
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

**LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP**

Michael W. Sobol
msobol@lchb.com
RoseMarie Maliekel
rmaliekel@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Nicholas Diamand
ndiamand@lchb.com
250 Hudson Street, 8th Floor

19

New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile:  (212) 355-9592

***Class Counsel***

Hank Bates
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
11311 Arcade Drive
Little Rock, AR 72212
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

Raúl Pérez
Raul.Perez@Capstonelawyers.com
Jordan L. Lurie
Jordan.Lurie@capstonelawyers.com
Robert Friedl
Robert.Friedl@capstonelawyers.com
Tarek H. Zohdy
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett
Cody.Padgett@capstonelawyers.com
**CAPSTONE LAW APC**
1840 Century Park East, Suite 450
Los Angeles, CA 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

John H. Gomez
john@gomeztrialattorneys.com
John P. Fiske
jfiske@gomeztrialattorneys.com
Deborah Dixon
ddixon@gomeztrialattorneys.com

20

**GOMEZ TRIAL ATTORNEYS**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 237-3490
Facsimile: (619) 237-3496

Joseph G. Sauder
jgs@chimicles.com
Matthew D. Schelkopf
mds@chimicles.com
Benjamin F. Johns
bfj@chimicles.com
Joseph B. Kenney
jbk@chimicles.com
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633

Richard A. Maniskas, Esquire
rmaniskas@rmclasslaw.com
**RYAN & MANISKAS, LLP**
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: (484) 588-5516
Facsimile: (484) 450-2582

Steven M. Tindall
stindall@rhdtlaw.com
Valerie Bender
vbrender@rhdtlaw.com
**RUKIN HYLAND DORIA & TINDALL LLP**
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile: (415) 421-1700

Katrina Carroll

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

kcarroll@litedepalma.com
Kyle A. Shamberg
kshamberg@litedepalma.com
**LITE DEPALMA GREENBERG, LLC**
211 W. Wacker Drive, Suite 500
Chicago, IL 60613
Telephone: (312) 750-1265
Facsimile: (312) 212-5919

*Additional Plaintiffs' Counsel*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS SETTLEMENT